## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC CITIZEN, INC.,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **Civil Action No. 07-0409 (RCL)** |
| **v.** | ) |
| | ) |
| **OFFICE OF MANAGEMENT AND BUDGET,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Office of Management and Budget ("OMB"), by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully submits its motion for summary judgment in this case brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552, on the grounds that there are no material facts in dispute and, that the facts in the case establish that Defendant is entitled to judgment as a matter of law. A statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities in support of this motion, the declaration of a responsible agency official, an index consistent with the District of Columbia Circuit's opinion in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973)[1], and a proposed Order are filed herewith.

---

[1]The Vaughn decision requires agencies to prepare an itemized index correlating each withheld document (or portion) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification.

Date: May 14, 2007                    Respectfully Submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**PUBLIC CITIZEN, INC.,**　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　**Plaintiff**　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　 ) **Civil Action No. 07-409 (RCL)**
　　　　　　　　**v.**　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　 )
**OFFICE OF MANAGEMENT AND BUDGET,**　 )
　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　**Defendant.**　　　　　　　　 )
_____ )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

　　　The Freedom of Information Act ("FOIA") provides that the district courts have "jurisdiction to enjoin [an] agency from withholding agency records and to order the production of agency records improperly withheld from [a] complainant." 5 U.S.C. § 552(a)(B). The records that Plaintiff seeks in this matter - i.e., lists of agencies that are allowed to transmit legislative and/or budgetary materials to Congress without first submitting them to OMB for coordination and clearance - have been properly withheld under FOIA exemptions 2 and 5. Accordingly, since the U.S. Office of Management and Budget ("OMB" or "Defendant") has fully met its obligation under the statute, and there is no material issue in dispute on this point, Defendant respectfully moves for judgment in its favor.

## I.    BACKGROUND

By letter dated December 8, 2006, Plaintiff made a request to OMB for: (1) All records listing agencies that may directly submit legislative proposal, reports, or testimony to Congress without receiving OMB clearance; (2) All records listing Agencies that may directly submit budget-related materials to Congress without receiving OMB clearance; (3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related material to Congress without receiving OMB clearance." Declaration of James Jukes, executed May 11, 2007, at ¶ 14 ("Jukes Declaration"). By letter dated January 10, 2007, OMB informed Plaintiff that it had located two documents potentially responsive to Plaintiff's request and that OMB was withholding those two documents based upon FOIA exemptions 2 and 5. Id. at ¶ 15, January 10, 2007 letter (attached as Exhibit B). In that same January 10, 2007 letter, OMB also informed Plaintiff that OMB was enclosing a document which was "a listing of those statutes (and the concerned agency) that address the direct submission of the legislative materials and listing of those statutes (and the concerned agency) that address the direct submission of budget materials." Id.

By letter dated January 18, 2007, Plaintiff appealed OMB's decision to withhold the two documents. Jukes Declaration at ¶ 16. OMB's FOIA Office received this appeal on January 26, 2007. Id. By letter dated February 26, 2007, OMB responded to Plaintiff's appeal and upheld its decision to withhold the two documents. Id. Defendant noted that "the documents contain internal government communications, including deliberative advice and guidance to OMB staff that is labeled 'for OMB internal use only.'" Id.

2

On February 28, 2007, Plaintiff filed a civil Complaint requesting that this Court order the Defendant to make all requested records available to Plaintiff. Complaint, Claims for Relief. Pacer, Dkt. 1.

## II.    Legal Standards

### A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

"FOIA cases are typically and appropriately decided on motions for summary judgment." Gonzales v. Bureau of Alcohol, Tobacco and Firearms, No. Civ. A. 04-2281(JDB), 2005 WL 3201009, *3 (D.D.C. Nov. 9, 2005)(citations omitted). An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show, if applicable, that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the

3

agency.'" Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting

McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).

Specifically, summary judgment is available to a defendant agency upon proof that it has

fully discharged its obligations under FOIA. Miller v. U.S. Dept. of State, 779 F.2d 1378, 1382

(8th Cir. 1985.) The declaration and accompanying Vaughn Index in this matter were provided

by an individual familiar with the steps taken by OMB in responding to Plaintiff's FOIA request.

See Jukes Decl. ¶¶ 1 to 4. Since the declaration demonstrates that OMB met its obligations

under the FOIA, and the pleadings and other filings show no genuine issue as to any material fact

and OMB is entitled to judgment as a matter of law, summary judgment should be granted to the

Defendant.

**B.     Standards for a Proper Search for Responsive Records**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search

for responsive records. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990);

Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health,, 844 F. Supp. 770, 776 (D.D.C. 1993);

Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness"

standard focuses on the method of the search, not its results, so that a search is not unreasonable

simply because it fails to produce relevant material. Id. at 777 n.4. An agency is not required to

search every record system, but need only search those systems in which it believes responsive

records are likely to be located. Oglesby, 920 F.2d at 68. Simply stated, the adequacy of the

search is "dependent upon the circumstances of the case." Truitt v. Dep't of State, 897 F.2d 540,

542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'"  Miller v. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978).  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search.  Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779 F.2d at 1383.  A requester may

5

not rebut agency affidavits with purely speculative allegations. See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard, 986 F.2d at 559-560.

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### C.    Standards for A Proper Vaughn Index

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dep't of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[1]

---

[1] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion

(continued...)

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  <u>See  Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA."  <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

**D.     Legal Standards for Applicable Exemptions to Release under FOIA**

**1.     Exemption (b)(2)**

Pursuant to 5 U.S.C. § 552(b)(2) (" Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to … a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>Schiller v. National Labor Relations Board</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992); <u>National Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and</u>

---

[1](...continued)
of a document withheld is putatively exempt from disclosure." <u>Id</u>.  "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." <u>Information Acquisition Corp. v. Dep't of Justice</u>, 444 F. Supp. 458, 462 (D.D.C. 1978).

Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Truesdale v. U.S. Dep't of Justice, No.Civ.A. 03-1332GK, 2005 WL 3294004, *4 - 5 (D.D.C. Dec. 5, 2005); Gonzales, 2005 WL 3201009, *6; Dorsett v. U.S. Dep't of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category." Schiller, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982); see also Schiller, 964 F.2d at 1207. "Low (b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990); Voinche v. Federal Bureau of Investigation, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. Coleman v. F.B.I., 13 F.Supp.2d 75, 78-79 (D.D.C. 1998), citing, Lesar v. Dept. of Justice, 636 F.2d 472 (D.C. Cir. 1980); see also Schiller, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); Nix v. United States, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); Voinche, 46

8

F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit); Wilson v. Dep't of Justice, No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991)(protecting transmittal slips from low level officials).  The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest.  Martin, 686 F.2d at 34.

An agency may withhold information as "high 2" if it demonstrates that "(1) the withheld information is "predominantly internal" and (2) disclosure of the information would "significantly risk[] circumvention of agency regulations or statutes." Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F.Supp2d 146, 165 (D.D.C. 2004), quoting, Crooker, 670 F.2d at 1073-74.  "In light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant." Judicial Watch, Inc., 337 F.Supp.2d at 165.  Exemption 2's application extends not only to records containing information on criminal enforcement but also records containing information on civil enforcement and regulatory matters.  See, e.g. Crooker, 670 F.2d at 1073 (protecting redacted portions of ATF manual containing information on investigative techniques to be used by agency personnel); Dirksen v. U.S. Dept. of Health and Human Services, 803 F.2d 1456, 1458-59 (9th Cir. 1986)(protecting internal audit guidelines to prevent risk of circumvention of agency Medicare reimbursement regulations); Judicial Watch, Inc., 337 F.Supp.2d at 165 (protecting Customs' withholding of "cases, file numbers and other administrative markings that indicated certain aspects of enforcement cases because knowledge of this information [could] render the Customs Service's electronic records system vulnerable to hacking, and facilitate circumvention of the laws and regulations enforced by the Customs Service.").

2.     **Exemption (b)(5)**

a.     **Deliberative Process Privilege**

Exemption 5 encompasses "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552 (b)(5). Exemption 5 exempts those documents normally privileged in the civil discovery context. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Sterling Drug, Inc. v. FTC, 450 F.2d 698, 704-705 (D.C. Cir. 1971). The language of the statute unequivocally incorporates all civil discovery rules into FOIA Exemption 5. Martin v. Office of Special Counsel, 819 F.2d 1181, 1185 (D.C. Cir. 1987); see also Badhwar v. Department of the Air Force, 829 F.2d 182, 184 (D.C. Cir. 1987). [2]

The deliberative process privilege is designed to "prevent injury to the quality of agency decisionmaking." NLRB v. Sears, Roebuck, 421 U.S. at 151. Thus, the privilege protects not just particular documents, but also the integrity of the deliberative process itself when the exposure of that process would result in harm. E.g., National Wildlife Fed'n v. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988) ("ultimate objective of exemption 5 is to safeguard the deliberative process of agencies, not the paperwork generated in the course of that process"). The deliberative process privilege protects documents and other memoranda prepared during the agency's decision-process, and constitutes "the 'generally ... recognized' privilege for 'confidential

---

[2]  It should be noted that the determination of what material is protected by the deliberative process privilege is not dependent upon its supposed availability under a hypothetical lawsuit based on laws other than FOIA. As the D.C. Circuit noted in In Re Subpoena Duces Tecum Served on the Comptroller of the Currency, 145 F. 3d 1422, 1424, n.1 (D.C. Cir. 1998), "[a] litigant may not overcome Exemption 5 by reference to hypothetical litigation." See also, AFGE Local 2782 v. U.S. Department of Commerce, 907 F. 2d 203, 207 (D.C. Cir. 1990)(material potentially available to hypothetical Title VII plaintiff not available under FOIA).

inter-agency advisory opinions'... the disclosure of which would be injurious to the consultative functions of government...." NLRB v. Sears, Roebuck & Co., 421 U.S. at 151.  Its purpose, therefore, is to prevent injury to the quality of agency decisions.  Id.  The privilege protects the consultative functions of the Government by preserving the confidentiality of opinions, recommendations, and deliberations which constitute part of the process by which government decisions are made and Government policies are formulated.   Jordan v. United States Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc).

