UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-409 (RCL) |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

This Freedom of Information Act (FOIA) case involves the Office of Management and Budget's (OMB's) withholding of records listing which agencies it permits to bypass its legislative and/or budgetary clearance processes, and of records explaining that an agency or agency can bypass one of those processes. OMB's legislative and budgetary clearance processes require agencies to submit draft legislation, reports, testimony, and budgetary materials to OMB before transmitting them to Congress.

The withheld records contain or explain OMB's policy concerning one of its primary roles. OMB's failure to disclose those records therefore violates FOIA's basic purpose of explaining how the government operates and shedding light on an agency's performance of its duties. FOIA, "properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (quotation marks and citations omitted).

OMB claims that these records are exempt as predecisional, deliberative materials and

internal practices whose disclosure would risk circumvention of law. However, it has not

demonstrated that either of the exemptions it cites apply to the records at issue here, and neither

exemption permits agencies to create and withhold secret law. The Court should deny

defendant's motion for summary judgment, grant plaintiff's motion, and order OMB to release

the requested records.

## BACKGROUND

### A.    Legislative and Budgetary Clearance and Bypass

OMB operates a formal legislative clearance process to "assur[e] that agency legislative

proposals and recommendations, as well as testimony, are consistent with [the President's]

policies and programs." OMB Memorandum M-01-12, *Legislative Coordination and Clearance*

(Feb. 15, 2001), available at http://www.whitehouse. gov/omb/memoranda/m01-12.html. Under

the clearance process, federal agencies must submit proposed legislation, reports, and testimony

to OMB before submitting them to Congress. *See* OMB Circular A-19, *Legislative Coordination*

*and Clearance* (attached to the Declaration of Adina H. Rosenbaum (Rosenbaum Decl.) as

Exhibit D). OMB then advises the agency whether or not the materials are in accord with or

consistent with the President's program. *See id*. Attachment C. After receiving OMB's

feedback, agencies must "incorporate the advice received from OMB in their reports and in their

letters transmitting proposed legislation to Congress." *Id.* ¶ 8(c)(1). "In the case of proposed

legislation, the originating agency shall not submit to Congress any proposal that OMB has

advised is in conflict with the program of the President or has asked the agency to reconsider as a

result of the coordination process." *Id*. ¶ 8(c)(3).

OMB operates a similar clearance process for budgetary materials, including budget

2

justifications and oversight materials, testimony and letters to congressional committees, written responses to congressional inquiries or other materials for the record, and materials responding to committee and subcommittee reporting requirements.  These materials must be cleared by OMB before being transmitted to congressional committees, individual members of Congress, or congressional staff.  Rosenbaum Decl. ¶ 7.

Both OMB Circular A-19, which contains legislative clearance requirements, and Circular A-1l, which contains budgetary clearance requirements, refer to the fact that some agencies may submit legislative and budgetary materials directly to Congress, without first clearing them with OMB.  *See* Rosenbaum Decl. Exhibit D ¶ 4 (Circular A-19 stating that it applies to all executive branch agencies "except those agencies that are specifically required by law to transmit their legislative proposals, reports, or testimony to the Congress without prior clearance"); Rosenbaum Decl. ¶ 7 (noting that Circular A-11 states that OMB may provide additional materials where "statutory provisions exist for the direct submission of the agency budget request to the Congress").  However, neither circular lists which agencies can submit their materials directly to Congress.  *See id*. ¶ 7 and Exhibit D.

**B.     Plaintiff's FOIA Request and the Agency's Response**

Because OMB's circulars do not list which agencies can bypass the legislative and budgetary clearance processes, on December 8, 2006, Public Citizen sent OMB a FOIA request to learn its policy on which agencies can transmit records to Congress without first submitting them to OMB.  Rosenbaum Decl. ¶ 2 and Exhibit A.  In particular, Public Citizen requested:

1) All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;
2) All records listing agencies that may directly submit budget-related materials to

Congress without receiving OMB clearance; and

3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

*Id*.

On January 10, 2007, OMB denied Public Citizen's request.  The denial letter stated that OMB had found two documents that were "potentially responsive" to the request, but that it had decided those records were exempt from disclosure under FOIA Exemptions 2 and 5, 5 U.S.C. §§ 552(b)(2) & (5).  Declaration of James Jukes (Jukes Decl.) Exhibit B.  Instead of releasing its policy on which agencies can bypass the legislative and budgetary clearance processes, OMB included in its letter a list of the statutes that address the direct submission of legislative materials and the agency concerned and a list of the statutes that address the direct submission of budgetary materials and the agency concerned.  *Id*.

Public Citizen appealed OMB's denial, explaining that the responsive records could not be withheld under either Exemption 2 or Exemption 5.  Rosenbaum Decl. Exhibit B.  It also questioned the adequacy of OMB's search for responsive records, noting that it had requested "*any* record that explains that *any* agency can submit legislative or budget-related materials to Congress without receiving OMB clearance," and that it is "difficult to believe that an adequate search for records responsive to the request would turn up only two records relating to agencies being permitted to bypass the legislative or budgetary clearance process."  *Id*.  On February 26, 2007, OMB denied Public Citizen's appeal.  Rosenbaum Decl. Exhibit C.  Two days later, Public Citizen filed this lawsuit, seeking disclosure of the requested records.

## C.    The Withheld Records

In its *Vaughn* Index, filed with its motion for summary judgment on May 14, 2007, OMB now identifies 22 responsive records that it is withholding.[1] According to the *Vaughn* Index, 13 of the 14 records contain a one or two page (or both) memorandum from the OMB Assistant Director for Legislative Reference to OMB policy officials or OMB's legislative reference staff. *See Vaughn* Index ¶¶ 1, 3-14. The memorandum contains unspecified "information about Federal agencies with legislative and budget 'bypass' authorities." Attached to the memorandum is a longer memorandum providing background on bypass authorities, listing the agencies with bypass authority, describing the authority under which each agency can bypass the clearance process, and explaining the relationship between bypass authority and the Inspector General Act. *Id*. In other words, these 13 records contain a cover memorandum and longer memorandum describing and explaining OMB's policy on legislative and budgetary bypass. Included in this description of the policy are "the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements." *Id*. The first record listed in the *Vaughn* Index, dated February 20, 2001, is the version of the memorandum that "currently appli[es] and [is] utilized by OMB employees," Jukes Decl. ¶ 17; the other 12 memoranda are "obsolete prior issuances" of the same memorandum. *Id.* ¶ 18.

---

[1] In his declaration, James Jukes noted that he was not certain whether 20 of the withheld records were responsive to the request but that he added them to the *Vaughn* Index out of an "abundance of caution." Jukes Decl. ¶ 18; *see also* Def. Mem. at 18 (explaining how Mr. Jukes added the records to the *Vaughn* Index out of "an abundance of caution" and an "abundance of completeness and thoroughness"). Mr. Jukes's uncertainty of whether those records are responsive apparently stems from his description of them as being "out dated, superseded, or now obsolete." Jukes Decl. ¶ 18. Records 3-21, however, all explain that agencies or an agency may bypass the legislative clearance process, and are all therefore clearly responsive to the FOIA request.

A fourteenth record is a two-page record entitled "Agencies Exempt from the Legislative Clearance Process" that is part of a larger document on "OMB Roles and Responsibilities." *Vaughn* Index ¶ 2. The contents of this record are unspecified except that among them are "OMB official's characterizations and perspectives concerning certain agencies views regarding legislative clearance requirements applicable to their respective agencies." *Id*. This record "currently appli[es] and [is] utilized by OMB employees." Jukes Decl. ¶ 17.

Seven of the other eight records are letters from the OMB Deputy Director to officials at other agencies "discuss[ing] [the] agency's legislative authority to bypass OMB's mandatory review and provid[ing] his comments and perspectives on legislative coordination between that agency and OMB." *Vaughn* Index ¶¶ 14-21. The final record is a memorandum from another agency to OMB giving that agency's perspectives on OMB's review of that agency's draft testimony, and a handwritten note from OMB's counsel regarding those views. *Vaughn* Index ¶ 22. After reviewing OMB's *Vaughn* Index, Public Citizen has decided it is not interested in this final record and is not challenging OMB's failure to release it.

OMB still claims that all of the responsive records are exempt under FOIA Exemptions 2 and/or 5.

## ARGUMENT

FOIA reflects the "strong policy" that "the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Because it was designed "to open agency action to the light of public scrutiny," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted), FOIA requires agency records to be disclosed unless they are subject to one of the limited exemptions provided in 5 U.S.C.

§ 552(b).  These exemptions are construed narrowly and "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id*.

FOIA's "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  To discharge this burden, "the agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).  The court gives no deference to the agency's reasoning for withholding the information and must decide *de novo* whether the exception applies.  5 U.S.C. § 552(a)(4)(B); *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) ("[T]he agency's opinions carry no more weight than those of any other litigant in an adversarial contest before a court.").  If the government does not "carry its burden of convincing the court that one of the statutory exemptions apply," the requested records must be disclosed. *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987).

Here, OMB claims that some of the requested records are exempt under FOIA Exemption 2, which exempts records that are "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), and that all of the requested records are exempt under Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  However, the withheld records are not predominantly internal, and they neither relate solely to trivial administrative matters nor would their release risk circumvention of any law or regulation.  Accordingly, they cannot be withheld under Exemption 2.  Moreover, the

records are not predecisional and deliberative and therefore cannot be withheld under the

deliberative process privilege encompassed in Exemption 5.  Summary judgment thus should be

granted to Public Citizen, and the requested records should be released.

**A.**     **OMB Cannot Withhold Any of the Requested Records Under Exemption 2**.

OMB invokes Exemption 2 to withhold the 13 records explaining and describing OMB's

policy on legislative and budgetary bypass, *Vaughn* Index ¶¶ 1, 3-14, and the record entitled

"Agencies Exempt from the Legislative Clearance Process." *Id*. ¶ 2.  Records may be withheld

under Exemption 2 if they are  "predominantly internal," *Crooker v.  Bureau of Alcohol, Tobacco*

*& Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc), and if either "the material relates to

trivial administrative matters of no genuine public interest," or "disclosure may risk

circumvention of agency regulation." *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C.

Cir. 1990) (citations omitted).  OMB fails both parts of this test.