In Carl Zeiss, this Court explained another policy underlying the privilege:

> The judiciary, the courts declare, is not authorized "to probe the mental processes" of an executive or administrative officer.  This salutary rule forecloses investigation into the methods by which a decision is reached, the matters considered, the contributing influences, or the role played by the work of others--results demanded by exigencies of the most imperative character.  No judge could tolerate an inquisition into the elements comprising his decision--indeed, "[s]uch an examination of a judge would be destructive of judicial responsibility"--and by the same token "the integrity of administrative process must be equally respected." (footnotes omitted).

Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 325-26 (D.D.C. 1966), aff'd on opinion below, 384 F.2d 979 (D.C. Cir. 1967), cert. denied, 389 U.S. 952 (1967).

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  The material to be redacted must be both predecisional and deliberative in order to fall within the provisions of deliberative process privilege.  See Mapother v. Department of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

First, it must be predecisional, i.e., "antecedent to the adoption of agency policy."  Jordan v. Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).  In determining whether a document is predecisional, the Supreme Court has held that an agency need not identify a

11

specific decision in connection with which a document is prepared.  NLRB v. Sears, Roebuck & Co., 421 U.S. at 151 n.18.  The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision.  Id.; see also Dudman Communications Corp. v. Department of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes -- not to protect specific materials.").  It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975).  Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  NLRB v. Sears, Roebuck & Co., 421 U.S. at 150.  Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that reflect the give-and-take of the consultative process.  Coastal States, 617 F.2d at 866.

Documents are part of the deliberative process when they are "actually related to the process by which policies are formulated," and "antecedent to the adoption of an agency policy."  Jordan v. United States Department of Justice, 591 F.2d 753, 775 (D.C. Cir. 1978).  Moreover, documents reflecting an "agency's group thinking in the process of working out its policy and determining what its law shall be," are exempt under FOIA Exemption 5.  Id. quoting NLRB v. Sears, Roebuck & Co., 421 U.S. at 153.

Staff evaluations of factual circumstances and the conclusions drawn from such submissions form "the essence of the deliberative process." National Wildlife Federation v. U.S. Forest Service, 861 F.2d 1114, 1121 (9th Cir. 1988).  Additionally, reports or other documents that summarize issues and advise superiors are protectible under the deliberative process privilege.  See Access Reports v. Dep't of Justice, 926 F.2d at 1196-97; Williams v. Dep't of Justice, 556 F. Supp. 63, 654 (D.D.C. 1982).  Ordering disclosure of such frank staff advice would strike at the heart of the deliberative process privilege.

### b.    Attorney-Client Privilege

Exemption 5 concerns "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).  Unlike the attorney work-product privilege, the attorney-client privilege is not limited to the context of litigation. See, e.g., Id. at 252-53 (distinguishing attorney-client privilege from attorney work-product privilege, which is limited to litigation context); Elec. Privacy Info. Ctr. v. DHS, 384 F. Supp. 2d 100, 114 (D.D.C. 2005) (citing Mead Data and Crooker v. ATF); Crooker v. IRS, No. 94-0755, 1995 WL 430605, at *7 (D.D.C. Apr. 27, 1995) ("Unlike [with] the work product privilege, an agency may claim the attorney-client privilege for information outside the context of litigation."). Moreover, although it fundamentally applies to facts divulged by a client to his attorney, this privilege also encompasses any opinion given by an attorney to his client based upon, and thus reflecting, those facts.  See, e.g., Jernigan v. Dep't of the Air Force, No. 97-35930, 1998 WL 658662, at *2 (9th Cir. Sept. 17, 1998) (holding that privilege covers agency attorney's legal review of internal "Social Action" investigation); Schlefer v. United States, 702 F.2d 233, 244

13

n.26 (D.C. Cir. 1983) (observing that privilege "permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts"); Elec. Privacy Info. Ctr., 384 F. Supp. 2d at 114 (noting that privilege protects attorney's advice based upon facts provided by client); Kelly v. CIA, No. 00-2498, slip op. at 21-22 (D.D.C. Aug. 8, 2002) (applying privilege to advice provided by CIA's counsel to CIA deputy director concerning CIA's budget, which is not matter of public record; Cujas v. IRS, No. 1:97CV00741, 1998 U.S. Dist. LEXIS 6466, at *19 (M.D.N.C. Apr. 15, 1998) (holding that privilege encompasses "notes of a revenue officer . . . reflecting the confidential legal advice that the agency's District Counsel orally gave the officer in response to a proposed course of action"), aff'd, No. 98-1641 (4th Cir. Aug. 25, 1998); Ludsin v. SBA, No. 96-2865, slip op. at 3 (D.D.C. Apr. 24, 1997) (holding that privilege covers intra-agency memoranda containing agency attorney's "legal conclusions and reasoning").

The public policy underlying the attorney-client privilege is "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The Supreme Court held in United States v. Weber Aircraft Corp., 465 U.S. 792, 799-800 (1984) and in FTC v. Grolier Inc., 462 U.S. 19, 28 (1983) that the scopes of the various privileges are coextensive in the FOIA and civil discovery contexts.  Thus, any FOIA decision that might purport to expand or contract the privilege's contours according to whether the privilege is presented in a civil discovery or a FOIA context does not accurately reflect the state of the law on this issue.  See Mead Data, 566 F.2d at 255 & n.28.  Finally, just as in the discovery context, the privilege can be waived by the client, who "owns" it, but it cannot be waived unilaterally by the attorney.  Hanson v. U.S. Agency for Int'l Dev., 372 F.3d 286, 293-94 (4th Cir. 2004).

14

### E.     Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u>

<u>sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions."  5 U.S.C. § 552(b); <u>Mead Data Cent.</u>, 566 F.2d at 260.

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements."  <u>Mead Data</u>,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  <u>Id</u>.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content."  <u>Mead Data</u>, 566 F.2d at 261, n.55.

### III.     ARGUMENT:  THE DEFENDANT HAS COMPLIED WITH FOIA REQUIREMENTS.

Defendants' compliance with FOIA is set forth in the Declaration of James Jukes (Exhibit

1) and the Vaughn Index (Attachment A).

15

### A.     Defendants Complied With FOIA Requirements by Conducting an Adequate Search

In responding to a FOIA request, OMB fullfilled its duty to conduct a reasonable search for responsive records.  Oglesby, 920 F.2d at 68; Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  OMB searched for records in the location that it reasonably believed responsive records would likely to be located.  See Oglesby, 920 F.2d at 68.   (Jukes Decl. at ¶ 17).

OMB has procedures for responding to FOIA requests.  See Jukes Decl. at ¶ 9.  OMB is a relatively small federal agency.  Id. at ¶ 13.  It has approximately four hundred and sixty-six (466) employees, all located in Washington, D.C.  Id. at ¶ 11.  OMB does not have regional or field offices.  Id.  The OMB is composed of several offices.  Id.  Because of OMB's small size and the relatively few FOIA requests it receives, the work of responding to FOIA requests is divided among various offices within OMB.  Jukes Decl. at ¶ 13.   Upon receipt of a FOIA request, the request is reviewed to determine the subject matter and complexity of the request. Id.  It is then "logged" into the FOIA tracking system and assigned to the OMB office that can best respond, or coordinate OMB's response, to the request.  Id.  Each office within OMB is responsible for searching its files for documents that may be responsive to a FOIA request.  Id.

In responding to Public Citizen's FOIA request, FOIA appeal and this lawsuit, Defendant carried out searches for responsive documents.  Jukes Decl. at ¶ 17.  OMB Assistant Director James Jukes, head of the Legislative Reference Division ("LRD")  handled the searches.  Id. at ¶¶ 12, 17.  He personally searched all relevant files within his office in the LRD which is the repository of OMB's compilations of agencies with bypass legislation.  Id. at ¶ 17.  As the head of

16

the LRD, and based upon his personal knowledge of this office, Jukes knew where the relevant

documents would be located and in which files.  Id.

In preparation for this Declaration and out of an abundance of caution, Jukes conducted a

subsequent search within his office for any other potentially responsive documents.  Id.  As a

result of that most recent search, Jukes verified that the two previously identified withheld

documents are OMB's present records that currently apply and are utilized by OMB employees**.**

Id.  Although the two documents identified as being responsive were withheld from disclosure,

Jukes personally prepared a document which was "a listing of those statutes (and the concerned

agency) that address the direct submission of the legislative materials and listing of those statutes

(and the concerned agency) that address the direct submission of budget materials."  Id. at ¶¶ 15,

17.  Defendant enclosed this document with the letter to Plaintiff, dated January 10, 2007, in

which Defendant stated that it was not releasing the two documents based on Exemptions 2 and

5.  Id. at ¶¶ 15, 17.  Defendant went above and beyond the FOIA's requirements when Assistant

Director Jukes personally prepared this document in response to Plaintiff's FOIA request.

Agencies are not required to compose documents in response to FOIA requests but rather they

are merely obligated to disclose responsive, non-exempt documents already in existence.  See

Renegotiation Bd. v. Grumman Aircraft Engineering, 421 U.S. 168, 192,  95 S.Ct. 1491, 1504

(1975) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29

(1975)) ("The Freedom of Information Act imposes no independent obligation on agencies to

write opinions.  It simply requires them to disclose the opinions which they do write.");

Hemenway v. Hughes, 601 F.Supp. 1002, 1005 (D.D.C. 1985) ("The agency faced with the

request is not required to manufacture or compile new documents from disparate data sources within its files.").

The subsequent search conducted by Defendant serves as further evidence of its diligence to ensure that all responsive documents were located. This subsequent review also resulted in Defendant locating twenty (20) other documents. Jukes Decl. at ¶ 18. All of the documents were either outdated, superseded, or now obsolete. Id. However, out of an abundance of caution, Jukes added these documents to the attached Vaughn Index because they may be potentially responsive to this FOIA request. Id. Of these twenty (20) documents, twelve (12) are obsolete prior issuances of the February 20, 2001 memorandum (referenced as Vaughn Index, item 1) which were issued between 1979 and 1999. Id. All of these older versions are now obsolete due to changes in law and practice; and therefore they were not referenced in OMB's earlier correspondence. Id. Moreover, the agencies listed in the 2001 memoranda were all agencies listed in the document that OMB previously provided to Plaintiff. Id. Many of the same agencies were listed in the obsolete versions, but these older lists changed over the years as the laws changed. Id.