First, the withheld records fail "the threshold test of predominant internality." *Schiller v.*

*NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).[2]  Information cannot meet this test if it "regulate[s]

the public" or "embod[ies] any 'secret law' of the agency."  *Crooker,* 670 F.2d at 1073; *see also*

*Dep't of Air Force v. Rose*, 425 U.S. 352, 369 (1976).  Here, the memoranda issued by OMB

listing which agencies can bypass the legislative and/or budgetary clearances processes and

explaining the background and authority for those agencies having bypass rights do not relate

---

[2]In its memorandum, OMB stresses that it stamped ten of the documents "for OMB internal use only" and that it stated in its *Vaughn* Index that 14 of the documents contain "internal information." Def. Mem. at 24.  OMB's conclusory use of the word "internal," however, does not provide useful information about the content of the records, nor does it demonstrate that either Exemption 2 or Exemption 5 applies.  Similarly, that OMB has chosen to keep the records secret and has placed one of the records on its internal website does not demonstrate that the records are predominantly internal for Exemption 2 purposes.

solely (or even predominantly) to the "internal workings of an agency." *Crooker*, 670 F.2d at 1056. To the contrary, such information relates to what is required of *other* agencies. In other words, the withheld records do not just "establish rules and practices for agency personnel," *id.* at 1073; they govern the actions of individuals outside of OMB, regulating which agencies must submit materials to OMB. Accordingly, Exemption 2 does not apply to them.

Moreover, even if OMB could overcome the hurdle of predominant internality it still would not be able to withhold the requested records under Exemption 2. OMB does not even attempt to argue—nor could it—that the withheld records are exempt under the "low 2" exemption, *see Schiller*, 964 F.2d at 1207, which applies to trivial administrative matters of no public significance. The public has an interest in knowing which agencies can submit proposed legislation, reports, testimony, and budgetary materials to Congress without first submitting them to OMB.

Instead, OMB contends that the records are exempt under the "high 2" exemption, which exempts material whose disclosure "would risk circumvention of agency statutes and regulations." *Id*. OMB's sole argument for why the high-2 exemption applies is that "the documents contain information regarding the agency's internal views on legislative clearance requirements," and "[i]f this information were disclosed, various federal agencies could use this information to challenge the application of the legislative clearance requirement to them, thus weakening the OMB's chief tool for legislative coordination." Def. Mot. at 24-25.

Although it is not entirely clear, OMB's argument seems to be that if agencies knew that other agencies were allowed to submit their materials directly to Congress when they were not, or if they understood OMB's views on whether or not they should be able to bypass the legislative

and budgetary clearance processes, they would get upset and challenge the legislative clearance process's application to them. The high-2 exemption, however, is designed to prevent *the public* from circumventing the law. The government cannot withhold records based on the argument that, if those records are released, it *itself* would break the law. The public should be able to trust that executive branch officials will abide by the law even if they are discontent with whether or not their agencies are permitted to bypass the legislative and budgetary clearance processes.

Moreover, the high-2 exemption does not apply to any information that, if released, would encourage someone to "challenge" a law. Rather, it applies to information that could allow someone to "circumvent" a law. Thus, for example, in *Sinsheimer v. United States Department of Homeland Security*, 437 F.Supp.2d 50, 56 (D.D.C. 2006), the court held that Exemption 2 applies to "agency procedures for the conduct of sexual harassment investigations" because exposure of the procedures would "create a serious risk of circumvention of the law by allowing subjects to anticipate and potentially foil investigative tactics the agency must protect to perform its official mission." Similarly, in *Judicial Watch, Inc. v. United States Department of Commerce*, 337 F.Supp.2d 146, 166 (D.D.C. 2004), the court held that "guidelines for protecting the Secretary of Commerce on trade missions and guidelines for internal audits of Commerce expenses and travel vouchers" were exempt because their disclosure could "compromise the Secretary's safety, making the Secretary subject to unlawful attacks, and could enable Commerce employees to evade the law when preparing expenses for audit."

In other words, the high-2 exemption applies to records that, if released, would be rendered "operationally useless" because the records themselves would inform people about how to get around them. *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 530

(D.C. Cir. 1986); *see also Schiller*, 964 F.2d at 1208.  Here, OMB has not explained how releasing the records listing and discussing which agencies can bypass the legislative and budgetary clearance processes would risk those agencies getting around the law.  If an agency is already on the list of agencies allowed to bypass the processes, knowing that it is on the list would not cause it to circumvent any laws; and if an agency is not on the list, the withheld records would not give it any guidance on how to avoid the law.

In short, Exemption 2 does not permit an agency to withhold a policy simply because, if the policy were disclosed, the people affected by it would be unhappy and would lobby for its change; agencies that are discontent with their presence or absence on the list of agencies that can bypass the legislative and budgetary clearance processes have every right to ask OMB, or even Congress, for a new policy.  OMB cannot invoke Exemption 2 to keep them from doing so, or to keep itself from having difficult conversations with other executive branch officials.  Exemption 2 does not justify OMB's withholding of the requested records.

**B.    OMB Cannot Withhold Any of the Requested Records Under Exemption 5.**

OMB claims that all of the responsive records are exempt under the deliberative process privilege encompassed in Exemption 5, which exempts from disclosure records that are "predecisional" and "deliberative."  *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc).  To be exempt under the deliberative process privilege, the records must be "generated before the adoption of an agency policy" and "reflect[] the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.   Here, the withheld records are not predecisional and deliberative and therefore are not exempt under the deliberative process privilege.

11

1.     **Records 1-14 Are Not Predecisional and Deliberative.**

Records 1-14 are not predecisional records that are part of a deliberative process.  Rather, they contain OMB's policy on which agencies can bypass the legislative and/or budgetary clearance processes, together (at least in the case of records 1 and 3-14) with background on bypass in general and an explanation for why each agency has bypass authority.  It is well-established that an agency cannot rely on the deliberative process privilege "to develop a body of 'secret law,' used by it in the discharge of its regulatory duties . . . ." *Coastal States*, 617 F.2d at 867; *see also, e.g., Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[S]tatements of an agency's legal position . . . cannot be viewed as predecisional."); *Pies v. U.S. I.R.S.*, 668 F.2d 1350, 1353 (D.C. Cir. 1981) (documents that "reflect the working law of the agency," including "statements of policies" "do not fall within the protection of Exemption 5"); *Schwartz v. IRS*, 511 F.2d 1303, 1305 (D.C. Cir. 1975) (internal memoranda are not protected "if they represent policies, statements or interpretations of law that the agency has actually adopted"). Accordingly, records 1-14 must be released.

OMB contends that these records do not contain "the policy of a government agency" but rather "the personal opinions of the writer."  Def. Mem. at 29.  However, neither James Jukes's declaration nor the *Vaughn* Index describe these records as containing personal opinions.  To the contrary, Mr. Jukes describes records 3-14 as having been "issu[ed]" and as now being "obsolete."  Jukes Decl. ¶ 18.  These are not words used to describe personal opinions, but rather to describe policies.  Similarly, according to Mr. Jukes, records 1 and 2 "currently apply and are utilized by OMB employees." *Id.* ¶ 17.  This description makes sense if describing a policy, but not if describing "one employee's opinion."  Def. Mem. at 29.

Further, records 1 and 3-14 contain versions of the same memorandum, updated and reissued by OMB's Legislative Reference Division every few years from 1979 through 2001. It is disingenuous to contend that the head of that division issued his personal opinions on legislative and budgetary bypass in regular memoranda as part of a 22-year long deliberative process that did not include any deliberative materials from anyone else and never led to any final policy. And although the Assistant Director for Legislative Reference changed multiple times between 1979 and 2001, Mr. Jukes's declaration identifies only changes in law and practice, not changes in personality, as the reason the older memos became obsolete. Jukes Decl. ¶ 18.

Moreover, even if Mr. Jukes's declaration did describe these records as personal (or if Mr. Jukes submitted a supplemental declaration suddenly declaring that the records contained only personal opinions), that label would not be controlling. An agency cannot hide a policy "behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States*, 617 F.2d at 867. Here, records 1 and 2 "apply" and are "utilized" by the agency, Jukes Decl. ¶ 17, and records 3-14 are "obsolete prior issuances" of record 1, *id.* ¶ 18, that presumably applied and were utilized before they were superseded. Even if not declared binding by the agency, the records contain agency law that cannot be withheld. *See Tax Analysts,* 117 F.3d at 617 ("The fact that [the records] are nominally non-binding is no reason for treating them as something other than considered statements of the agency's legal position."); *Coastal States*, 617 F.2d at 869 (D.C. Cir. 1981) (explaining that an agency is not permitted to withhold records "routinely used by agency staff as guidance" and "retained and referred to as precedent" because they constitute "a body of secret law which [the agency] is actually applying in its dealings with the public but which it is attempting to protect behind a label"). Because they contain the policy

13

actually followed by OMB, either now or in the past, records 1-14 are "neither 'predecisional' nor 'deliberative.'" *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978).

OMB also asserts that records 1-14 are exempt under the deliberative process privilege because they include "information used by OMB in determining whether certain federal agencies must comply with OMB's budgetary and legislative clearance requirement." Def. Mem. at 26.[3] To begin with, however, the *Vaughn* Index does not state that these records contain information relied on by OMB to create its policy; rather, it states, with regard to records 1 and 3-14, that they contain "a description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements." *Vaughn* Index, ¶¶ 1, 3-14. With regard to record 2, it states, "[i]ncluded in this document are OMB official's characterizations and perspectives concerning certain agencies views regarding legislative clearance requirements applicable to their respective agencies." *Id.* ¶ 2. These descriptions are somewhat opaque and do not meet defendant's burden of demonstrating that these records are predecisional and deliberative. Moreover, it seems likely that what the *Vaughn* Index is describing as being contained in the records is the OMB official's *explanation* of the bypass policy. Records that explain the reasons for decisions after they are made are not predecisional and therefore are not protected by Exemption 5. *See Sears,* 421 U.S. at 151-52 (expressing approval of lower courts' "distinction between predecisional communications, which are

---

[3]In particular, OMB, citing its *Vaughn* Index, claims that records 1-14 contain "internal information that was passed from one OMB official to the next as part of a discussion of the views and perspectives of OMB officials concerning bypass authority." Def. Mem. at 26. Notably, the *Vaughn* Index does not in fact claim that these records were part of a "discussion" of OMB's views and perspectives, but rather that they contain a "description" of those views and perspectives. *See Vaughn* Index ¶¶ 1, 3-14. Although the word "discussion" may imply some give-and-take, the word "description" does not.

privileged, and communications made after the decision and designed to explain it, which are not"); *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (explaining that "an agency's contemporaneous or after-the-fact explanation of a decision [that] . . . carefully weighs the arguments for and against various outcomes before announcing a winner" is not exempt from disclosure). As the Supreme Court has explained, "the public is vitally concerned with the reasons which [supplied] the basis for an agency policy actually adopted." *Sears*, 421 U.S. at 152. "These reasons, if expressed within the agency, constitute the 'working law' of the agency . . . ." *Id.* at 152-53; *see also Taxation with Representation v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981).