In addition, eight (8) documents constitute inter-agency Executive Branch correspondence - seven letters, all dated July 18, 2001, and a memo dated March 15, 2002, conceivably might be responsive to this request. Id. at ¶ 18. Although Jukes was not entirely certain that these documents would be responsive to the FOIA request, he still listed all of the documents in the Vaughn Index out of an abundance of completeness and thoroughness. Id. These twenty (20) documents are being withheld, and those documents and the applicable FOIA

18

Exemption(s), are described in detail in the accompanying Vaughn index, which is attached to the Declaration.  Id.

Jukes' Declaration is "detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978).  "[A]ffidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200).  Thus, it is undisputable that OMB has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Id.; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

## B.    Defendant's Declaration and Vaughn Index Were More Than Adequate.

The Defendant's declaration in this matter was prepared by James Jukes, Assistant Director for Legislative Reference of the Office of Management and Budget (OMB).  Jukes Decl. ¶ 1.  Jukes was the the OMB official with primary responsibility for coordinating the search for documents responsive to the plaintiff's FOIA request.  Id..  The purposes of the Jukes Declaration are to:  (1) describe the search for documents OMB conducted in response to Plaintiff's request under the Freedom of Information Act (FOIA), and (2) explain the basis for OMB's decision to withhold certain documents and information sought by Plaintiff in its request.  Id.  The Jukes Declaration readily fulfills these purposes.

Jukes made the declaration based on  information obtained by him in the course of his official duties and his personal knowledge.  Id. at ¶ 3.  Jukes gained this knowledge as a result of reviewing the documents at issue in this proceeding and described in the Vaughn Index.  Id.

19

Assistant Director  Jukes carefully reviewed the documents in the Vaughn Index and assisted in drafting it.  Id.  ¶¶ 3-4.  Thus, Jukes' Declaration serves as a more than adequate basis for the Court to ascertain the propriety of the Defendant's response in this action.

The Vaughn Index also easily complies with FOIA's requirements.  It satisfies all three prongs of Citizens Commission on Human Rights, 45 F.3d at 1326.  Each withheld document is identified in a numbered paragraph.  See Vaughn Index generally.  Each paragraph states the statutory exemption claimed.  Id.  The Index clearly and precisely explains how disclosure would damage the interests protected by the claimed exemption.  Id.; Jukes Decl. at ¶ 4 ("The Vaughn index describes, in detail, the documents withheld and the applicable Freedom of Information Act exemption.").

Jukes' Declaration and Defendant's Vaughn Index adequately describe the twenty-two (22) documents withheld in their entirety and why Defendants' withholding is permissible under FOIA.  See Jukes Decl. at ¶¶ 4, 20-22; Vaughn Index at ¶¶ 1-22.  Assistant Director Jukes' Declaration contains an overview of the exemptions claimed by Defendant as to the withheld documents.  Id. at ¶¶ 4, 20-21.  The Vaughn Index, which comprises nine (9) pages, describes with particularity each document by providing the title of the document, its date, a synopsis of the document's subject matter, the sender and recipient of the document, and the reasons for the claimed exemption.  Vaughn Index at ¶¶ 1-22.  This information and descriptions provide a "reasonable basis to evaluate the claim of privilege" as required by Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).   The declaration and index submitted in support of this motion meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir.

1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant Defendant's motion.

    **C.      Defendant Properly Withheld Information Pursuant to FOIA Exemption 2.**

    Defendant properly withheld Documents 1 through 14 under Exemption 2.  These documents are predominantly internal documents.  See Vaughn Index, ¶¶ 1-14.  The release of these predominantly internal documents would allow for circumvention of a fundamental agency regulation.  See Jukes Decl. at ¶ 9 (describing Circular A-19).  Thus, Documents 1 through 14 are exempt under the "high 2B" exemption.

    OMB is "the President's principal arm for the exercise of his managerial functions." Reorganization Plan No. 2 of 1970 (5 U.S.C. App.), Message of the President.  Jukes Declaration, ¶ 5.  OMB assists the President in the discharge of his budgetary, management, and other executive responsibilities.  Id.  More specifically, OMB assists the President in the preparation of the Federal budget and in managing its execution by the agencies.  Id.  OMB also works to assure that proposed legislation (as well as agency testimony, reports, and policies) are consistent with the Administration's policies, including the President's Budget.  Id.  OMB also has a central role in providing leadership in the development, oversight and coordination of the Federal government's policies in the procurement, general management, financial management, and information and regulatory areas, as well as in the implementation of those policies.  Id.  OMB promotes better program management, strengthens administrative management, develops better agency-performance measures and improves coordination of the Executive Branch's various operations.  Id.

OMB's long-standing legislative clearance function has been expressly assigned to OMB by Presidential Executive Order (E.O.) No. 8248, which was issued by President Franklin Roosevelt and directs OMB "[t]o assist the President by clearing and coordinating departmental advice on proposed legislation and by making recommendations as to Presidential action on legislative enactments, in accordance with past practice." E.O. 8248, Part II, Section 2(e), reprinted in National Archives and Records Administration, Codification of Presidential Proclamations and Executive Orders: April 13, 1945-January 20, 1989, at p. 9.  Jukes Decl. at ¶ 6.  OMB, working with other parts of the Executive Office of the President and with the departments and agencies of the Executive Branch, carries out the legislative clearance function. Id.  This function is designed to serve the needs of the President in accomplishing his legislative responsibilities.  Id.  Since at least 1939, every President has used central clearance of legislation through OMB (and its predecessor, the Bureau of the Budget) as a means of assuring that members of the President's Administration provided their views to him on enrolled bills and on pending legislation, and also requested legislation from Congress that was consistent with the President's own views of what legislation was necessary and expedient.  Id. at ¶ 7.

The OMB legislative clearance functions serves several vital purposes.  First, it assists the President (and his policy representatives) in developing and presenting to the Congress a coherent, coordinated legislative program and coordinated views on pending legislation.  Jukes Decl. at ¶ 8.  In addition, through the clearance process, the various agencies receive and take into account the perspectives, concerns, and problems of other agencies, and this ensures that the Congress receives coordinated and informative agency views on legislation under consideration. Id.  In this regard, the clearance function includes the interagency review of draft agency proposals for legislation and of draft agency testimony and reports to Congress on legislation.  Id.

22

Finally, the OMB legislative clearance function assists the President with respect to the development of the Administration's position on legislation (often by drafting a "Statement of Administration Policy" or SAP), as well as with respect to the President's action to approve or disapprove (veto) an enrolled bill that has passed both Houses of Congress (through the drafting of a recommendation memorandum from the OMB Director to the President, called an "enrolled bill memo").  Id.

The Legislative Reference Division within OMB develops and supports the President's management and budget agenda through the interagency legislative clearance function.  Jukes Decl. at ¶ 9, 11.  The guidelines and procedures for the legislative clearance function are set forth in OMB Circular A-19, Legislative Coordination and Clearance.  Id. at ¶ 9.  A copy of Circular A-19 is posted on OMB's Internet site at http://www.whitehouse.gov/omb/circulars/a019/a019.html.  Id. at ¶ 9.  In addition, at the beginning of a new Presidential Administration, OMB typically sends a memorandum to the incoming heads of departments and agencies that brings the legislative clearance process to their attention and provides them with a brief summary of that process. Id.  At the beginning of this Administration, the OMB Director sent such a memorandum to departments and agencies.  Id.  A copy of that memorandum (OMB Memorandum M-01-12, Legislative Coordination and Clearance, February 15, 2001) is also posted on OMB's Internet site http://www.whitehouse.gov/omb/memoranda/m01-12.html.  Id.

OMB receives drafts of Executive Branch reports, testimony, and legislation for interagency review and clearance on a daily basis.  Jukes Decl. at ¶ 10 (lists statistics for calendar year 2005 and 2006 concerning the number of drafts of agency reports, drafts of agency

testimony, and proposed agency legislation.)  Through the exercise of its budget and  managerial

functions, OMB seeks to improve the performance of Federal programs.  Id.

Documents 1 through 14 are predominantly internal documents.  They contain

information related to OMB's internal personnel rules and practices.  Vaughn Index at ¶¶ 1-14.

Ten of these documents conspicuously state that they are "for OMB internal use only." Id. at ¶¶

1, 3-11.  Document 2, which is part of a larger internal OMB document entitled "OMB Roles and

Responsibilities" is located on OMB's internal website.  Id. at ¶ 2.  Documents 1 through 14 all

concern internal information about federal agencies vis a vis legislative and budgetary bypass

authority.  Vaughn Index at ¶¶ 1-14.  These documents include descriptions of the views and

perspectives of OMB officials' interpretations of the views of certain agencies regarding

legislative clearance requirements.  Id.  These documents were composed internally, shared

internally, and intended to be kept internal.  Therefore, the Vaughn Index clearly shows that these

documents are predominantly internal.

OMB's legislative clearance function is OMB's chief tool in developing and presenting to

the Congress a coherent, coordinated legislative program and coordinated views on pending

legislation.  Jukes Decl. at ¶ 8.  Circular No. A-19 regulates the legislative clearance

requirements of all executive branch agencies.  Circular No. A-19, 4.  It provides "Before an

agency transmits proposed legislation or a report (including testimony) outside the Executive

branch, it shall submit the proposed legislation or report or testimony to OMB for coordination

and clearance."  Circular No. A-19, 7(a).

Disclosure of the information in Documents 1 through 14 would significantly risk

circumvention of  Circular No. A-19.  These documents contain information regarding the

agency's internal views on legislative clearance requirements.  If this information were disclosed,

various federal agencies could use this information to challenge the application of the legislative

clearance requirement to them, thus weakening the OMB's chief tool for legislative coordination.

Because it covers records containing information on regulatory matters, Exemption 2 applies to

Documents 1 through 14, See, e.g. Crooker, 670 F.2d at 1073 (protecting redacted portions of

ATF manual containing information on investigative techniques to be used by agency personnel);

Dirksen v. U.S. Dept. of Health and Human Services, 803 F.2d 1456, 1458-59 (9th Cir.

1986)(protecting internal audit guidelines to prevent risk of circumvention of agency Medicare

reimbursement regulations).

Accordingly, Defendant properly withheld Documents 1 through 14 under "high"

Exemption 2.