In any event, if an agency "chooses expressly to adopt or incorporate by reference an intra-agency memorandum" in a final policy, that memorandum loses its Exemption 5 protection. *Sears*, 421 U.S. at 161; *see also Safecard Servs, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) ("[I]f, in explaining its collective decision, the Commission expressly adopts or incorporates any element of a Commissioner's or a staff member's prior oral or written discussion of the matter, those incorporated portions of earlier minutes or documents would no longer qualify as pre-decisional."). Thus, even if the records do contain some predecisional, deliberative information, that information still would not be exempt from disclosure because it was incorporated into the agency's final policy.[4]

---

[4]OMB also claims that the records are predecisional and deliberative because some of the opinions and recommendations in them "concern matters that are fluid and are considered, reviewed and reconsidered." Jukes Decl. ¶ 20. Mr. Jukes does not specify which of the withheld records contain such opinions and recommendations. In any event, an agency cannot withhold its working law simply because that law—like all law—may, at some point, be "considered, reviewed and reconsidered."

Finally, even if records 1-14 contain some information that is exempt under the deliberative process privilege—and they do not—that information would be segregable from other sections of the record.  Under FOIA, agencies must release "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b); *see Mead*, 566 F.2d at 260 ("[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").  An agency's conclusory assertion that it has satisfied the segregability requirement is inadequate; the agency must provide sufficient details for the district court to make a *de novo* finding on segregability.  *See Mead*, 566 F.2d at 261; *see also, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993).  Here, Mr. Jukes simply stated in his declaration that "OMB withheld documents which contain factual material intermingled with the author's impressions or analysis.  Such intermingled factual material is not reasonably segregable from the overall deliberative quality of these materials."  Jukes Decl. ¶ 21. At the very least, however, the agency could segregate and release the lists of agencies that OMB permits to bypass the legislative and/or budgetary clearance processes agencies, which the *Vaughn* Index states are included in records 1 and 3-14, and which, based on its name, seem likely to be included in record 2 as well.  It could also release the description of the authority under which the listed agencies can bypass the clearance processes.  These sections of the records are neither deliberative nor predecisional and accordingly are not exempt under the deliberative process privilege.[5]

---

[5]If the Court concludes that OMB has met its burden of demonstrating that the withheld records contain some exempt material, Public Citizen requests that the Court order defendant to release the lists of agencies that can bypass the legislative and/or budgetary clearance processes and conduct an in camera review of the withheld records to determine what other segregable material they contain.  *See* 5 U.S.C. § 552(a)(4)(B) (permitting in camera review).

2.    **OMB Has Not Demonstrated that Records 15-21 Are Predecisional and Deliberative.**

OMB also cannot withhold records 15-21 under the deliberative process privilege. Except for stating conclusorily that these records contain "interagency or intra-agency predecisional, deliberative communications," *see Vaughn* Index ¶¶ 15-21, the agency has made no showing that these records are predecisional. To the contrary, all of these records are dated July 18, 2001, and therefore post-date record 1, dated February 20, 2001, which contains the policy that currently applies and is utilized by OMB employees. Jukes Decl. ¶ 17.

Further, OMB has not demonstrated that the records are deliberative. According to the *Vaughn* Index, records 15-21 consist of letters from Sean O'Keefe, OMB's Deputy Director, to officials at other agencies, discussing "that agency's legislative authority to bypass OMB's mandatory review and provid[ing] his comments and perspectives on legislative coordination between that agency and OMB." *Vaughn* Index ¶¶ 15-21. It is unclear why OMB would be providing another agency with deliberative, rather than final, information about that agency's authority to bypass OMB review. Moreover, an agency's explanation of a policy that already exists is not privileged from disclosure. *See Access Reports*, 926 F.2d at 1194. At the very least, therefore, the parts of the letters that provide final information explaining the agency's bypass authority are not exempt and should be disclosed.

## CONCLUSION

For the foregoing reasons, the Court should deny OMB's motion for summary judgment, grant Public Citizen's motion for summary judgment, and order OMB to release the requested records.

17

Respectfully submitted,


 /s/ Adina H. Rosenbaum
Adina H. Rosenbaum
(DC Bar No. 490928)
Brian Wolfman
(DC Bar No. 427491)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC  20009
(202) 588-1000
(202) 588-7795 (fax)

Attorneys for Plaintiff

Dated: June 13, 2007

18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, INC.,                          )
                                               )
                          Plaintiff,           )
                                               )
v.                                             )          Civil Action No. 07-409 (RCL)
                                               )
OFFICE OF MANAGEMENT AND BUDGET,               )
                                               )
                          Defendant.           )
_____)

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AND RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56, plaintiff sets forth this statement of material facts as to which there is no genuine issue and responds to defendant's statement of material facts as to which there is no genuine issue. The paragraph numbers below correspond to the paragraph numbering of defendant's statement of material facts.

1.      It is undisputed that OMB is a federal agency that plays a management and budgetary role within the executive branch. The rest of this paragraph is immaterial to whether the withheld records must be disclosed under the Freedom of Information Act (FOIA).

2.      It is undisputed that OMB engages in a legislative clearance process. OMB also conducts a budgetary clearance process. Declaration of Adina H. Rosenbaum (Rosenbaum Decl.) ¶ 7. The rest of this paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

3.      It is undisputed that the legislative clearance process includes interagency review of agency proposals for legislation, testimony, and reports to Congress. The rest of this paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

4.      It is undisputed that the Legislative Reference Division conducts the legislative clearance process.  The rest of this paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

5.      Undisputed.

6.      It is undisputed that OMB receives drafts of reports, testimony, and legislation for interagency review and clearance on a regular basis. The rest of this paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

7.      Undisputed, except that the word "proposal" was plural in the request letter, and the word "with" in line 4 of this paragraph of defendant's statement was "without" in the request letter. Rosenbaum Decl. Exhibit A.

8.      Undisputed, except OMB's letter did not include the word "the" before "legislative materials," and did include the word "a" before the second appearance of the words "listing of those statutes."  Declaration of James Jukes (Jukes Decl.) Exhibit B.

9.      Undisputed.

10.     Undisputed, except OMB's letter included the words "we are continuing to withhold" after the word "documents;" did not have a comma before the word "including;" had a comma, the words "for example," and another comma between the words "including" and "deliberative;" and used the word "guidelines" instead of "guidance."  Rosenbaum Decl. Exhibit C.

11.     Undisputed.

12.     It is undisputed that OMB is a federal agency located in Washington, D.C., with several offices.  Defendant's characterizations of the size of the agency are immaterial to whether the withheld records must be disclosed under FOIA.

13.    Facts related to defendant's search for responsive records are immaterial because plaintiff is not challenging the adequacy of the search for the records.

14.    Facts related to defendant's search for responsive records are immaterial because plaintiff is not challenging the adequacy of the search for the records.

15.    It is undisputed that documents 1 and 2 in the *Vaughn* Index currently apply and are utilized by OMB employees.  Document 1 contains a cover memorandum and a longer memorandum providing background on bypass authorities, listing the agencies with bypass authority, describing the authority under which each agency can bypass the clearance process, and explaining the relationship between bypass authority and the Inspector General Act.  *Vaughn* Index ¶ 1.  Facts related to defendant's search for responsive records are immaterial because plaintiff is not challenging the adequacy of the search for the records.

16.    It is undisputed that defendant enclosed with the letter to plaintiff, dated January 10, 2007, a piece of paper with a list entitled "Statutes that Address the Direct Submission of Legislative Materials (and the agency concerned)" and a list entitled "Statutes that Address the Direct Submission of Budget Materials (and the agency concerned)."  It is also undisputed that, in the January 10, 2007, letter, OMB stated that it was not releasing the responsive records it had found at that point because it had decided they were exempt under Exemptions 2 and 5.

17.    It is undisputed that defendant's *Vaughn* Index listed an additional 20 documents.  It is also undisputed that these records are "outdated, superseded, or now obsolete" in that they do not contain OMB's most recent policy on legislative or budgetary bypass.  Mr. Jukes's personal motivation for including these responsive records in the *Vaughn* Index is immaterial to whether the records are exempt from disclosure under FOIA.

3

18.     It is undisputed that 12 of the documents are prior issuances of the February 20, 2001 memorandum (referenced as *Vaughn* Index item 1) which were issued between 1979 and 1999 and are now obsolete in that they do not contain OMB's current policy on legislative and budgetary bypass.  These documents contain a cover memorandum or two and a longer memorandum providing background on bypass authorities, listing the agencies with bypass authority, describing the authority under which each agency can bypass the clearance process, and explaining the relationship between bypass authority and the Inspector General Act.  *Vaughn* Index ¶¶ 3-14.  It is also undisputed that OMB did not reference these responsive records during the administrative process.  The rest of this paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

19.     It is undisputed that eight of the documents in the *Vaughn* Index are inter-agency Executive branch correspondence, including seven letters dated July 18, 2001, and a memo dated March 15, 2002.  Mr. Jukes's personal motivation for including these responsive records in the *Vaughn* Index is immaterial to whether the records are exempt from disclosure under FOIA.  It is also undisputed that the 20 withheld documents that OMB failed to mention during the administrative process are being withheld and are included in the *Vaughn* Index.  Plaintiff disputes defendant's characterization that these records are described "in detail."  *See Vaughn* Index.

20.     It is undisputed that the *Vaughn* Index is nine pages long and contains a paragraph for each responsive record defendant has located that includes the date (except for one undated item), the sender, the recipient, brief information about the record, and which exemption(s) the agency is claiming.

21.    It is undisputed that defendant claims that these records are exempt under FOIA exemption 5.  The rest of this paragraph contains a legal conclusion that is disputed by plaintiff.

22.    This paragraph is immaterial to whether the withheld records must be disclosed under FOIA.

23.    It is undisputed that OMB marked some of the responsive records with the term "for OMB internal use only."  It is also undisputed that some of the documents contain correspondence between OMB and officials in various other agencies relating to legislative coordination between the agencies and those agencies' authority to bypass OMB's clearance processes.  The rest of this paragraph contains legal conclusions that are disputed by plaintiff.