### D.    Defendant ProperlyProperly Withheld Information
###       Pursuant to FOIA Exemption 5

#### 1.    Deliberative Process Privilege

All of the twenty-two (22) documents relevant to Plaintiff's request have been properly

withheld pursuant to Exemption 5.  Vaughn Index, at ¶¶ 1-22.  All of these documents "contain[]

interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which

would inhibit the frank and candid exchange of views that is necessary for effective government

decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5)."  Id.

OMB is involved in the consideration of issues covering a wide range of subjects (e.g.,

energy, national defense, law enforcement, housing, medical care, transportation).  Jukes Decl. at

¶ 19.  OMB officials must rely on their staffs to be the officials' "eyes and ears" on these issues.

Id.  Staff members are asked to gather information (generally, by attending meetings, making

phone calls, sending e-mails, or reviewing documents), and to then brief decisionmakers on what

they have learned and what course of action they recommend.  Id.  The staffs' summaries,

discussions, advice, and recommendations, such as those contained in the withheld documents, are vital to informed decisionmaking by OMB officials.  Id.  OMB routinely protects such information from disclosure pursuant to Exemption 5.  Id.

Disclosure of these deliberative materials would reveal aspects of OMB's evaluative process and the manner in which relevant opinions and  recommendations were formed.  Jukes Decl. at  ¶ 20.   It would also reveal internal OMB officials' opinions and recommendations.  Id.  Such disclosure would substantially inhibit the frank exchange of information and ideas within OMB, and among OMB, the Executive Office of the President, and the federal agencies that carry out executive branch policy.  Id.  The quality of agency decisionmaking would suffer greatly as a result, impairing OMB's ability to carry out its functions to improve the management of the executive branch.  Id.

This information is clearly predecisional.  It is information used by OMB in determining whether certain federal agencies must comply with OMB's  budgetary and legislative clearance requirement.  See Vaughn Index at ¶ 2 ("Included in this document are OMB official's characterizations and perspectives concerning certain agencies views regarding legislative clearance requirements applicable to their respective agencies.").   Much of this information was conspicuously marked "for OMB internal use only".  See Vaughn Index at ¶¶ 1,3-5, 7-11.  Some documents contain internal information that was passed from one OMB official to the next as part of a discussion of the views and perspectives of OMB officials concerning bypass authority.  Vaughn Index ¶¶ 1-14.  Other documents contain correspondences between OMB and officials of various other federal agencies concerning particular agencies' legislative authority to bypass OMB's mandatory review.  Vaughn Index ¶¶ 15-22.  In these correspondences between the OMB and the agency, OMB officials provided their comments and perspectives on legislative

26

coordination between the OMB and those agencies.[3]  Id.  Disclosure of Documents 1 through 14

would reveal internal OMB officials' opinions and recommendations, and some of these opinions

and recommendations concern matters that are fluid and are considered, reviewed and

reconsidered.  Jukes Decl. at ¶ 20.  The information in these documents, therefore, falls within

the first prong of the deliberative privilege exemption.

This information in Documents 1 through 14 also satisfies the second prong of the

deliberative privilege exemption because it is "a direct part of the deliberative process in that it

makes recommendations or expresses opinions. . .. "  See Jordan v. United States Department of

Justice, 591 F. 2d 753 at 774.  The recommendations and discussions provided to the OMB fall

squarely within the protections of the deliberative process privilege.  See Vaughn Index at ¶¶ 1-

14.  The withholding of these documents preserves the policy purpose of encouraging open and

frank discussion.  Views and perspectives of OMB officials' regarding legislative clearance

requirements necessarily demand a forum of candid, open discussion.  Such an environment

ensures that the decision-makers' full expertise and experience through an unfettered exchange

of viewpoints are available in reaching a just result.  See, e.g., Krikorian v. Department of State,

984 F.2d 461, 466 (D.C. Cir. 1993) (draft letters proposing alternative responses to public

inquiries; exchanges of views by agency staff); Schell v. HHS, 843 F.2d 933, 942 (9th Cir. 1988)

---

[3] One document also contains the perspectives of an agency regarding its view of the OMB's review of its draft testimony.  Vaughn Index at ¶ 22.  This document consists of a three-page memo dated March 15, 2002 from Marca Bristo, Chairperson of the National Council on Disability (NCD) to OMB Director Mitchell E. Daniels in which Ms. Bristo discussed her perspectives regarding OMB's review of that agency's draft testimony.  Id.  It also contains a handwritten note on the first page indicating OMB General Counsel's perspectives and legal impressions regarding the views expressed by NCD in its memorandum.  Id.  Therefore, this document contains both attorney-client communications and interagency or intra-agency pre-decisional, deliberative communications, and thus should be withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).  The application of attorney-client privilege  under Exemption 5 is discussed infra. at Section III. D.2.

("It is the free flow of advice, rather than the value of any particular piece of information, that Exemption 5 seeks to protect."); San Luis Obispo Mothers for Peace v. NRC, 751 F.2d 1287, 1326 (D.C. Cir. 1984) ("[i]nclusion in the record of documents recounting deliberations of agency members is especially worrisome because of its potential for dampening candid and collegial exchange between members of multi-head agencies").  Courts consistently have held staff analysis and advice -- whether supportive or critical of the position finally adopted by the agency -- to be protected under the deliberative process privilege.  See, e.g., Long Beach Container Terminal, Inc. v. Occupational Safety and Health Review Comm'n, 811 F.2d 477, 479 (9th Cir. 1987) ("because courts are usually prohibited from inquiring into an administrator's decision making mental process, it follows that the mental processes of staff members are totally irrelevant"); Nat'l Wildlife Fed'n v. Burford, 677 F. Supp. 1445, 1457-58 (D. Mont. 1985).[4]

---

[4]"The deliberative process privilege, also known as the 'executive' or 'governmental' privilege, serves many purposes." Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Dev., 192 F.R.D. 1, 4 (D.C.C. 1999).  The deliberative process privilege serves:

> to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions.

Id. at 4 (citations omitted).  The main purpose of this privilege "which is well established in the law, is . . . to 'prevent injury to the quality of agency decisions.'" Cofield v. City of LaGrange, Georgia, 913 F. Supp. 608, 615 (D.D.C. 1996) (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)).  The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions, and reasoning used in the administrative and decision making process of the government.  See United States v. Morgan (Morgan IV), 313 U.S. 40, 422 (1941); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993); Petroleum Info Corp. v. Dept. of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. Dept. of Justice, 926 F.2d 1192, 1194-95 (D.C. Cir. 1991).

Additionally, deliberative documents are protected against disclosure when, as here, they reflect the personal opinions of the writer rather than the policy of a government agency. <u>Coastal States Gas Corp. v. Department of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980). Release of one employee's opinion, expressed to his fellow employees, as to what an agency practice or decision might be does not amount to a pronouncement of agency policy that must be disclosed to the public. Release of the preliminary advice and opinions of individual government employees would often confuse, rather than clarify, the public perception of the position of a government agency. <u>Russell v. Department of the Air Force</u>, 682 F.2d 1045, 1048-1049 (D.C. Cir. 1982); <u>Fisher v. Department of Justice</u>, 772 F. Supp 7, 10-11 (D.D.C. 1991), <u>aff'd</u>, 968 F.2d 92 (D.C. Cir. 1992).

The documents at issue in this case are quintessential examples of records that require Exemption 5's protection in order to preserve the vitality of the deliberative process. Legislative and budgetary clearance is one of the primary means used by the OMB to accomplish its legally mandated policy goals of legislative coherence and coordination. To rule that the information is not protected would have a chilling effect on the ability of OMB employees to candidly express their views regarding one of OMB's primary functions. Accordingly, Exemption 5 properly applies to all of the documents withheld by Defendant.

### 2.    Attorney-Client Privilege

In addition to being exempt from disclosure under the deliberative process privilege, Document 22 is also exempt from disclosure under Exemption 5's attorney-client privilege. Vaughn Index at ¶ 22.

Document 22 consists of a three-page memo dated March 15, 2002 from Marca Bristo, Chairperson of the National Council on Disability (NCD) to OMB Director Mitchell E. Daniels

in which Ms. Bristo discussed her perspectives regarding OMB's review of that agency's draft testimony.  Vaughn Index at ¶ 22.  This document also contains a handwritten note on the first page indicating OMB General Counsel's perspectives and legal impressions regarding the views expressed by NCD in its memorandum.  Id.  This handwritten note is a confidential communication between an attorney and his client (Defendant) relating to a legal matter for which the client has sought professional advice.  See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d at 252.  This communication is an opinion given by an attorney to his client based upon, and thus reflecting, facts (NCD's perspectives regarding OMB's review of that agency's draft testimony) divulged by Defendant to its attorney.  See Schlefer v. United States, 702 F.2d 233, 244 n.26 (D.C. Cir. 1983) (observing that privilege "permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts"); Elec. Privacy Info. Ctr., 384 F. Supp. 2d at 114 (noting that privilege protects attorney's advice based upon facts provided by client).  The note need not have been composed in the context of litigation. Crooker v. IRS, No. 94-0755, 1995 WL 430605, at *7 (D.D.C. Apr. 27, 1995) ("Unlike [with] the work product privilege, an agency may claim the attorney-client privilege for information outside the context of litigation.").  Attorney-client privilege thus protects this memorandum from disclosure.

Furthermore, disclosure of Document 22 would thwart the very public policy underlying the attorney-client privilege.  This privilege exists so that a client may inform his attorney and thereby allow his attorney to provide him with sound legal advice.  See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  Defendant should not be impeded in presenting information to its counsel regarding the views of agencies who may be subject to legislative clearance review. If Defendant could not fully and freely provide this information to its counsel and its counsel

30

could not diligently and candidly render an opinion on this crucial agency function then

Defendant's ability to carry out its statutorily mandated function of legislative clearance would

be stymied.  Thus, Defendant has properly withheld Document 22 under Exemption 5's attorney

client privilege.

      **E.**     **There is No Reasonably Segregable Material to be Released**

      In this case, as described in the Jukes Declaration and the Vaughn Index, no meaningful

portions of the withheld documents could reasonably be released without destroying the integrity

of these documents as a whole.  See Jukes Decl. at ¶ 21 ("OMB withheld documents which

contain factual material intermingled with the author's impressions or analysis.  Such

intermingled factual material is not reasonably segregable from the overall deliberative quality of

these materials.").  Thus, Defendant complied with its segregation obligations under Mead Data

Central.