24.    It is undisputed that OMB marked some of the responsive records with the term "for OMB internal use only." It is also undisputed that document 2 is part of a larger internal OMB document entitled "OMB Roles and Responsibilities" and can be found on OMB's internal website.  It is further undisputed that documents 1 through 14 contain information related to legislative and/or budgetary bypass authority.   Plaintiff does not understand what is meant by "views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements" and therefore can neither dispute nor agree with that characterization of the information in the records.  The rest of the paragraph contains legal conclusions that are disputed by plaintiff.

25.    Immaterial.  Plaintiff is not challenging defendant's withholding of document 22.

26.    This paragraph contains legal conclusions that are disputed by plaintiff.

Respectfully submitted,


 /s/ Adina H. Rosenbaum
Adina H. Rosenbaum
(DC Bar No. 490928)
Brian Wolfman
(DC Bar No. 427491)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC  20009
(202) 588-1000
(202) 588-7795 (fax)

Attorneys for Plaintiff

Dated: June 13, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, INC.,                    )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )    Civil Action No. 07-409 (RCL)
                                         )
OFFICE OF MANAGEMENT AND BUDGET,         )
                                         )
                    Defendant.           )
_____    )

### <u>Declaration of Adina H. Rosenbaum</u>

I, Adina H. Rosenbaum, declare as follows:

1.      I am a staff attorney at Public Citizen.

2.      On December 8, 2006, on behalf of Public Citizen, I sent a Freedom of Information Act

(FOIA) request to OMB.  In that request, I asked for: "1) All records listing agencies that may

directly submit legislative proposals, reports, or testimony to Congress without receiving OMB

clearance; 2) All records listing agencies that may directly submit budget-related materials to

Congress without receiving OMB clearance; and 3) All records explaining that agencies or an

agency may directly submit legislative or budget-related materials to Congress without receiving

OMB clearance or providing statutory authority for agencies or an agency to directly submit

legislative or budget-related materials to Congress without receiving OMB clearance." The FOIA

request letter is attached as Exhibit A.

3.      By letter dated January 10, 2007, OMB informed me that it had two documents that were

"potentially responsive" to the request, but that it had decided that the documents are exempt

from disclosure under FOIA Exemptions 2 and 5, 5 U.S.C. §§ 552(b)(2) & (5).

4.      By letter dated January 18, 2007, I appealed OMB's denial on behalf of Public Citizen. My letter explained that FOIA Exemptions 2 and 5 do not apply to the requested records.   I also appealed the adequacy of OMB's search for records, noting that our request letter had requested "*any* record that explains that *any* agency can submit legislative or budget-related materials to Congress without receiving OMB clearance," and that it is "difficult to believe that an adequate search for records responsive to the request would turn up only two records relating to agencies being permitted to bypass the legislative or budgetary clearance processes." The appeal letter is attached as Exhibit B.

5.      By letter dated February 26, 2007, OMB denied the appeal, asserting that its search was sufficient and that "the two documents referenced in our January 10, 2007 letter have been properly withheld pursuant to FOIA Exemptions (b)(2) and (b)(5)." OMB's letter denying the appeal is attached as Exhibit C.

6.      I have reviewed OMB Circular A-19, *Legislative Coordination and Clearance*, which is available at http://www.whitehouse.gov/omb/circulars/a019/a019.html.  Circular A-19 requires agencies to submit proposed legislation, reports, and testimony to OMB before transmitting them to Congress.  Circular A-19 states that it applies to all executive branch agencies "except those agencies that are specifically required by law to transmit their legislative proposals, reports, or testimony to the Congress without prior clearance."  Circular A-19, ¶ 4.  Circular A-19 is attached as Exhibit D.

7.      I have also reviewed OMB Circular A-11, *Preparation, Submission, and Execution of the Budget*, which is available at http://www.whitehouse.gov/omb/circulars/a11/current_year/s22.pdf. Circular A-11 requires agencies to submit budget-related materials to OMB for clearance before

transmitting them to congressional committees, individual members of Congress, or

congressional staff.  Budget-related materials include budget justifications and oversight

materials, testimony and letters to congressional committees, written responses to congressional

inquiries or other materials for the record, and materials responding to committee and

subcommittee reporting requirements.  *See* Circular A-11, § 22.3.  Section 22.2 of Circular A-11

states that OMB may provide agencies with additional materials supporting the President's

budget "[i]f statutory provisions exist for the direct submission of the agency budget request to

the Congress."  However, the Circular does not state which agencies can directly submit their

budget requests or other budgetary materials to Congress.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.


Executed on June 13, 2007.


_Adina H. Rosenbaum_

3

# Exhibit A

**PUBLIC CITIZEN LITIGATION GROUP**
1600 TWENTIETH STREET, NW
WASHINGTON, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

————

ADINA H. ROSENBAUM
Direct Dial: (202) 588-7720
E-mail: arosenbaum@citizen.org

December 8, 2006

VIA FAX AND FIRST CLASS MAIL

Donald Hawkins
FOIA Officer
Office of Management and Budget
725 17th St., NW
Room 9026
Washington, DC 20503
FAX: (202) 395-3504

RE:    **Freedom of Information Act Request**

Dear Mr. Hawkins:

On behalf of Public Citizen, and pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I request the following records:

1) All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;
2) All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB clearance; and
3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

If it is your position that records exist that are responsive to this request, but that those records (or portions of those records) are exempt from disclosure, please identify the records that are being withheld and state the basis for the denial for each record being withheld. In addition, please provide the nonexempt portions of the records.

Public Citizen requests that all fees in connection with this FOIA request be waived in accordance with 5 U.S.C. § 552(a)(4)(A)(iii), because it does not seek the records for a commercial purpose and disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government." Public

Citizen is a nonprofit research, litigation, and advocacy organization that represents consumer interests before Congress, the executive branch, and the courts, and that fights for openness and democratic accountability in government. Public Citizen regularly publishes reports based upon information acquired through FOIA. Public Citizen disseminates its reports via publication, through our website, and through various newsletters that are distributed to consumers, lawyers, academics, and other interested parties free of charge.

Accordingly, we request that you waive all fees for locating and duplicating the requested records. If, however, a waiver is not granted, then please advise us of the amount of any proposed search, review, and reproduction charges before those activities are carried out.

We will expect a response within 20 working days as provided by law. If you have any questions regarding this request, please contact me at (202) 588-7720.

Thank you very much for your attention to this matter.

Sincerely,

Adina H. Rosenbaum

# Exhibit B

**PUBLIC CITIZEN LITIGATION GROUP**
1600 TWENTIETH STREET, NW
WASHINGTON, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

———

ADINA H. ROSENBAUM
Direct Dial: (202) 588-7720
E-mail: arosenbaum@citizen.org

January 18, 2007

FOIA Officer
Office of Management and Budget
725 17th St., NW
Washington, DC 20503

  **RE: Freedom of Information Act Appeal**

Dear FOIA Officer:

  This letter is an appeal from the January 10, 2007 denial of a Freedom of Information Act (FOIA) request that I sent to the Office of Management and Budget (OMB), on behalf of Public Citizen, on December 8, 2006. That request sought access to:

  1) All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;
  2) All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB clearance; and
  3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

  On November January 10, 2007, in a letter signed by Lauren E. Wright, Deputy Assistant Director for Administration, OMB denied the request. The letter stated: "[W]e have found two documents that are potentially responsive to your request. It is my decision, however, that these documents are exempt from mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2)(5). These documents relate to OMB's internal personnel rules and practices and, to the extent that they contain information that extends beyond such rules and practices, the documents contain predecisional and deliberative information, the disclosure of which would harm the decision-making process."

  Copies of my December 8, 2006 request and OMB's January 10, 2007 denial are enclosed with this appeal.

  First, we appeal OMB's decision to withhold the two documents it found pursuant to FOIA Exemption 2, 5 U.S.C. 552(b)(2), which exempts records that are "related solely to the

internal personnel rules and practices of an agency." For starters, the records requested do not "relate solely" to "internal personnel rules and practices." Rather, they reflect OMB's interactions with other agencies in the executive branch and delineate which agencies OMB considers bound by the requirements of OMB Circulars A-11 and A-19. And even when records meet the threshold test for internality, they can only be withheld pursuant to Exemption 2 if their "disclosure may risk circumvention of agency regulation" or "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of Air Force,* 898 F.2d 793, 794 (D.C.Cir. 1990) (citations omitted). Disclosure of the requested records would not risk circumvention of any law or regulation, nor do the records relate solely to trivial administrative matters of no public interest. The public has an interest in understanding the relationships between the administrative agencies and Congress and learning which agencies can submit legislative and/or budgetary materials directly to Congress without first receiving clearance from OMB.

Second, we appeal OMB's determination that the records can be withheld under the deliberative process privilege included in Exemption 5, 5 U.S.C. 552(b)(5). For records to be withheld under that privilege, they must be both "predecisional" and "deliberative." *See NRLB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 (1975). The requested records are neither. Instead, they reflect OMB's policy about which agencies can submit legislative and/or budgetary materials to Congress without receiving OMB clearance. The government must release records that contain the laws and policy under which it is operating; it is not allowed to "develop a body of 'secret law.'" *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 867 (D.C.Cir. 1980). Moreover, to be exempt, the records must be "generated before the adoption of an agency policy." *Id.* at 866. The requested records do not contain deliberations relating to a future decision, but rather list which agencies OMB has already decided can bypass the legislative and/or budgetary clearance process.

Finally, we question and appeal the adequacy of OMB's search for records. We requested *any* record that explains that *any* agency can submit legislative or budget-related materials to Congress without receiving OMB clearance. It seems difficult to believe that an adequate search for records responsive to this request would turn up only two records relating to agencies being permitted to bypass the legislative or budgetary clearance processes.

Thank you for your time and attention to this matter. I will expect a determination with respect to this appeal within twenty working days, as required by law. If any records are denied on appeal, please provide me with a description of each withheld record, its date, and the agency's justification for the withholding. Should you have any questions regarding this appeal, please feel free to contact me at (202) 588-7720.