      The District of Columbia Circuit has held that a District Court considering a FOIA action

has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing

Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires

that if a record contains information that is exempt from disclosure, any "reasonably segregable"

information must be disclosed after deletion of the exempt information unless the non-exempt

portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data

Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

      In this case, OMB has demonstrated with reasonable specificity that there is no

reasonably segregable information that can be released.  Jukes Decl. ¶ 21.  The documents

authors' decision to take notes on particular points, or to bring particular points to the attention of

OMB policy officials, reflects the authors' judgment as to their relative importance and the

31

implicit recommendation that the reader pay attention to them. <u>Id.</u> Thus, the authors' choice of which topics to mention, and how to summarize them, reflects the authors' judgments as to the relative significance of the various matters under consideration in connection with the Government's decisions regarding legislative policy. <u>Id.</u> This solid intermingling of exempt and non-exempt information forecloses the release of any portion of these documents. Accordingly, OMB's actions fully comport with FOIA requirements regarding segregability. <u>See, e.g.</u> <u>Gutman v. U.S. Dep't of Justice</u>, 238 F.Supp.2d 284, 296 (D.D.C. 2003).

## IV.    CONCLUSION

For reasons stated herein, Plaintiff cannot establish any violation of the Freedom of

Information Act and summary judgment should be granted to Defendant.

Date: May 14, 2007                    Respectfully Submitted,


_____/s/_____
JEFFREY A. TAYLOR, DC Bar #489610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____/s/_____
Of Counsel:                     ALEXANDER D. SHOAIBI, DC Bar # 423587
Stuart Bender, Esq.             Assistant United States Attorney
Assistant General Counsel       Judiciary Center Building – Civil Division
OMB                             555 Fourth Street, N.W. -- Room E-4218
                                Washington, D.C. 20530
                                (202) 514-7236

                                Counsel for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on Monday, May 14, 2007, service of Defendant's Motion for

Summary Judgment, Memorandum of Points and Authorities in Support of Defendant's Motion

for Summary Judgment, Statement of Material Facts As to Which There is No Genuine Dispute,

and proposed order was made by the Court's Electronic Case Filing System to:

Adina Rosenbaum, Esq.
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009


_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **PUBLIC CITIZEN, INC.,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **Civil Action No. 07-0409 (RCL)** |
| **v.** | ) |
| | ) |
| **OFFICE OF MANAGEMENT AND BUDGET,** | ) |
| | ) |
| **Defendant.** | ) |

---

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE DISPUTE

Defendant, through counsel, the United States Attorney for the District of Columbia,

pursuant to Local Rule 56.1, respectfully submits the following statement of material facts as to

which there is no genuine dispute in support of its motion for summary judgment.

**Background on the Office of Management and Budget ("OMB")**

1.      OMB is "the President's principal arm for the exercise of his managerial functions."

Reorganization Plan No. 2 of 1970 (5 U.S.C. App.), Message of the President.  Jukes

Declaration, ¶ 5.  OMB assists the President in the discharge of his budgetary, management, and

other executive responsibilities.  Id.  More specifically, OMB assists the President in the

preparation of the Federal budget and in managing its execution by the agencies.  Id.  OMB also

works to assure that proposed legislation (as well as agency testimony, reports, and policies) are

consistent with the Administration's policies, including the President's Budget.  Id.  OMB also

has a central role in providing leadership in the development, oversight and coordination of the

Federal government's policies in the procurement, general management, financial management,

and information and regulatory areas, as well as in the implementation of those policies.  Id.

OMB promotes better program management, strengthens administrative management, develops better agency-performance measures and improves coordination of the Executive Branch's various operations.  Id.

2.      OMB's long-standing legislative clearance function has been expressly assigned to OMB by Presidential Executive Order (E.O.) No. 8248, which was issued by President Franklin Roosevelt and directs OMB "[t]o assist the President by clearing and coordinating departmental advice on proposed legislation and by making recommendations as to Presidential action on legislative enactments, in accordance with past practice." E.O. 8248, Part II, Section 2(e), reprinted in National Archives and Records Administration, Codification of Presidential Proclamations and Executive Orders: April 13, 1945-January 20, 1989, at p. 9.  Jukes Decl. at ¶ 6.  OMB, working with other parts of the Executive Office of the President and with the departments and agencies of the Executive Branch, carries out the legislative clearance function. Id.  This function is designed to serve the needs of the President in accomplishing his legislative responsibilities.  Id.  Since at least 1939, every President has used central clearance of legislation through OMB (and its predecessor, the Bureau of the Budget) as a means of assuring that members of the President's Administration provided their views to him on enrolled bills and on pending legislation, and also requested legislation from Congress that was consistent with the President's own views of what legislation was necessary and expedient.  Id. at ¶ 7.

3.      The OMB legislative clearance function serves several vital purposes.  First, it assists the President (and his policy representatives) in developing and presenting to the Congress a coherent, coordinated legislative program and coordinated views on pending legislation.  Jukes Decl. at ¶ 8.  In addition, through the clearance process, the various agencies receive and take into account the perspectives, concerns, and problems of other agencies, and this ensures that the

Congress receives coordinated and informative agency views on legislation under consideration. Id. In this regard, the clearance function includes the interagency review of draft agency proposals for legislation and of draft agency testimony and reports to Congress on legislation. Id. Finally, the OMB legislative clearance function assists the President with respect to the development of the Administration's position on legislation (often by drafting a "Statement of Administration Policy" or SAP), as well as with respect to the President's action to approve or disapprove (veto) an enrolled bill that has passed both Houses of Congress (through the drafting of a recommendation memorandum from the OMB Director to the President, called an "enrolled bill memo"). Id.

4.      The Legislative Reference Division within OMB develops and supports the President's management and budget agenda through the interagency legislative clearance function. Jukes Decl. at ¶ 9, 11.

5.      The guidelines and procedures for the legislative clearance function are set forth in OMB Circular A-19, Legislative Coordination and Clearance. Id. at ¶ 9. A copy of Circular A-19 is posted on OMB's Internet site at http://www.whitehouse.gov/omb/circulars/a019/a019.html. Id. at ¶ 9. In addition, at the beginning of a new Presidential Administration, OMB typically sends a memorandum to the incoming heads of departments and agencies that brings the legislative clearance process to their attention and provides them with a brief summary of that process. Id. At the beginning of this Administration, the OMB Director sent such a memorandum to departments and agencies. Id. A copy of that memorandum (OMB Memorandum M-01-12, Legislative Coordination and Clearance, February 15, 2001) is also posted on OMB's Internet site http://www.whitehouse.gov/omb/memoranda/m01-12.html. Id.

6.      OMB receives drafts of Executive Branch reports, testimony, and legislation for interagency review and clearance on a daily basis.  Jukes Decl. at ¶ 10 (lists statistics for calendar year 2005 and 2006 concerning the number of drafts of agency reports, drafts of agency testimony, and proposed agency legislation.)  Through the exercise of its budget and managerial functions, OMB seeks to improve the performance of Federal programs.  Id.

**Administrative History**

7.      By letter dated December 8, 2006, Plaintiff made a request to OMB for: "(1) All records listing agencies that may directly submit legislative proposal, reports, or testimony to Congress without receiving OMB clearance; (2) All records listing Agencies that may directly submit budget-related materials to Congress with receiving OMB clearance; (3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related material to Congress without receiving OMB clearance."  Declaration of James Jukes, executed May 11, 2007, at ¶ 14 ("Jukes Decl.").

8.      By letter dated January 10, 2007, OMB informed Plaintiff that it had located two documents potentially responsive to Plaintiff's request and that OMB was withholding those two documents based upon FOIA exemptions 2 and 5.  Jukes Decl. at ¶ 15.  In that same January 10, 2007 letter, OMB also informed Plaintiff that OMB was enclosing a document which was "a listing of those statutes (and the concerned agency) that address the direct submission of the legislative materials and listing of those statutes (and the concerned agency) that address the direct submission of budget materials."  Id.

9.      By letter dated January 18, 2007, Plaintiff appealed OMB's decision to withhold the two

documents.  Jukes Decl. at ¶ 16.  OMB's FOIA Office received this appeal on January 26, 2007.

Id.

10.     By letter dated February 26, 2007, OMB responded to Plaintiff's appeal and upheld its

decision to withhold the two documents.  Jukes Decl. at ¶ 16.  Defendant noted that "the

documents contain internal government communications, including deliberative advice and

guidance to OMB staff that is labeled 'for OMB internal use only.'"  Id.

11.     On February 28, 2007, Plaintiff filed a civil Complaint requesting that this Court order

the Defendant to make all requested records available to Plaintiff.  Complaint, Claims for Relief.

Pacer, Dkt. 1.

**Search for Responsive Records**

12.     OMB is a relatively small federal agency.  Jukes Decl. at ¶ 13.  It has approximately four

hundred and sixty-six (466) employees, all located in Washington, D.C.  Id. at ¶ 11.  OMB does

not have regional or field offices.  Id.  The OMB is composed of several offices.  Id.

13.     OMB has procedures for responding to FOIA requests.  See Jukes Decl. at ¶ 9.  Because

of OMB's small size and the relatively few FOIA requests it receives, the work of responding to

FOIA requests is divided among various offices within OMB.  Id. at ¶ 13.  Upon receipt of a

FOIA request, the request is reviewed to determine the subject matter and complexity of the

request.  Id. at ¶ 13.  It is then "logged" into the FOIA tracking system and assigned to the OMB

office that can best respond, or coordinate OMB's response, to the request.  Id.  Each office

within OMB is responsible for searching its files for documents that may be responsive to a

FOIA request.  Id.

14.     In responding to Plaintiff's FOIA request, FOIA appeal and this lawsuit, Defendant

carried out searches for responsive documents.  Jukes Decl. at ¶ 17.  OMB Assistant Director

James Jukes, head of the Legislative Reference Division ("LRD")  handled the searches.  Id. at ¶¶

12, 17.  He personally searched all relevant files within his office in the LRD which is the

repository of OMB's compilations of agencies with bypass legislation.  Id. at ¶ 17.  As the head of

the LRD, and based upon his personal knowledge of this office, Jukes knew where the relevant

documents would be located and in which files.  Id.