Sincerely,

Adina H. Rosenbaum

Exhibit C

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

February 26, 2007

Ms. Adina H. Rosenbaum
Public Citizen Litigation Group
1600 Twentieth Street, NW
Washington, DC 20009

Dear Ms. Rosenbaum:

This responds to your appeal letter dated January 18, 2007, which was received in the Office of Management and Budget's (OMB) Freedom of Information Act (FOIA) Office on January 26, 2007, concerning OMB's January 10, 2007, response letter to your FOIA request dated December 8, 2006 which was received in OMB's FOIA Office on December 8, 2006. Your request asked for:

1.  All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;

2.  All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB Clearance; and

3.  All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

In our January 10, 2007 response letter, we stated that upon a thorough search of our files, we have found two (2) documents potentially responsive to your request. We withheld both of these documents as being exempt from mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2) and (b)(5). Our January 10, 2007 response letter did provide you with a document listing those statutes (and the concerned agencies) that address the direct submission of legislative materials and a listing of those statutes (and the concerned agencies) that address the direct submission of budget materials.

In your appeal letter, you asked OMB to review and reconsider our decision to withhold the two documents withheld under FOIA exemptions (b)(2) and (b)(5). Your appeal letter also questioned the adequacy of OMB's search. In response to your appeal, we have conducted a careful review of the entire file. OMB staff from its Legislative Reference Division conducted the search of relevant files, where OMB reasonably believed responsive information would reside. Moreover, OMB's previous response provided you with a document listing those statutes (and the concerned agencies) that address the direct submission of legislative materials and a

listing of those statutes (and the concerned agencies) that address the direct submission of budget materials. Therefore, we have determined that OMB's search was sufficient.

With regard to your request for OMB to review our decision to withhold the two documents withheld under FOIA exemptions (b)(2) and (b)(5), we have re-reviewed those documents. We have determined that the two documents referenced in our January 10, 2007 letter have been properly withheld pursuant to FOIA Exemptions (b)(2) and (b)(5). Exemption (b)(2) exempts from release those internal government documents which relate solely to an agency's internal personnel rules and practices. Exemption 5 exempts from release those documents which constitute intra-agency or inter-agency, pre-decisional, and deliberative communications, the disclosure of which would inhibit the frank and candid expression of views necessary for the government decision making process. The documents we are continuing to withhold contain internal governmental communications including, for example, deliberative advice and guidelines to OMB staff that is labeled "for OMB internal use only" (emphasis in original). We believe that the release of these materials would chill the deliberative process, which would be contrary to the public interest. In addition, these materials relate to internal guidance solely for OMB staff. Moreover, we have determined that the documents do not contain any information that is reasonably segregable from the withheld information, therefore we are continuing to withhold these documents (in their entirety) as exempt from mandatory disclosure under FOIA Exemptions (b)(5) and (b)(2). For these reasons, and the reasons cited in our earlier correspondence, I reaffirm OMB's prior decision not to release this material and therefore decline to release them.

Judicial review of my action on your appeal is available to you in accordance with the provisions of 5 U.S.C. § 552(a)(4).

Sincerely,

Kimberley Luczynski
Acting Deputy General Counsel

# Exhibit D

 

**OFFICE OF**
# MANAGEMENT AND BUDGET

## Circular No. A-19

**Revised September 20, 1979**

## TABLE OF CONTENTS

1. Purpose
2. Rescission
3. Background
4. Coverage
5. Definitions

    a.   Advice
    b.   Agency
    c.   Proposed legislation
    d.   Pending bill
    e.   Report (including testimony)
    f.   Enrolled bill
    g.   Views letter

6. Agency legislative programs

    a.   Submission to OMB
    b.   Purposes of legislative program submission
    c.   Timing of submission to OMB
    d.   Number of copies
    e.   Program content
    f.   Relationship to advice

7. Submission of agency proposed legislation and reports

    a.   Submission to OMB
    b.   Agency scheduling of submissions
    c.   Timing of agency submissions
    d.   Number of copies
    e.   Submission of legislation authorizing the enactment of new budget authority
    f.   Items to be included in agency submissions
    g.   Views letters
    h.   Certain statutory and other requirements and Administration policies
    i.   Drafting service
    j.   Use of "no comment" reports

8. Clearance of agency proposed legislation and reports

    a.   OMB action on agency submissions
    b.   Forms of OMB advice
    c.   Agency action on receipt of advice from OMB
    d.   Agency action where prior clearance has not been effected
    e.   Reclearance requirements

9. Interagency consultation

10. Enrolled bills

    a.  Initial OMB action
    b.  Agency action
    c.  Preparation of enrolled bill letters
    d.  Subsequent OMB action

11. Agency legislative liaison officers

12. Communications to OMB

**Attachments:**

    A.  Instructions Relating to the Preparation of Agency Legislative Programs
    B.  Instructions for the Preparation and Submission to Congress of Legislative Proposals Authorizing the
        Enactment of Additional Appropriations or Providing New Budget Authority Outside of Appropriation Acts
    C.  Basic Forms of OMB Advice

---

September 20, 1979

**CIRCULAR NO. A-19**
**Revised**
**Transmittal Memorandum No. 1**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND ESTABLISHMENTS**

**SUBJECT:**   Revision of Circular No. A-19, Revised, Dated July 31, 1972:
Legislative Coordination and Clearance

This transmits a revision of Circular No. A-19, Revised, dated July 1972: Legislative Coordination and Clearance.

The attached revision updates the Circular generally and makes explicit several long-standing practices. It does not change the basic aspects of the legislative coordination and clearance requirements and process.

The principal changes are as follows:

1.  The Circular has been extensively restructured and a table of contents has been added to facilitate its
    reference use.
2.  Requirements to identify the effect of legislation on personnel needs have been made explicit (sections 6e(5),
    7f(1)(c), 7f(2), and 1Oc(4)(f)).
3.  Requirements are set forth with respect to section 607 of the Congressional Budget Act of 1974 dealing with
    year-ahead requests for authorizing the enactment of new budget authority (section 7e and Attachment B).
4.  Additions have been made to the list of statutory and other requirements and Administration policies that
    should be taken into account (section 7h).
5.  orms of clearance advice given by OMB are set forth and explained (section 8(b) and Attachment C).
6.  Previous Attachments B, C, and D have been deleted.

Attachments

**CIRCULAR NO. A-19**
**Revised**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND ESTABLISHMENTS**

**SUBJECT:**  Legislative coordination and clearance

1. **Purpose.** This Circular outlines procedures for the coordination and clearance by the Office of Management and Budget (OMB) of agency recommendations on proposed, pending, and enrolled legislation. It also includes instructions on the timing and preparation of agency legislative programs.

2. **Rescission.** This revision supersedes and rescinds Circular No. A-19, Revised, dated July 31, 1972.

3. **Background.** OMB performs legislative coordination and clearance functions to (a) assist the President in developing a position on legislation, (b) make known the Administration's position on legislation for the guidance of the agencies and information of Congress, (c) assure appropriate consideration of the views of all affected agencies, and (d) assist the President with respect to action on enrolled bills.

4. **Coverage.** All executive branch agencies (as defined in section 5b) are subject to the provisions of this Circular, except those agencies that are specifically required by law to transmit their legislative proposals, reports, or testimony to the Congress without prior clearance. OMB will, however, honor requests from such agencies for advice on the relationship of particular legislation, reports, or testimony to the program of the President. The municipal government of the District of Columbia is covered to the extent that legislation involves the relationship between it and the Federal Government. Agencies of the legislative and judicial branches are not covered by this Circular.

5. **Definitions.** For the purpose of this Circular, the following definitions apply:

   a. **Advice.** Information transmitted to an agency by OMB stating the relationship of particular legislation and reports thereon to the program of the President or stating the views of OMB as a staff agency for the President with respect to such legislation and reports.

   b. **Agency.** Any executive department or independent commission, board, bureau, office, agency, Government-owned or controlled corporation, or other establishment of the Government, including any regulatory commission or board and also the municipal government of the District of Columbia.

   c. **Proposed legislation*.** A draft bill or any supporting document (e.g., Speaker letter, section-by-section analysis, statement of purpose and justification, etc.) that an agency wishes to present to Congress for its consideration. Also, any proposal for or endorsement of Federal legislation included in an agency's annual or special report or in other written form which an agency proposes to transmit to Congress, or to any Member or committee, officer or employee of Congress, or staff of any committee or Member, or to make available to any study group, commission, or the public.

   d. **Pending bill.** Any bill or resolution that has been introduced in Congress or any amendment to a bill or resolution while in committee or when proposed for House or Senate floor consideration during debate. Also, any proposal placed before the conferees on a bill that has passed both Houses.

   e. **Report** (including testimony).* Any written expression of official views prepared by an agency on a pending bill for (1) transmittal to any committee, Member, officer or employee of Congress, or staff of any committee or Member, or (2) presentation as testimony before a congressional committee. Also, any comment or recommendation on pending legislation included in an agency's annual or special report that an agency proposes to transmit to Congress, or any Member or committee, or to make available to any study group, commission, or the public.

   f. **Enrolled bill.** A bill or resolution passed by both Houses of Congress and presented to the President for action.

   g. **Views letter.** An agency's written comments provided at the request of OMB on a pending bill or on another agency's proposed legislation, report, or testimony.

6. **Agency legislative programs.**

   a. Submission to OMB. Each agency shall prepare and submit to OMB annually its proposed legislative program for the next session of Congress. If an agency has no legislative program, it should submit a statement to this effect.

---

* The terms "proposed legislation" and "report" do not include materials submitted in justification of appropriation requests or proposals for reorganization plans.

   b. Purposes of legislative program submission. The essential purposes for requiring agencies to submit annual legislative programs are: (1) to assist agency planning for legislative objectives; (2) to help agencies coordinate their legislative program with the preparation of their annual budget submissions to OMB; (3) to give agencies an opportunity to recommend specific proposals for Presidential endorsement; and (4) to aid OMB and other staff of the Executive Office of the President in developing the President's legislative program, budget, and annual and special messages.

c. Timing of submission to OMB. (1) Each agency shall submit its proposed legislative program to OMB at the same time as it initially submits its annual budget request as required by OMB Circular No. A-11. Timely submission is essential if the programs are to serve the purposes set forth in section 6b.

(2) Items that are not included in an agency's legislative program and have significant upward budget impact will not be considered after the budget is prepared unless they result from circumstances not foreseeable at the time of final budget decisions.

d. Number of copies. Each agency shall furnish 25 copies of its proposed legislative program to OMB. These copies will be distributed by OMB within the Executive Office of the President.

e. Program content. Each agency shall prepare its legislative program in accordance with the instructions in Attachment A. Agency submissions shall include:

(1) All items of legislation that an agency contemplates proposing to Congress (or actively supporting, if already pending legislation) during the coming session, including proposals to extend expiring laws or repeal provisions of existing laws. These items should be based on policy-level decisions within the agency and should take into account the President's known legislative, budgetary, and other relevant policies. Agencies' proposed legislative programs should identify those items of sufficient importance to be included in the President's legislative program.