15.     In preparation for this Declaration and out of an abundance of caution, Jukes conducted a

subsequent search within his office for any other potentially responsive documents.  Jukes Decl.

at ¶ 17.  As a result of that most recent search, Jukes verified that the two previously identified

withheld documents are OMB's present records that currently apply and are utilized by OMB

employees.  Id.  These documents are Documents 1 and 2 in the Vaughn Index.  Vaughn Index at

¶¶ 1-2.

16.     Although the two documents identified as being responsive were withheld from

disclosure, Jukes personally prepared a document which was "a listing of those statutes (and the

concerned agency) that address the direct submission of the legislative materials and listing of

those statutes (and the concerned agency) that address the direct submission of budget materials."

Jukes Decl. at ¶¶ 15, 17.  Defendant enclosed this document with the letter to Plaintiff, dated

January 10, 2007, in which Defendant stated that it was not releasing the two documents based

on Exemptions 2 and 5.  Id. at ¶¶ 15, 17.

17.     This subsequent review also resulted in Defendant locating twenty (20) other documents.

Jukes Decl. at ¶ 18; Vaughn Index at ¶¶ 3-22.  All of the documents were either outdated,

superseded, or now obsolete.  Id.  However, out of an abundance of caution, Jukes added these

documents to the attached Vaughn Index because they may be potentially responsive to this FOIA request.  Id.

18.    Of these twenty (20) documents located as a result of the subsequent search, twelve  (12) are obsolete prior issuances of the February 20, 2001 memorandum (referenced as Vaughn Index, item 1) which were issued between 1979 and 1999.  Jukes Decl. at ¶ 18; Vaughn Index at ¶¶ 3-14.  All of these older versions are now obsolete due to changes in law and practice; and therefore they were not referenced in OMB's earlier correspondence.  Jukes Decl. at ¶ 18. Moreover, the agencies listed in the 2001 memoranda were all agencies listed in the document that OMB previously provided to Plaintiff.  Id.  Many of the same agencies were listed in the obsolete versions, but these older lists changed over the years as the laws changed.  Id.

19.    In addition, eight (8) documents constitute inter-agency Executive Branch correspondence - seven letters, all dated July 18, 2001, and a memo dated March 15, 2002, might well be considered to be potentially responsive to this request.  Id. at ¶ 18; Vaughn Index at ¶¶ 15-22.  Although Jukes was not entirely certain that these documents would be responsive to the FOIA request, he still listed all of the documents in the Vaughn Index out of an abundance of completeness and thoroughness.  Jukes Decl. at ¶ 18.  These twenty (20) documents are being withheld, and those documents and the applicable FOIA Exemption(s), are described in detail in the accompanying Vaughn index, which is attached to the Declaration.  Id.

**Vaughn Index**

20.    The Vaughn Index which comprises nine (9) pages, describes with particularity each document by providing, the title of the document, its date, a synopsis of the document's subject matter, the sender and recipient of the document, and the reasons for the claimed exemption. Vaughn Index at ¶¶ 1-22.

21.    All of the twenty-two documents relevant to the Plaintiff's request "contain[] interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5)."  Vaughn Index at ¶¶ 1-22.

22.    OMB is involved in the consideration of issues covering a wide range of subjects (e.g., energy, national defense, law enforcement, housing, medical care, transportation).  Jukes Decl. at ¶ 19.  Day-in and day-out, OMB officials must rely on their staffs to be the officials "eyes and ears" on these issues.  Id.  Staff members are asked to gather information (generally, by attending meetings, making phone calls, sending e-mails, or reviewing documents), then brief decisionmakers on what they have learned and what course of action they recommend.  Id.  The staffs' summaries, discussions, advice, and recommendations, such as those contained in the withheld documents, are vital to informed decisionmaking by OMB officials.  Id.  OMB routinely protects such information from disclosure pursuant to Exemption 5.  Id.

23.    Disclosure of these twenty-two documents would reveal aspects of OMB's evaluative process and the manner in which relevant opinions and  recommendations were formed.  Jukes Decl. at  ¶ 20.  It would also reveal internal OMB officials' opinions and recommendations.  Id.  Some of these documents are conspicuously marked "for OMB internal use only."  See Vaughn Index at ¶¶1, 3-5, 7-11.  Other documents contain correspondences between OMB and officials of various other federal agencies concerning particular agencies' legislative authority to bypass OMB's mandatory review.  Vaughn Index ¶¶ 15-22.  In these correspondences between the OMB and the agency, OMB officials provided their comments and perspectives on legislative coordination between the OMB and those agencies.  Id.  Disclosure of these documents would

reveal internal OMB officials' opinions and recommendations, and some of these opinions and recommendations concern matters that are fluid and are considered, reviewed and reconsidered. Jukes Decl. at ¶ 20.  Disclosure would also substantially inhibit the frank exchange of information and ideas within OMB, and among OMB, the Executive Office of the President, and the federal agencies that carry out executive branch policy.  Id.  at  ¶ 20.  The quality of agency decisionmaking would suffer greatly as a result and this could impair OMB's ability to carry out its functions to improve the management of the executive branch.  Id.

24.     Documents 1 through 14 contain information related to OMB's internal personnel rules and practices.  Vaughn Index at ¶¶ 1-14.  Ten of these documents conspicuously state that they are "for OMB internal use only." Id. at ¶¶ 1, 3-11.  Document 2, which is part of a larger internal OMB document entitled "OMB Roles and Responsibilities" is located on OMB's internal website.  Id. at ¶ 2.  Documents 1 through 14 all concern internal information about federal agencies vis a vis legislative and budgetary bypass authority.  Vaughn Index at ¶¶ 1-14.  These documents include descriptions of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.  Id.

25.     Document 22 consists of a three-page memo dated March 15, 2002 from Marca Bristo, Chairperson of the National Council on Disability (NCD) to OMB Director Mitchell E. Daniels in which Ms. Bristo discussed her perspectives regarding OMB's review of that agency's draft testimony.  Vaughn Index at ¶ 22.  This document also contains a handwritten note on the first page indicating OMB General Counsel's perspectives and legal impressions regarding the views expressed by NCD in its memorandum.  Id.

**Segregability**

26.     OMB withheld documents which contain factual material intermingled with the author's impressions or analysis.  Jukes Decl. at ¶ 21.  Such intermingled factual material is not reasonably segregable from the overall deliberative quality of these materials.  Id. In this case, OMB has demonstrated with reasonable specificity that there is no reasonably segregable information that can be released.  Id.  The documents authors' decision to take notes on particular points, or to bring particular points to the attention of OMB policy officials, reflects the authors' judgment as to their relative importance and the implicit recommendation that the reader pay attention to them.  Id.  Thus, the authors' choice of which topics to mention, and how to summarize them, reflects the authors' judgments as to the relative significance of the various matters under consideration in connection with the Government's decisions regarding legislative policy.  Id.

May 14, 2007                              Respectfully submitted,


                                         _____
                                                        /s/
                                         JEFFREY A. TAYLOR, DC Bar #489610
                                         United States Attorney



                                         _____
                                                        /s/
                                         RUDOLPH CONTRERAS, DC Bar #434122
                                         Assistant United States Attorney



                                         _____
                                                        /s/
OF COUNSEL:                              ALEXANDER D. SHOAIBI, DC Bar # 423587
Stuart Bender, Esq.                      Assistant United States Attorney
Assistant General Counsel                Judiciary Center Building – Civil Division
OMB                                      555 Fourth Street, N.W. -- Room E-4218
                                         Washington, D.C. 20530
                                         (202) 514-7236


11

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
PUBLIC CITIZEN,                      :
                                     :
                 Plaintiff,          :
                                     :
          - v.-                      :      DECLARATION OF
                                     :      JAMES JUKES
                                     :
OFFICE OF MANAGEMENT                 :
AND BUDGET,                          :
                                     :
                 Defendant.          :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

I, JAMES JUKES hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am the Assistant Director for Legislative Reference of the Office of Management and Budget (OMB), a position I have held since 1998. As Assistant Director for Legislative Reference, I am responsible for reviewing proposed draft legislation, draft reports and draft testimony of senior Executive Branch policy officials testifying before Congress pursuant to OMB Circular Number A-19 (described below). I was the OMB official with primary responsibility for coordinating the search for documents responsive to the plaintiff's FOIA request.

2.     The purposes of this declaration are to (i) describe the search for documents OMB conducted in response to plaintiff's request under the Freedom of Information Act (FOIA), and (ii) explain the basis for OMB's decision to withhold certain documents and information sought by plaintiff in its request.

3.     The statements made in this declaration are based on information obtained by me in the course of my official duties and my personal knowledge,

knowledge that I have gained as a result of reviewing the documents at issue in this proceeding and described in the <u>Vaughn</u> index (Attachment A). OMB has produced a <u>Vaughn</u> index which identified documents that are potentially responsive to the plaintiff's FOIA request and that OMB has withheld. I assisted in preparing that draft <u>Vaughn</u> index, including a careful review of the documents in that index.

     4.      I have reviewed the withheld documents identified in the <u>Vaughn</u> index. I have personally reviewed the documents in the preparation of this declaration and have provided a detailed description of these documents in the attached <u>Vaughn</u> index. The <u>Vaughn</u> index describes, in detail, the documents withheld and the applicable Freedom of Information Act exemption. OMB has withheld documents pursuant to two FOIA exemptions -- Exemptions 2 and 5. First, pursuant to Exemption 2, OMB has withheld documents and information that concern OMB's internal rules and practices. Second, pursuant to Exemption 5 – in particular, the deliberative process privilege that exemption encompasses – OMB has withheld documents reflecting internal, pre-decisional communications among employees of OMB about the participation in the Executive branch's legislative clearance process regarding agencies that are not (or that assert that they are not) subject to legislative clearance requirements.