(2) A separate list of legislative proposals under active consideration in the agency that are not yet ready for inclusion in its proposed legislative program. For each item in this list, the agency should indicate when it expects to reach a policy-level decision and, specifically, whether it expects to propose the item in time for its consideration for inclusion in the annual budget under preparation.

(3) A separate list of all laws or provisions of law affecting an agency that will expire between the date the program is submitted to OMB and the end of the two following calendar years, whether or not the agency plans to propose their extension.

(4) All items in the submissions that are proposed, or expected to be proposed, for inclusion in the annual budget shall be accompanied by a tabulation showing amounts of budget authority and outlays or other measure of budgetary impact for the budget year and for each of the four succeeding fiscal years. See section 201(a)(5),(6), and (12) of the Budget and Accounting Act, 1921, as amended (31 U.S.C. 11(a)(12)). Criteria in OMB Circular No. A-11 shall be used in preparing these tabulations.

(5) All items covered by section 6e(4) above shall also be accompanied by estimates of work-years of employment and of personnel required to carry out the proposal in the budget year and four succeeding fiscal years.

f. Relationship to advice. Submission of a legislative program to OMB does not constitute a request for advice on individual legislative proposals. Such requests should be made in the manner prescribed in section 7 of this Circular.

7. **Submission of agency proposed legislation and reports.**

a. Submission to OMB. Before an agency transmits proposed legislation or a report (including testimony) outside the Executive branch, it shall submit the proposed legislation or report or testimony to OMB for coordination and clearance.

b. Agency scheduling of submissions. Agencies should not commit themselves to testify on pending bills or to submit reports or proposed legislation to Congress on a time schedule that does not allow orderly coordination and clearance. To facilitate congressional action on Administration proposals and to forestall hasty, last-minute clearance requests, agencies should plan their submissions to OMB on a time schedule that will permit orderly coordination and clearance. Particular care should be given to ensuring that draft legislation to carry out Presidential legislative recommendations is submitted promptly to OMB to allow sufficient time for analysis and review.

c. Timing of agency submissions.

(1) Agencies should submit proposed legislation, reports, and testimony to OMB well in advance of the desired date of transmittal to Congress.

(2) Agencies should include in their submissions to OMB of proposed reports and testimony a copy of any committee request for such reports and testimony, if the request calls for special information or includes specific questions to be covered in the reports or testimony.

(3) Depending on the complexity and significance of the subject matter, the policy issues involved, and the number of agencies affected, an adequate period for clearance by OMB may range from several days to a number of months. Agencies shall consult with OMB staff as to necessary periods for clearance, particularly in cases of major or complex legislation.

(4) On occasion, very short periods for clearances may be unavoidable because of congressional time schedules or other factors. Nevertheless, agencies should make every effort to give OMB a minimum of five full working days for clearance of proposed reports or testimony.

(5) Agencies shall state in their transmittal letters to OMB any information on congressional schedules or other special circumstances that may require expedited clearance.

d.  Number of copies. Agencies should furnish to OMB 10 copies of proposed legislation and supporting materials and six copies of draft reports or testimony. If wide circulation or expedited action is required, the originating agency shall consult informally in advance with OMB staff on the number of copies to be supplied. Similarly, agencies should furnish to OMB six copies of their views letters on other agencies' proposed legislation, reports, or testimony.

e.  Submission of legislation authorizing the enactment of new budget authority.

Section 607 of P.L. 93-344, the Congressional Budget Act of 1974, requires year-ahead requests for authorizing the enactment of new budget authority, as follows:

"Notwithstanding any other provision of law, any request for the enactment of legislation authorizing the enactment of new budget authority to continue a program or activity for a fiscal year (beginning with the fiscal year commencing October 1, 1976) shall be submitted to the Congress not later than May 15 of the year preceding the year in which such fiscal year begins. In the case of a request for the enactment of legislation authorizing the enactment of new budget authority for a new program or activity which is to continue for more than one fiscal year, such request shall be submitted for at least the first 2 fiscal years."

Attachment B sets forth instructions, necessitated by section 607 of P.L. 93-344, for the preparation and submission to Congress of legislative proposals authorizing additional appropriations or providing new budget authority outside of appropriation acts.

f.  Items to be included in agency submissions.

(1) Agencies should identify proposed legislation submitted to OMB by using the number assigned to the proposal in the agency's legislative program submission; e.g., Agriculture, 96-12 (see Attachment A). Each legislative proposal shall include a draft transmittal letter to the Speaker of the House and the President of the Senate as well as background information and justification, including where applicable:

(a) a section-by-section analysis of the provisions of the proposed legislation;

(b) comparison with existing law presented in "Ramseyer" or "Cordon" rule form by underscoring proposed additions to existing law and bracketing the text of proposed deletions (This need be done only when it would facilitate understanding of the proposed legislation.);

(c) budgetary and personnel impacts as described in sections 6e(4) and (5), including a statement of the relationship of these estimates to those previously incorporated in the President's budgetary program. (Public Law 89-554, 5 U.S.C. 2953, requires in certain cases that agencies, in proposing legislation and in submitting reports favoring legislation, provide estimates of expenditures and personnel that would be needed. Public Law 91-510, sections 252(a) (2U.S.C. 190j) and 252(b) imposes similar requirements on congressional committees.);

(d) comparison with previous agency proposals or related bills introduced in the Congress;

(e) an identification of other agencies that have an interest in the proposal;

(f) an indication of any consultation with other agencies in the development of the proposal; and

(g) information required by statute or by Administration policies, as, for example, that noted in section 7h below.

(2) Similarly, in their letters to OMB requesting advice on reports or testimony, agencies should identify related bills and set forth any relevant comments not included in the report or testimony itself. As indicated in section 7f(1)(c), certain reports or testimony favoring legislation are required by law to include budget and personnel estimates. Where such estimates are not included in other reports or in testimony favoring or opposing legislation, agencies should provide in their letters to OMB a statement of budgetary and personnel impacts as described in sections 6e(4) and (5), including a statement of the relationship of these estimates to those previously incorporated in the President's budgetary program.

(3) In cases where legislation carries out a Presidential recommendation, agencies should include in the proposed report or the letter transmitting proposed legislation a statement identifying the recommendation and indicating the degree to which the legislation concerned will carry it out.

g.  Views letters. In views letters to OMB, an agency should indicate whether it supports, opposes, or has no objection to all or part of a pending bill or of another agency's proposed legislation, report, or testimony and should state the reasons for its position. If an agency proposes changes to a pending bill or to another agency's submission, its views letter should recommend, insofar as practicable, specific substitute language.

h.  Certain statutory and other requirements and Administration policies. Agencies shall carefully consider and take into account certain requirements of existing statutes and Executive orders and Administration policies and directives that are of general applicability. Agency reports and proposed legislation shall, to the maximum extent possible, contain or be accompanied by appropriate recommendations, statements, or provisions to give effect to such requirements, including but not limited to:

(1) Civil rights
(2) Environmental impact
(3) Economic impact
(4) Federal budgetary impact and personnel requirements
(5) Federal and non-federal paperwork requirements
(6) State and local government impact
(7) Urban and community impact

i.  Drafting service. Agencies need not submit for clearance bills that they prepare as a drafting service for a congressional committee or a Member of Congress, provided that they state in their transmittal letters that the drafting service does not constitute a commitment with respect to the position of the Administration or the agency. Agencies shall advise OMB of these drafting service requests while the requests are being complied with, and supply a copy of the request, if in writing. A copy of each such draft bill and the accompanying letter should be furnished to OMB at the time of transmittal, together with an explanatory statement of what the bill would accomplish if that is not contained in the transmittal letter.

j.  Use of "no comment" reports. Agencies should submit no comment reports only when they have no interest in the pending legislation or nothing to contribute by way of informed comment. Agencies should submit such reports for clearance, unless a different procedure is informally arranged with OMB. In either event, they should furnish OMB with one copy of each such report at the time it is transmitted to Congress.

8.  **Clearance of agency proposed legislation and reports.**

a.  OMB action on agency submissions.

(1) OMB will undertake the necessary coordination with other interested agencies of an agency's proposed legislation or report. If congressional committees have not requested reports from all of the interested agencies, OMB will request other agency views within specified time limits. OMB will consult with the President, when appropriate, and undertake such staff work for him as may be necessary in cooperation with other Presidential staff. OMB may request the originating agency to provide additional information or may call interagency meetings to exchange views, resolve differences of opinion, or clarify the facts.

(2) When coordination is completed, OMB will transmit advice to the appropriate agencies, either in writing or by telephone. In transmitting advice, OMB may indicate considerations that agencies should or may wish to take into account before submitting proposed legislation or reports to Congress.

b.  Forms of OMB advice. The exact forms of OMB advice will vary to suit the particular case. The basic forms of advice that are commonly used are set forth and explained in Attachment C.

c.  Agency action on receipt of advice from OMB.

(1) Agencies shall incorporate the advice received from OMB in their reports and in their letters transmitting proposed legislation to Congress. Advice on testimony is usually not included in the testimony as delivered unless it would be likely to have a significant effect on a committee's consideration of particular legislation or would not otherwise be available to a committee through a written report.

(2) In the case of reports, receipt of advice contrary to views expressed does not require an agency to change its views. In such cases, however, the agency will review its position. If it decides to modify its views, the agency shall consult with OMB to determine what change, if any, in advice previously received is appropriate. If, after the review, the views of the agency are not modified, it shall incorporate in its report the full advice it received.

(3) In the case of proposed legislation, the originating agency shall not submit to Congress any proposal that OMB has advised is in conflict with the program of the President or has asked the agency to reconsider as a result of the coordination process. In such cases, OMB will inform the agency of the reasons for its action.

(4) Agencies are expected to transmit reports and proposed legislation to Congress promptly after receiving OMB clearance. Should circumstances arise that make prompt transmittal inadvisable, the agency shall immediately notify OMB. Similarly, in the case of cleared testimony, the agency shall immediately notify OMB if its testimony has been cancelled or rescheduled.