### Responsibilities of the Office of Management and Budget

5.    OMB is "the President's principal arm for the exercise of his

managerial functions." Reorganization Plan No. 2 of 1970 (5 U.S.C. App.), Message of

the President.  OMB assists the President in the discharge of his budgetary,

management, and other executive responsibilities.  More specifically, OMB assists the

President in the preparation of the Federal budget and in managing its execution by the

agencies.  OMB also works to assure that proposed legislation (as well as agency

testimony, reports, and policies) are consistent with the Administration's policies,

including the President's Budget.  OMB also has a central role in providing leadership in

the development, oversight and coordination of the Federal government's policies in the

procurement, general management, financial management, and information and

regulatory areas, as well as in the implementation of those policies.  OMB promotes

better program management, strengthens administrative management, develops better

agency-performance measures and improves coordination of the Executive Branch's

various operations.

6.    OMB's long-standing legislative clearance function has been

expressly assigned to OMB by Presidential Executive Order (E.O.) No. 8248,

which was issued by President Franklin Roosevelt and directs OMB "[t]o assist

the President by clearing and coordinating departmental advice on proposed

legislation and by making recommendations as to Presidential action on

legislative enactments, in accordance with past practice." E.O. 8248, Part II,

Section 2(e), reprinted in National Archives and Records Administration,

*Codification of Presidential Proclamations and Executive Orders: April 13, 1945-*

˘3˘

*January 20, 1989*, at p. 9. OMB, working with other parts of the Executive Office of the President and with the departments and agencies of the Executive Branch, carries out the legislative clearance function. This function is designed to serve the needs of the President in accomplishing his legislative responsibilities. While several sections of the Constitution have some bearing on the President's activities with respect to legislation, such activities are primarily based on the President's power under Article I, Section 7 to approve or disapprove enrolled bills passed by the Congress; his right under Article II, Section 2 to request the opinions of Department heads; and his responsibility under Article II, Section 3 to recommend to Congress such measures as he shall judge necessary and expedient.

7.    Since at least 1939, every President has used central clearance of legislation through OMB (and its predecessor, the Bureau of the Budget) as a means of assuring that members of the President's Administration provided their views to him on enrolled bills and on pending legislation, and also requested legislation from Congress that was consistent with the President's own views of what legislation was necessary and expedient. As President Nixon stated in his Message to Congress on his reorganization of the Bureau of the Budget into OMB in 1970, OMB will continue the Legislative Reference functions now performed by the Bureau of the Budget, drawing together agency reactions on all proposed legislation, and helping develop legislation to carry out the President's program. Reorganization Plan No. 2 of 1970, 5 U.S.C. App. (Message of the President).

8.    The OMB legislative clearance function primarily assists the President (and his policy representatives) in developing and presenting to the Congress a coherent, coordinated legislative program and coordinated views on pending legislation. In addition, through the clearance process, the various agencies receive and take into account the perspectives, concerns, and problems of other agencies, and this ensures that the Congress receives coordinated and informative agency views on legislation under consideration. In this regard, the clearance function includes the interagency review of draft agency proposals for legislation and of draft agency testimony and reports to Congress on legislation. Finally, the OMB legislative clearance function assists the President with respect to the development of the Administration's position on legislation (often by drafting a "Statement of Administration Policy" or SAP), as well as with respect to the President's action to approve or disapprove (veto) an enrolled bill that has passed both Houses of Congress (through the drafting of a recommendation memorandum from the OMB Director to the President, called an "enrolled bill memo").

9.    The Legislative Reference Division within OMB conducts the legislative clearance function. The guidelines and procedures for the legislative clearance function are set forth in OMB Circular A-19, Legislative Coordination and Clearance.  A copy of Circular A-19 is posted on OMB's Internet site at http://www.whitehouse.gov/omb/circulars/a019/a019.html. In addition, at the beginning of a new Presidential Administration, OMB typically sends a memorandum to the incoming heads of departments and agencies that brings

the legislative clearance process to their attention and provides them with a brief

summary of that process. At the beginning of this Administration, the OMB Director sent

such a memorandum to departments and agencies. A copy of that memorandum (OMB

Memorandum M-01-12, Legislative Coordination and Clearance, February 15, 2001) is

is also posted on OMB's Internet site at

http://www.whitehouse.gov/omb/memoranda/m01-12.html.

Guidelines and procedures for preparation of the President's Budget are contained in

OMB Circular A-11, Preparation, Submission, and Execution of the Budget.  A copy of

Circular A-11 is posted on OMB's Internet site at

http://www.whitehouse.gov/omb/circulars/a11/current_year/a_11_2006.pdf

    10.    OMB receives drafts of Executive Branch reports, testimony, and

legislation for interagency review and clearance on a daily basis. According to

the statistics maintained by OMB's Legislative Reference Division, OMB in calendar

year 2006 received for interagency review approximately 1,153 drafts of agency

testimony, 341 drafts of agency reports to Congress (consisting mainly of agency letters

to Congress), and 144 drafts of agency proposed legislation. In calendar year 2005,

OMB received for interagency review approximately 1,231 drafts of agency testimony,

417 drafts of agency reports to Congress, and 209 drafts of agency proposed

legislation. In calendar year 2004, OMB received for interagency review approximately

1,087 drafts of agency testimony, 352 drafts of agency reports to Congress, and 98

drafts of agency proposed legislation. The documents in this category include both draft

agency documents, as well as comments provided by agency representatives regarding concerns that certain language may raise.  In sum, through the exercise of its budget and  managerial functions, OMB seeks to improve the performance of Federal programs.

### OMB Organization

11.    OMB has approximately 466 employees, all located in Washington, D.C. (OMB does not have regional or field offices).  OMB is comprised of the OMB Director's office, several small staff offices (General Counsel, Legislative Affairs, Communications, Administration and Economic Policy); the Budget Review Division, which provides support in the development  and execution of the federal budget; the Legislative Reference Division, which develops and supports the President's management and budget agenda through its interagency legislative review function; four Resource Management Offices, which develop and support the President's budget; and four statutory offices (the Office of Information and Regulatory Affairs, the Office of Federal Financial Management, the Office of Federal Procurement Policy and the Office of E-Government and Information Technology).

12.    As an Assistant Director, I am the head of one of OMB's Offices -- the Legislative Reference Division (LRD), which has three branches: (1) the Labor, Welfare and Personnel Branch; (2) the Economics, Science and General Government Branch and (3) the Resources, Defense and International Branch.

### Plaintiff's FOIA Request to OMB

13.    Because of OMB's small size and the relatively few FOIA requests it receives the work of responding to FOIA requests is divided among various offices

within OMB.  Upon receipt of a FOIA request, the request is reviewed to determine the subject matter and complexity of the request.  It is then "logged" into the FOIA tracking system and assigned to the OMB office that can best respond, or coordinate OMB's response, to the request.  Each office within OMB is responsible for searching its files for documents that may be responsive to a FOIA request.

14.    By letter dated December 8, 2006, Public Citizen Litigation Group (Public Citizen) made a request to OMB for:  "1. All records listing agencies that may directly submit legislative proposal, reports, or testimony to Congress without receiving OMB clearance; 2. All records listing agencies that may directly submit budget-related materials to Congress with receiving OMB clearance; and 3. All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related material to Congress without receiving OMB clearance."  (A true copy of the December 8, 2006 letter is attached hereto as Exhibit B.)  OMB's Correspondence Unit received the request on December 8, 2006.

15.    By letter dated January 10, 2007, OMB informed Public Citizen that the agency had located two documents potentially responsive to Public Citizen's request and that OMB was withholding those two documents base upon FOIA exemptions 2 and 5.  In that same January 10, 2007 letter, OMB also informed Public Citizen that OMB was enclosing a document which was "a listing of those statutes (and the concerned agency) that address the direct submission of the legislative materials and listing of those statutes (and the concerned agency) that address the direct

submission of budget materials." (A true copy of the January 10, 2007 letter is attached hereto as Exhibit B.)

16.    In a letter dated January 18, 2007, Public Citizen submitted a FOIA appeal which OMB's FOIA Office received on January 26, 2007.  OMB reviewed Public Citizen's appeal and responded in a letter dated February 26, 2007 in which OMB upheld its decision to withhold the two documents, noting that "the documents contain internal government communications, including deliberative advice and guidelines to OMB staff that is labeled "for OMB internal use only."

### OMB's Search for Responsive Documents

17.    In responding to Public Citizen's FOIA request, FOIA appeal and this lawsuit, OMB carried out searches for responsive documents.  The searches were handled by me.  I personally searched all relevant files within my office in the Legislative Reference Division which is the repository of OMB's compilations of agencies with bypass legislation.  As the head of the Legislative Reference Division, and based upon my personal knowledge of this office, I knew where the relevant documents would be located and in which files.  Moreover, in preparation for this Declaration and out of an abundance of caution, I conducted a subsequent search of these areas for any other potentially responsive documents.  As a result of this most recent search, I can verify that the two previously identified withheld documents are OMB's present records that currently apply and are utilized by OMB employees.  Although the two documents identified as being responsive were withheld from disclosure, I, as noted earlier in Paragraph 15, personally prepared a document containing a list

of the statutes and Federal agencies that possess bypass authorities. That
document was provided to the Plaintiffs in January of 2007.

18.    In addition to the two documents previously identified and as part
of this subsequent review that I conducted I have, out of an abundance of care
and caution, located twenty (20) additional older documents all of which were
either out dated, superseded or now obsolete. Out of an abundance of caution, I
have added these documents to the attached Vaughn Index because they may
be potentially responsive to this FOIA request. Of these 20 documents, twelve
(12) are obsolete prior issuances of the February 20, 2001 memorandum
(referenced in the attached Vaughn Index) which were issued between 1999 and
1979. All of these older versions are now obsolete due to changes in law and
practice; and therefore were not referenced in OMB's earlier correspondence.
Moreover, the agencies listed in the 2001 memorandum were all agencies listed
in the document that OMB previously provided to Public Citizen. Many of the
same agencies were listed in the obsolete versions, but these older lists changed
over the years as the laws changed. In addition, eight (8) documents constitute
inter-agency Executive Branch correspondence – seven letters, all dated July 18,
2001, and a memo dated March 15, 2002, might well be considered to be
potentially responsive to this request. While I am not entirely certain that these
documents would be responsive to the FOIA request, I am listing all of these
documents in the Vaughn Index out of an abundance of completeness and
thoroughness. These 20 documents are being withheld, and those documents
and the applicable FOIA Exemption(s), are described in detail in the

accompanying Vaughn index, which is attached to this Declaration.