(5) Agencies should observe the instructions in House and Senate rules to forward proposed legislation or various reports required by law to the Speaker of the House and the President of the Senate. Reports that have been requested by committee chairmen on bills and resolutions pending before their committees should be transmitted directly to the requesting committees.

(6) Agencies shall furnish to OMB two copies of all proposed legislation, transmittal letters and accompanying materials, and reports (including testimony) in the form actually transmitted to the Congress. If reports or testimony cover more than one bill, agencies shall furnish two copies for each bill.

d.  Agency action where prior clearance has not been effected.

(1) Agencies shall not submit to Congress proposed legislation that has not been coordinated and cleared within the Executive branch in accordance with this Circular.

(2) If congressional time schedules do not allow an agency to send its proposed report to OMB in time for the normal clearance and advice, the agency shall consult informally with OMB as to the advice to be included in the proposed report. OMB may advise the agency to state in its report that time has not permitted securing advice from OMB as to the relationship of the proposed legislation to the program of the President. Agencies shall send to OMB six copies of such reports at the same time that they are transmitted to Congress. Where appropriate, OMB will subsequently furnish advice on the report, which the agency shall transmit promptly to Congress.

(3) In cases where an agency has not submitted a report for clearance and its views on pending legislation are to be expressed in the form of oral, unwritten testimony, OMB will undertake such coordination and give such advice as the circumstances permit. In presenting oral testimony, the agency should indicate what advice, if any, has been received from OMB. If no advice has been obtained, the agency should so indicate.

e.  Reclearance requirements. The advice received from OMB generally applies to all sessions of each Congress, but it does not carry over from one Congress to the next. Generally, agencies do not need to seek reclearance of reports on which they have already received advice before making the same reports on

identical bills introduced in the same Congress, unless considerable time has elapsed or changed conditions indicate that the need for reclearance is appropriate or should be rechecked. Prior to transmitting such reports, however, agencies shall consult informally with appropriate OMB staff to determine whether reclearance is necessary. In cases where reclearance does not take place, agencies shall include in the subsequent report appropriate reference to the advice received on the original report. They shall also send one copy of any subsequent report to OMB at the same time that it is transmitted to Congress. The transmittal letter to OMB should identify the related report that was previously cleared.

9. **Interagency Consultation.** In carrying out their legislative functions, agencies are encouraged to consult with each other in order that all relevant interests and points of view may be considered and accommodated, where appropriate, in the formulation of their positions. Such consultation is particularly important in cases of overlapping interest, and intensive efforts should be made to reach interagency agreement before proposed legislation or reports are sent to OMB. In order that the President may have the individual views of the responsible heads of the agencies, however, proposed legislation or reports so coordinated shall be sent to OMB by the individual agencies involved, with appropriate reference to the interagency consultation that has taken place.

10. **Enrolled Bills.** Under the Constitution, the President has 10 days (including holidays but excluding Sundays) to act on enrolled bills after they are presented to him. To assure that the President has the maximum possible time for consideration of enrolled bills, agencies shall give them top priority.

   a.   Initial OMB action. OMB will obtain facsimiles of enrolled bills from the Government Printing Office and immediately forward one facsimile to each interested agency, requesting the agency's views and its recommendation for Presidential action.

   b.   Agency action. Each agency receiving such a request shall immediately prepare a letter presenting its views and deliver it in duplicate to OMB not later than two days (including holidays but excluding Sundays) after receipt of the facsimile. OMB may set different deadlines as dictated by circumstances. Agencies shall deliver these letters by special messenger to OMB.

   c.   Preparation of enrolled bill letters.

      (1) Agencies' letters on enrolled bills are transmitted to the President and should be written so as to assist the President in reaching a decision. Each letter should, therefore, be complete in itself and should not, as a general rule, incorporate earlier reports by reference.

      (2) Agencies' letters on enrolled bills are privileged communications, and agencies shall be guided accordingly in determining their content.

      (3) Because of the definitive nature of Presidential action on enrolled bills, agency letters shall be signed by a Presidential appointee.

      (4) Agencies' letters shall contain:

         (a) an analysis of the significant features of the bill including changes from existing law. OMB staff will advise the agencies on which one should write the detailed analysis of the bill where more than one agency is substantially affected;

         (b) a comparison of the bill with the Administration proposals, if any, on the same subject;

         (c) comments, criticisms, analyses of benefits and shortcomings, or special considerations that will assist the President in reaching a decision;

         (d) identification of any factors that make it necessary or desirable for the President to act by a particular date;

         (e) an estimate of the first-year and recurring costs or savings and the relationship of the estimates to those previously incorporated in the President's budgetary program;

         (f) an estimate of the additional number of personnel required to implement the bill; and

(g) a specific recommendation for approval or disapproval by the President.

(5) Agencies recommending disapproval shall submit with their letters a proposed veto message or memorandum of disapproval, in quadruplicate, prepared on legal-size paper and double-spaced. Such messages or memoranda should be finished products in form and substance that can be used by the President without further revision.

(6) Agencies may wish to recommend issuance of a signing statement by the President. Agencies so recommending shall submit with their letters a draft of such statement, in the same form and quantity as required for a proposed veto message. In some cases, OMB may request an agency to prepare a draft signing statement.

(7) Agencies' letters on private bills shall cite, where appropriate, precedents that support the action they recommend or that need to be distinguished from the action recommended.

d.  Subsequent OMB action. OMB will transmit agencies' letters to the President, together with a covering memorandum, not later than the fifth day following receipt of the enrolled bill at the White House.

11. **Agency legislative liaison officers.** To assist in effecting interagency coordination, each agency shall furnish OMB with the name of a liaison officer who has been designated by the agency to handle the coordination of legislative matters under this Circular. From time to time, OMB will send agencies lists of the liaison officers so designated. Agencies should promptly notify OMB of any change in their liaison officers.

12. **Communications to OMB.**

a.  Written agency communications to OMB transmitting proposed legislation, proposed reports, views letters on other agencies' proposed legislation or reports, and letters on enrolled bills should be addressed to:

Director, Office of Management and Budget
Attention: Assistant Director for Legislative Reference

The envelope containing such communications should be addressed:

Legislative Reference Division
Office of Management and Budget
Room 7203, New Executive Office Building

unless a different arrangement is made with an appropriate OMB staff member.

b.  Questions on status of proposed legislation, reports, testimony, or enrolled bills should be directed to appropriate OMB staff or to the Legislative Information Center (telephone 395-3230).

*DIRECTOR*

Attachments

---

ATTACHMENT A
Circular No. A-19
Revised

# INSTRUCTIONS RELATING TO THE PREPARATION OF AGENCY LEGISLATIVE PROGRAMS

1. Agencies' proposed legislative programs should be divided into two parts:

**PART I -- PRESIDENT'S PROGRAM PROPOSALS**

Those items that the agency believes are of sufficient importance to be included in the President's legislative program and given specific endorsement by him in one of the regular annual messages, such as the budget message, or in a special message.

**PART II -- ALL OTHER PROPOSALS**

2. Within each Part, agencies should list the items in order of relative priority. Each item of proposed legislation should be given a separate number for purposes of ready identification, using a numbering system which identifies the Congress; e.g., Agriculture, 96-12.

3. With respect to each item, agencies should provide the following information:

   a. A brief description of the proposal, its objectives, and its relationship to existing programs. Agencies should include greater detail on the specific provisions of proposals included in Part I or where the subject matter of the proposal contains new policies or programs or raises complex issues;

   b. Pertinent comments as to timing and readiness of draft legislation;

   c. Pertinent references to bills and reports concerning the subject of the proposal in current or recent sessions of Congress;

   d. An estimate for each of the first five fiscal years of (1) any budget authority and outlays that would be required, (2) any savings in budget authority and outlays, (3) any changes in budget receipts, and (4) work years of employment and numbers of personnel. These estimates-should be prepared in accordance with the instructions in OMB Circular No. A-11.

4. The lists of (a) legislative proposals still under consideration in an agency and (b) expiring laws (see section 6 of the Circular) should be presented separately from Parts I and II. The following special instructions apply to them:

   a. Items still under consideration should be listed in approximate order of priority and each briefly described in terms of subject matter and status.

   b. Each expiring law should be described in terms of (1) the subject, (2) the citation, (3) the date of expiration, (4) the agency's views as to whether the law should be extended or permitted to expire, and (5) other pertinent information. If an agency recommends extension, the proposal should also be included in Part I or Part II, as appropriate.

5. The legislative program submission should be prepared on letter-size paper. General conformance to the format of the attached exhibit will greatly facilitate the use of these programs.

---

**EXHIBIT FOR ATTACHMENT A**
**Circular No. A-I9**
**Revised**

### DEPARTMENT OF GOVERNMENT

PROPOSED LEGISLATIVE PROGRAM FOR THE _____ SESSION
OF THE _____ CONGRESS

(Items in each Part are listed in order of priority)

**PART I -- PRESIDENT'S PROGRAM PROPOSALS**

96-3    Amend the provisions of the 1902 Reclamation Act

        regarding acreage limitation, residency, leasing, excess

        land sales, the use of Class 1 Equivalency, contracts and

contracting procedures, and certain administrative procedures.  This proposal would modify and update the acreage limitation provisions of Federal Reclamation law to reflect and accommodate modern agricultural practices, but at the same time retain the basic concept of the Reclamation program--providing opportunities for family farms.

The Department has recommended that legislation amending the law reflect the following:  Eligibility to receive project water would be limited to adults--18 years of age or older; Residency as provided in the Reclamation Act of 1902, and defined as a maximum distance of 50 miles from the land, would be reimposed on both lessors and lessees of project lands, with specific guidelines for phasing in the requirement; the acreage entitlement for which project water would be available would be increased to 320 acres owned per adult individual, with an additional allowance of 160 acres leased, or the entire 480 acres could be leased (family corporations and multiple ownerships could hold up to 960 acres without regard to the number of people in the arrangement); Class 1 equivalency would be authorized for general use for projects with a frost-free growing season of 180-days or less and would be applied on a project-by-project basis; contracts with districts containing provisions for exemption from acreage limitation provisions upon payout of construction charges would be approved; Sale of excess land by the owner to immediate family members, long-time tenants, employees, or adjoining neighbors would be permitted; Charitable and religious organizations holding project lands on January 1, 1978, would be exempt from acreage limitations.