19.    OMB is involved in the consideration of issues covering a wide range of subjects (e.g., energy, national defense, law enforcement, housing, medical care, transportation). Day-in and day-out, OMB officials must rely on their staffs to be the officials' "eyes and ears" on these issues. Staff members are asked to gather information (generally, by attending meetings, making phone calls, sending e-mails, or reviewing documents), then brief decisionmakers on what they have learned and what course of action they recommend. The staffs' summaries, discussions, advice, and recommendations, such as those contained in the withheld documents, are vital to informed decisionmaking by OMB officials. OMB routinely protects such information from disclosure pursuant to Exemption 5.

20.    Disclosure of these deliberative materials would reveal aspects of OMB's evaluative process concerning submission of agencies' documents to Congress without OMB's clearance and the manner in which relevant opinions and recommendations were formed. It would also reveal internal OMB officials' opinions and recommendations, and some of these opinions and recommendations concern matters that are fluid and are considered, reviewed and reconsidered. Such disclosure would substantially inhibit the frank exchange of information and ideas within OMB, and among OMB, the Executive Office of the President, and the federal agencies that carry out executive branch policy. The quality of agency decisionmaking would suffer greatly as a result and this could impair OMB's ability to carry out its functions to

improve the management of the executive branch.

21.    OMB withheld documents which contain factual material intermingled with the author's impressions or analysis. Such intermingled factual material is not reasonably segregable from the overall deliberative quality of these materials. Indeed, the recitation of specific facts in these documents itself reflects the subjective judgment of the document's author as to which particular facts are sufficiently significant to warrant mention. In other words, the author's decision to take notes on particular points, or to bring particular points to the attention of OMB policy officials, reflects the author's judgment as to their relative importance and the implicit recommendation that the reader pay attention to them. Thus, the author's choice of which topics to mention, and how to summarize them, reflects the author's judgment as to the relative significance of the various matters under consideration in connection with the Government's decisions regarding legislative policy.

*  *  *  *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Washington, District of Columbia, this 11th day of May, 2007.

James Jukes
Assistant Director for
Legislative Reference
Office of Management and Budget

OMB <u>VAUGHN</u> INDEX

1.  This document consists of a one-page memorandum dated February 20, 2001 from Jim Jukes, Assistant Director for Legislative Reference (Legislative Reference Division) to Policy Officers and Deputy Associate Directors (DADs) within the Office of Management and Budget (OMB) (a component agency within the Executive Office of the President), in which Mr. Jukes provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a twenty-two (22) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attach document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

2.  This undated document consists of two-pages from a larger internal OMB document entitled "OMB Roles and Responsibilities" which is located on OMB's internal website. The two-page document is entitled "Agencies Exempt from the Legislative Clearance Process" and are the only pages in the document responsive to this FOIA request. Included in this document are OMB official's characterizations and perspectives concerning certain agencies views regarding legislative clearance requirements applicable to their respective agencies. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

3.  This document consists of a one-page memorandum dated March 10, 1999 from Jim Jukes, Assistant Director for Legislative Reference (Legislative Reference Division) to the OMB Director, Deputy Directors and senior OMB Policy

ATTACHMENT A

Officers and Deputy Associate Directors (DADs), and a separate two-page memorandum also dated March 10, 1999 from Jim Jukes, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Jukes provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to these two memoranda is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attach document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

4.   This document consists of a one-page memorandum dated January 20, 1998 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Policy Officers and Deputy Associate Directors (DADs), and a separate two-page memorandum dated January 16, 1998 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attach document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to

2

OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

5.  This document consists of a two-page memorandum dated December 18, 1996 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.   This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

6.  This document consists of a two-page memorandum dated January 4, 1995 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.   This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to

OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

7.   This document consists of a one-page memorandum dated January 25, 1993 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

8.   This document consists of a one-page memorandum dated January 25, 1993 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.   This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to

4

OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

9. This document consists of a one-page memorandum dated January 14, 1991 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a seventeen (17) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

10. This document consists of a one-page memorandum dated February 27, 1989 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eighteen (18) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to

OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

11. This document consists of a one-page memorandum dated January 27, 1989 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eighteen (18) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.   This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).  In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

12. This document consists of a one-page memorandum dated December 21, 1983 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eleven (11) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.  This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).  In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

13. This document consists of a one-page memorandum dated March 11, 1983 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eight (8) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

14. This document consists of a one-page memorandum dated April 19, 1979 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a ten (10) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal personnel rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

15. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Laura Unger, Acting Chairman of the Securities and Exchange Commission in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional,

deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

16. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Donna Tanoue, Chairman of the FDIC in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5

17. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to John D. Hawke, Jr., Comptroller of the Currency in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

18. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Ellen S. Seidman, Director of the Office of Thrift Supervision in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

19. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to J. Timothy O'Neill, Chairman of the Federal Housing Finance Board in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

20. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Armando Falcon, Jr., Director of the Office of Federal Housing Enterprise Oversight in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

21. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Dennis Dollar, Acting Chairman of the National Credit Union Administration in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

22. This document consists of a three-page memo dated March 15, 2002 from Marca Bristo, Chairperson of the National Council on Disability (NCD) to OMB Director Mitchell E. Daniels in which Ms. Bristo discussed her perspectives regarding OMB's review of that agency's draft testimony. This document also contains a handwritten note on the first page indicating OMB General Counsel's perspectives and legal impressions regarding the views expressed by NCD in its memorandum. This document contains attorney-client communications and interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

JAN 10 2007

Ms. Adina H. Rosenbaum
Public Citizen Litigation Group
1600 Twentieth Street, NW
Washington, DC  20009

Dear Ms. Rosenbaum:

This responds to your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated December 8, 2006 which was received in this office on December 8, 2006.  Your request asked for:

1.      All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;

2.      All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB Clearance; and

3.      All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

Upon a thorough search of our files, we have found two documents that are potentially responsive to your request.  It is my decision, however, that these documents are exempt from mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2) (5).  These documents relate to OMB's internal personnel rules and practices and, to the extent that they contain information that extends beyond such rules and practices, the documents contain predecisional and deliberative information, the disclosure of which would harm the decision-making process.  I have concluded that the disclosure of these documents would not be in the public interest and therefore decline to release them.

However, in response to your request, we provide the enclosure, which is a listing of those statutes (and the concerned agency) that address the direct submission of legislative materials and a listing of those statutes (and the concerned agency) that address the direct submission of budget materials.

EXHIBIT B

This is my personal decision which may be appealed pursuant to OMB regulations, at 5 C.F.R. 1303.

Sincerely,

*Lauren G. Wright*

Lauren E. Wright
Deputy Assistant Director
 for Administration

Enclosure

2

**Statutes that Address the Direct Submission of Legislative Materials (and the agency concerned):***

1. Advisory Council on Historic Preservation (16 U.S.C. § 470r, 470t(b))
2. Chemical Safety and Hazard Investigation Board (42 U.S.C. § 7412(r)(6)(R))
3. Commodity Futures Trading Commission (7 U.S.C. § 2(a)(10))
4. Consumer Product Safety Commission (15 U.S.C. § 2076(k)(1-2))
5. Farm Credit Administration (12 U.S.C. § 2252(a)(3))
6. Federal Aviation Administration (Transportation) (49 U.S.C. § 48109)
7. Federal Election Commission (2 U.S.C. § 437d(d)(1-2))
8. Federal Energy Regulatory Commission (42 U.S.C. § 7171(j))
9. Federal Retirement Thrift Investment Board (5 U.S.C. § 8472(i)-(j))
10. Merit Systems Protection Board (5 U.S.C. § 1205)
11. National Transportation Safety Board (49 U.S.C. § 1113(c))
12. Office of National Taxpayer Advocate (Treasury) (26 U.S.C. § 7803(c))
13. Office of Special Counsel (5 U.S.C. § 1217)
14. Railroad Retirement Board (45 U.S.C. § 231f(f))
15. Small Business Administration (Chief Counsel for Advocacy) (15 U.S.C. § 634f)
16. Surface Transportation Board (Transportation) (49 U.S.C. § 703(g))
17. Federal Deposit Insurance Corporation (12 U.S.C. § 250)
18. Federal Reserve Board of Governors (12 U.S.C. § 250)
19. National Credit Union Administration (12 U.S.C. § 250)
20. Office of the Comptroller of the Currency (Treasury) (12 U.S.C. § 250)
21. Office of Federal Housing Enterprise Oversight (HUD) (12 U.S.C. § 250)
22. Office of Thrift Supervision (Treasury) (12 U.S.C. § 250)
23. Securities and Exchange Commission (12 U.S.C. § 250)

**Statutes that Address the Direct Submission of Budget Materials (and the agency concerned)**

1. Court of Appeals for Veterans Claims (38 U.S.C. § 7282)
2. International Trade Commission (19 U.S.C. § 2232)
3. Legal Services Corporation (42 U.S.C. § 2996d(e))
4. State Justice Institute (42 U.S.C. § 10704(c))
5. United States Institute of Peace (22 U.S.C. § 4608(a))
6. United States Postal Service (39 U.S.C. § 2009)
7. Social Security Administration (42 U.S.C. § 904(b)(1)(A))
8. Internal Revenue Service Oversight Board (26 U.S.C. § 7802)
9. District of Columbia Courts (Pub. L. No. 105-33, § 11242)

* Some of these statutes also address the direct submission of budget materials.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**PUBLIC CITIZEN, INC.,**                                  )
                                                          )
                    **Plaintiff**                          )
                                                          ) **Civil Action No. 07-0409 (RCL)**
          **v.**                                           )
                                                          )
**OFFICE OF MANAGEMENT AND BUDGET,**                       )
                                                          )
                    **Defendant.**                         )
_____              )

## <u>ORDER</u>

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Upon consideration of the Motion, Plaintiff's Opposition, Defendant's Reply, the relevant law,

and the entire record, it is hereby this _____ day of _____, 2007,

ORDERED that Defendant's Motion is hereby GRANTED, and it is further,

ORDERED that summary judgment be entered in favor of Defendant pursuant to Federal

Rule of Civil Procedure 56.  This is a final, appealable order.


_____
Royce C. Lamberth
United States District Judge