Cost:  The estimated cost to the government of administering this

proposal would be comparable to the estimated cost of implementing the compliance program under regulations which are being promulgated at this time.  The estimated cost of the compliance program for the 5-year period after the final rules are published (not including EIS costs prior to the final rules) is:

|            | FY 1980 | FY 1981 | FY 1982 | FY 1983 | FY 1984 |
|------------|---------|---------|---------|---------|---------|
| (millions) | 2.4     | 2.4     | 2.0     | 2.0     | 2.0     |

Personnel requirements: Estimated personnel requirements are:

|              | FY 1980 | FY 1981 | FY 1982 | FY 1983 | FY 1984 |
|--------------|---------|---------|---------|---------|---------|
| (work-years) | 76      | 76      | 64      | 64      | 64      |
| (personnel)  | 85      | 85      | 70      | 70      | 70      |

## PART II -- ALL OTHER PROPOSALS

96-14  Amend Federal Power Commission Act of 1920.  This proposal would amend the Federal Power Commission Act of 1920 to provide that a license will be issued only after the Secretary administering affected public lands makes a determination that the license will not interfere or be inconsistent with the purposes for which such lands are reserved.  The Federal Power Commission has interpreted Section 4(e) to require only consideration of the affected Secretary's recommendations.

The proposal would also amend the act to provide for extinguishment of withdrawals created by the Federal Energy Regulatory Commission (FERC) applications if the FERC has not responded to the applicant within 6 months or as of date of denial or expiration, surrender, revocation, or termination of the license.  Most applications do not result in FPC licenses; yet the land is withdrawn.  The

administrative process of removing the withdrawals is
cumbersome and time consuming and constrains the land
managing agency from fully managing these lands for their
resource values or from using these lands in exchanges.
Revocation of the FERC withdrawal within a specified time
period would be consistent with the provisions of Title II
of the Federal Lands Policy and Management-Act relating to
withdrawals.

No additional appropriations or outlays would be required.

---

ATTACHMENT B
Circular No. A-19
Revised

## INSTRUCTIONS FOR THE PREPARATION AND SUBMISSION TO CONGRESS OF LEGISLATIVE PROPOSALS AUTHORIZING THE ENACTMENT OF ADDITIONAL APPROPRIATIONS OR PROVIDING NEW BUDGET AUTHORITY OUTSIDE OF APPROPRIATION ACTS

**1. Legislative proposals providing authorizations to continue programs or activities.**

Under section 607 of P.L. 93-344, the Congressional Budget Act of 1974, legislative proposals to extend authorizations scheduled to expire at the end of a given fiscal year should be transmitted to Congress by May 15 of the fiscal year preceding that fiscal year. (For example, if an authorization expired on September 30, 1979, draft legislation to extend the authorization should have been transmitted to Congress by May 15, 1978.) If such proposals were not transmitted or were not enacted, new or revised proposals with language covering the budget year (i.e., the upcoming fiscal year) should be included in the same bill as proposals for the budget year plus one and subsequent years.

More specifically:

  a. Proposals for agencies and programs that are customarily authorized on an annual basis (e.g., NASA, NSF, State, Justice, Peace Corps, military procurement and construction) should cover, in the same bill, proposed language for the budget year plus one and resubmittals or revisions of previously proposed authorizations for the budget year. Subsequent years should also be included if agencies deem it desirable and feasible.

  b. Other legislative proposals to extend authorizations for the enactment of new budget authority expiring at the end of the budget year should cover, in the same bill, the budget year plus one and such subsequent years as is customary or deemed desirable for the particular program or activity involved.

  c. Any proposals that provide for authorizations for the budget year or the current fiscal year should be submitted to Congress immediately after OMB clearance.

**2. Legislative proposals providing authorizations for new programs or activities.**

  a. Proposals authorizing enactment of budget authority for a new program or activity should include at least two fiscal years, unless such new program or activity is proposed to be effective for only one fiscal year and to terminate at the end of that year.

    b.   Proposals that provide for authorizations to begin in the budget year plus one should, to the extent feasible, be prepared for submission to Congress no later than May 15 of the current fiscal year.

**3. General instructions for legislation authorizing the enactment of new budget authority.**

    a.   In keeping with the intent of section 401 of P.L. 93-344, proposals including contract authority or borrowing authority should provide that such authority is to be effective only to such extent or in such amounts as are provided in appropriation acts. Backdoor financing provisions may be proposed only when the exceptions set forth in section 401(d) of P.L. 93-344 apply.

    b.   As a general rule, bills submitted to Congress authorizing new budget authority for the current fiscal year or budget year will contain specific dollar amounts for those years. These amounts should be those approved for the Budget. For subsequent years, the bills should include "such sums as may be necessary" authorizations unless the agency and OMB agree that special circumstances warrant inclusion of specific amounts.

        (1) Where specific amounts are included for years beyond the budget year, those amounts should be consistent with the five-year projections of budget authority printed in the Budget pursuant to P.L. 93-344. Such amounts will be based on the criteria provided for long-range projections in OMB Circular No. A-11.

        (2) Authorizing legislation covering principally salaries and administrative expenses which heretofore has been enacted without specific dollar amounts may continue to be proposed for "such sums as may be necessary" for all fiscal years, including the current and budget fiscal years.

    c.   Agencies should draft their authorizing bills to incorporate the highest feasible level of aggregation for new budget authority.

**4. Required materials.**

    a.   **Budget year authorization extensions.** Proposed legislation authorizing the continuation of existing programs in the budget year should have been submitted to Congress not later than May 15 of the fiscal year preceding the current fiscal year. In cases where Congress did not enact budget year authorizations, new or revised authorizations should be submitted to Congress at the earliest possible date after the budget is published.

        Accordingly, each agency will submit to OMB **no later than December 15** of each year 10 copies of drafts of proposed authorizing legislation to extend programs and activities that are authorized through the current fiscal year, but for which it will be necessary to propose new or revised authorizations for the budget year and subsequent years.

        Since the specific amounts of the authorizations to be included cannot be determined until after decisions are made in connection with the budget, the draft bills submitted to OMB should contain blank spaces for these amounts. When the budget decisions are final, OMB and the agencies will agree on the figures to be inserted.

    b.   **Authorization extensions for the budget year plus one.** Proposed legislation authorizing the continuation of existing programs in the budget year plus one must be submitted to Congress not later than May 15 of the current fiscal year. To meet this deadline, sufficient time must be provided for the legislative coordination and clearance process.

        Accordingly, each agency will submit to OMB as early as possible but **no later than February 28** of each year 10 copies of legislative proposals for programs and activities that are authorized through the budget year, but for which an authorization request is necessary for the budget year plus one and subsequent years.

        These draft legislative proposals should include "such sums as may be necessary" authorizations, unless the agency and OMB agree that special circumstances warrant inclusion of specific amounts. These figures should be the amounts agreed on as a result of the budget review and should be consistent with the five-year projections included in the Budget.

    c.   **Authorizations of new programs or activities.** In cases where decisions have been made during the budget review calling for authorizing legislation for new programs or activities proposed to begin in the budget year plus one, draft bills reflecting these decisions should be submitted to OMB no later than February 28 of

each year, as in paragraph 4b of this Attachment.

ATTACHMENT C
Circular No. A-19
Revised

## BASIC FORMS OF OMB ADVICE

The basic forms of advice and their implications are set forth below:

1. **"In accord (not in accord) with the program of the President."** When an agency or a committee of Congress is advised that enactment of a bill would be in accord with the program of the President, the advice means that the bill is of sufficient importance for the President to give it his personal and public support. That identification of the legislative proposal with the President is made in a variety of ways; e.g., by inclusion in one of his regular messages (State of the Union, Economic, Budget), a special message, speech, press conference, letter, or leadership meeting.

"Not in accord" advice indicates that a bill is so contrary to the President's legislative proposals or other policies or is otherwise so objectionable that should it be enacted in its current form, a veto would be considered. It is not, however, necessarily a commitment to veto.

2. **"Consistent with"** advice is used where the relationship of a legislative proposal to the Administration's objectives is direct and the Administration's expressed support is desirable, but the item does not warrant personal identification with, or support by, the President. "Not consistent with" advice signals to Congress that there are major objections to a bill, but does not indicate as clearly as "not in accord" advice that a veto would be considered if it were enacted.

3. **"No objection from the standpoint of the Administration's program."** Advice that there is no objection to a bill from the standpoint of the Administration's program is given on the large number of agency draft bills that deal with matters primarily of agency concern and do not bear a direct or immediate relationship to the President's program or the Administration's objectives. In effect, such advice indicates to Congress that OMB knows of no reason why the President would not approve the bill if Congress should enact it.

Advice to an agency that there is no objection from the standpoint of the Administration's program to its submission of a report (or testimony) on a bill to a committee of Congress does not indicate any commitment as to ultimate Presidential approval or disapproval of the bill if it is enacted. Nevertheless, such "no objection" clearance does set up certain presumptions. If all agencies' views are favorable, the presumption is that no major objection to the bill is known and that the agencies affected will recommend Presidential approval if it becomes enrolled. If all agencies' views are adverse, the presumption is that the agencies may wish to recommend a veto if the bill becomes enrolled.

Infrequently, "no objection" clearance is given to agency reports expressing divergent views on the same bill. When this is done, it normally means that there is no objection to the bill if Congress acts favorably after considering the adverse views. Occasionally, it means that the Administration's position is being reserved pending resolution of the agencies' differences, and this reservation may be explicitly stated. The interested agencies are advised of each other's differing views in these cases.

4. **Qualified advice.** In some cases the advice given is qualified. For example, the advice may be that there would be no objection to enactment of the bill from the standpoint of the Administration's program, or that the bill would be consistent with the Administration's objectives, if it were revised in specified respects.

Return to Top

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, INC.,                          )
                                               )
                          Plaintiff,           )
                                               )
v.                                             )          Civil Action No. 07-409 (RCL)
                                               )
OFFICE OF MANAGEMENT AND BUDGET,               )
                                               )
                          Defendant.           )
_____)

## **ORDER**

Upon consideration of plaintiff's motion for summary judgment, defendant's motion for

summary judgment, and the memoranda, oppositions, and reply memoranda of the parties,

It is hereby this ___ day of _____, 2007,

ORDERED that plaintiff's motion for summary judgment is GRANTED;

ORDERED that defendant's motion for summary judgment is DENIED;

ORDERED that summary judgment is entered in favor of plaintiff pursuant to Federal

Rule of Civil Procedure 56; and

ORDERED that defendant release to plaintiff the records described in paragraphs 1-21 of

its *Vaughn* Index.


_____
Royce C. Lamberth
United States District Judge