## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC CITIZEN, INC.,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **Civil Action No. 07-409 (RCL)** |
| **v.** | ) |
| | ) |
| **OFFICE OF MANAGEMENT AND BUDGET,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT
### AND REPLY TO PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has released all responsive, non-exempt documents to Plaintiff.  Plaintiff has

requested that Defendant disclose records that list agencies which it permits to bypass its

legislative and/or budgetary clearance processes, and records explaining that an agency or agency

can bypass one of those processes.  In its January 10, 2007 response to Plaintiff, Defendant

provided Plaintiff with a listing of statutes (and the concerned agency) that address direct

submission of legislative and budgetary materials to Congress.  Amended Declaration of James

Jukes, executed on September 7, 2007, ( "Am. Jukes Decl.") ¶¶ 16, 19 (Exhibit 1).  In addition,

on August 3, 2007, Defendant released the responsive, non-exempt, reasonably segregable

portions of Documents 1 through 14 ("Documents 1-14") to Plaintiff.  See Letter, dated August

3, 2007 from Assistant U.S. Attorney Alexander D. Shoaibi to Adina Rosenbaum, Esq. (Exhibit

2); Amended Vaughn Index ("Am. Vaughn Ind.") ¶¶ 1-14 (Attachment A to Amended Jukes

Declaration).  OMB has demonstrated that the withheld portions of Documents 1-14 are

protected from disclosure under the "high" exemption 2 and Exemption 5 while Documents 15

through 21[1] ("Documents 15-21") are exempt under Exemption 5.

Contrary to Plaintiff's assertion, Defendant is not using these exemptions "to create and

withhold secret law" (Plaintiff's Motion for Summary Judgment and Opposition to Defendant's

Motion for Summary Judgment ("PMSJ") at 1-2). Instead Defendant is protecting predominantly

internal documents whose disclosure would risk effective agency operations. These records are

not OMB's secret law because they do not affect any member of the public, but rather concern

relations between federal agencies and Congress. Futhermore, these records embody the

essential "give and take" of the legislative clearance process, which is a predecisional and

deliberative process. Am. Jukes Decl. ¶¶ 13, 26, 31. While FOIA's goal is to allow the public to

see how the government operates, providing information on an agency's performance of its

duties, this goal is tempered by a recognition that agencies must not be impeded in effectively

performing their delegated duties. See Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670

F.2d 1051, 1074 (D.C. Cir. 1981) ("Congress evidenced a secondary purpose when it enacted

FOIA of preserving the effective operation of governmental agencies. In order to competently

execute its duties, Defendant must not disclose the records in this case."). The release of all

withheld materials in this case would substantially impair the deliberative process of legislative

clearance. Am. Jukes Decl. ¶¶ 34-41. Accordingly, since the U.S. Office of Management and

Budget ("OMB" or "Defendant") has fully met its obligation under the statute, and there is no

---

[1] Plaintiff is not challenging Defendant's withholding of document 22. Plaintiff's Statement of Material Facts and Response to Defendant's Statement of Material Facts ("PSMF") at ¶ 25; PMSJ at 6 ("After reviewing OMB's Vaughn Index, Public Citizen has decided it is not interested in this final record (Document 22) and is not challenging OMB's failure to release it.").

material issue in dispute on this point, the Court should deny Plaintiff's motion for summary

judgment and grant Defendant's motion for summary judgment.

## ARGUMENT

A.     **OMB Lawfully Withheld Portions of Documents 1 through 14 Under the High Exemption 2.**

OMB properly applied the high exemption 2 to the withheld portions of Documents 1

through 14 in the Amended Vaughn Index (hereinafter "Documents 1-14").  These withheld

portions clearly meet the two prong test for withholding under Exemption 2, because they are

predominantly internal and their disclosure significantly risks circumvention of agency

regulation.  Plaintiff's arguments that these records do not satisfy this test are incorrect because

they are based on a misinterpretation of the test's two prongs and a misunderstanding of the

nature of the legislative clearance process.

Plaintiff argues that Documents 1-14 are not predominantly internal because they "do not

relate solely (or even predominantly) to the 'internal workings of an agency'."  PMSJ at 8-9

(citing Crooker, 670 F.2d at 1073).  Plaintiff asserts that these records do not just "establish rules

and practices for agency personnel," but rather they govern the actions of individuals outside of

OMB, regulating which agencies must submit materials to OMB.  PMSJ at 9.  This argument

fails to consider the very nature of these memoranda.  The withheld portions of Documents 1-14

do not govern the actions of either OMB personnel or other federal agencies, but, rather, are

briefing materials that contain useful points of reference for discussions regarding future policy

revisions.  Am. Jukes Decl. ¶¶ 23, 26.  They are not mandatory rules of interaction and they do

not establish rules of conduct or decisionmaking that would adjudicate, change, or effect the interests of members of the public outside of government.

The withheld portions of Documents 1-14 contain information that is predominantly internal. Document 1 and Documents 3 through 14 (hereinafter "Documents 1, 3-14") are clearly labeled "for OMB internal use only." Am. Vaughn Ind. ¶¶ 1, 3-14. Their substance matches their form. The communications are entirely internal. Documents 1, 3-14 are memoranda prepared by OMB, distributed by OMB, and circulated to OMB only. Am. Vaughn Ind. ¶¶ 1, 3-14; Am. Jukes Decl. ¶ 24 (prepared by OMB LRD for OMB officials and staff), ¶ 40 (noting that OMB does not circulate Documents 1-14 to other Executive Branch agencies). The information contained within the memoranda is for internal use only. The memoranda concern "internal information about Federal agencies with legislative and budget 'bypass' authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.)." Am. Vaughn Ind. ¶¶ 1, 3-14. The memoranda contain "a description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements." Id. Record 2 (located on OMB's internal website) is likewise a predominantly internal document because it contains OMB author's "characterizations and perspectives concerning certain agencies views regarding legislative clearance requirements applicable to their respective agencies." Am. Vaughn Ind. ¶ 2. Documents 1-14 serve as the OMB's "intelligence" on other agencies' views regarding the nature of their obligations in the legislative clearance process.

These records contain information related to OMB's internal practices concerning the contours of legislative clearance. Am. Vaughn Ind. ¶¶ 1-14. They relate predominantly to

4

OMB's internal workings and the role of OMB personnel who must conduct fluid, candid discussions in order to determine the nature of their interactions with various other agencies during the legislative clearance process.  Am. Jukes Decl. at ¶ 24 ("these documents serve as a starting point for discussions within OMB concerning OMB's practices in coordinating the interagency review of budgetary or legislative materials").

Because the information contained in Documents 1 through 14 does not regulate the public, it does not embody secret law.  Plaintiff cites two cases prohibiting the application of Exemption 2 to "secret law": (1) Dep't of Air Force v. Rose, 425 U.S. 352, 369, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976) and (2) Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981).  Plaintiff, however, fails to discuss the definition of secret law. In Rose, the court did not decide the issue of releasability on the existence of secret law.  Rather, it was based on a more traditional (b) (2) analysis.  Defendant, here, does not contend that it is only compelled to disclose "secret law" under exemption 2.  Rather, defendant states that the documents are not secret law and they are otherwise exempt under (b)(2).

Crooker supports Defendant's view of the case.  In Crooker,  the U.S. Court of Appeals for the District of Columbia Circuit held that the portions of the BATF manual, containing instructions to agents regarding investigative techniques, were properly withheld from disclosure under Exemption 2.  670 F.2d at 1073.  The instructions to BATF agents contained in the BATF manual did not embody the agency's "secret law" because they were not written to regulate the public but rather they were prescribed rules and practices for agency personnel.  Id.  While the Court noted that "the deleted portions of the manual, as with any internal personnel rules and practices of an agency, have some effect on the public-at-large," it determined that Exemption 2

5

protected the manual from disclosure for several reasons: (1) it was designed to establish rules and practices for agency personnel and used for predominantly internal purposes; (2) it involved no secret law; and (3) its public disclosure would risk circumvention of agency regulations.  Id. The Court distinguished the secret law of prosecutorial discretion guidelines in Jordan v. United States Dep't of Justice, 591 F.2d  753 (D.C. 1978) with the internal practices contained the BATF manual:

> The guidelines on prosecutorial discretion are instructions to agency personnel (e.g., prosecutors) on how to regulate members of the public.  Knowledge of those regulations may be as significant to members of the public as is knowledge of statutory sentencing provisions.  The BATF manual, on the other hand, is not concerned with regulating the behavior of the public, but consists solely of instructions to agency personnel.  There is no attempt to modify or regulate public behavior only to observe it for illegal activity.  Accordingly, under the rule we announce today, the result in Jordan release of the documents on prosecutorial discretion would be the same.

Crooker, 670 F.2d at 1075.

Like the BATF manual in Crooker, Documents 1-14 are not secret law.  These records were not written to regulate the public.  Am. Jukes Decl. ¶ 26 ("[T]hese documents . . . relate to this process [legislative clearance process] . . . As such, these documents do not define - or otherwise determine - the rights or obligations of any member of the public.").

This Circuit also discussed the meaning of secret law in Cox v. U.S. Dep't. of Justice, 601 F.2d 1 (D.C. Cir. 1979) (per curiam), overruled on other grounds by, Benavides v. Bureau of Prisons, 993 F.2d 257 (D.C.Cir.1993).  In Cox, Plaintiff claimed entitlement to the deleted portions of the U.S. Marshals Manual dealing with subjects such as the caliber of the weapon and the length of the barrel on the weapon used by the Marshals;  the type of ammunition they used,

and the number of rounds they were issued.  601 F.2d at 4.  Noting that secret law is the primary

target of FOIA's disclosure provisions, the Court held protectible information that did "not

purport to regulate activities among members of the public . . . [and] does [not] set standards to

be followed by agency personnel in deciding whether to proceed against or to take action

affecting members of the public."  Id. at 5.  This Circuit explained the rationale of Exemption 2

(b):  "The exemption exhibits a congressional judgment that **material lacking external impact**

**is unlikely to engage legitimate public interest**, the touchstone of the policies underlying the

Freedom of Information Act."  Id. at 4 (emphasis added).  "[T]he unreleased information is not

'secret law,' the primary target of subsection (a)'s broad disclosure provisions.  **No members of**

**the public are likely to behave or to think differently** owing to a revelation about the length of

the barrel on the gun used by the Marshals."  Id. at 5 (emphasis added).

        In this case, Documents 1-14 do not constitute secret law because they concern the

legislative and budgetary clearance processes which do not involve members of the public, but

instead concern only interactions between federal agencies.  See Am. Vaughn Ind. ¶¶ 1-14.  Here,

as in Cox, no members of the public are likely to behave or think differently with knowledge that

a certain agency may bypass the OMB and present its proposed testimony, reports, and

legislation to Congress.  See Jordan, 591 F.2d at 763 ( "The rules and practices by which an

agency orders its Own affairs among its Own personnel would seem to invite little public interest

in disclosure. Conversely, rules and practices that have a **definite impact on the public** would

seem to be a more fit subject for disclosure to the public. The former might properly be described

as "internal", the latter as "external" rules and practices.") (emphasis added).

7

Documents 1- 14 are not secret law but rather they only highlight issues for OMB

personnel to consider when dealing with agencies vis a vis legislative and budgetary clearance.

Am. Jukes Decl. at ¶ 24 ( "With respect to both OMB's senior officials and OMB staff (again,

principally the LRD staff), these documents serve to alert and inform the officials and staff about

issues and potential issues (including related concerns) regarding legislative and budgetary

bypasses and their impact on the legislative clearance function.").  A record does not lose its

predominantly internal status simply because it addresses interaction with other agencies outside

its own.  Schiller v. NLRB, 964 F.2d 1205, 1207-08 (D.C. Cir. 1992) (upholding the district

court's finding that litigation strategy pertaining to the Equal Access to Justice Act passes

Exemption 2's "threshold test" of being "predominantly internal"; rejecting the requester's

contention that it does not, simply because it "involves the [agency's] relations with outsiders");

Silber v. U.S. Dep't of Justice, No. 91-876, transcript at 19-20 (D.D.C. Aug. 13, 1992) (bench

order) (deciding that agency's fraud litigation monograph was "predominantly internal,"and

observing that this phrase "has been read very broadly and expansively").  OMB senior officials

and staff constantly interact with a variety of agencies.  It is important that they have some

perspective on the appropriate contours of those interactions so that they do not inadvertently

subvert the agencies' functions.  See Am. Jukes Decl. ¶ 36 (noting that it is important that both

OMB senior officials and OMB staff receive briefing materials (Documents 1-14) to assist them

in performing the legislative clearance function).  Practices regarding the internal relationships

among agencies and those agencies' relationship with Congress (like the legislative clearance

process) is not the kind of information that FOIA seeks to disclose because these practices have

no effect on members of the public.  Cf. Jordan v. U.S. Dept. of Justice, 591 F.2d 753, 786 (D.C.

Cir. 1978) ("Indexing of orders, opinions, instructions, etc., is Not a requirement for exempting such records from disclosure but is only required if the agency seeks to rely thereon, use, or cite them **as precedent against a party other than an agency**, per § 552(a)(2)(C)."). (emphasis added).

Documents 1-14 meet the definition of predominantly internal under Exemption 2 because they are used for predominantly internal purposes. Exemption 2 allows the withholding of a great variety of internal rules, procedures, and guidelines, not only agency personnel records. See Judicial Watch, Inc. v. U.S. Dep't of Transp., No. 02-566, 2005 WL 1606915, at *9 (D.D.C. July 7, 2005) ("Exemption 2 is not limited to internal personnel rules and practices; rather, it is construed more generally to encompass documents that are used for predominantly internal purposes."); see also Crooker, 670 F.2d at 1069, 1073 ("The scope of Exemption 2 [is not restricted] to minor employment matters" and concluding that "personnel" should not be read as narrowly as was suggested in Jordan); Canning v. U.S. Dep't of the Treasury, No. 94-2704, slip op. at 15 (D.D.C. May 7, 1998) (finding narrative information related to Secret Service contact list to be "clearly 'practices of an agency'" and, therefore, properly protected); Dirksen v. HHS, 803 F.2d 1456, 1458-59 (9th Cir. 1986) (approving use of Exemption 2 to withhold Medicare claims-processing guidelines). In the instant case, the OMB uses Documents 1-14 for predominantly internal purposes. These documents inform OMB officials of other agency's perspectives regarding legislative clearance, assist personnel in their interactions with other agencies, and play a key role in discussions regarding changes to OMB policy. See Am. Jukes Decl. ¶¶ 26, 36; "Exemption 2 is applicable where the document consists of internal instructions

to such government officials as investigators and bank examiners." Crooker, 670 F.2d at 1057

(citing Jordan, 591 F.2d at 783 (Leventhal, J., concurring)).

      Documents 1-14 contain highly sensitive information, and high exemption 2 should

protect this information from disclosure.  Courts are willing to accord appropriate protection to

highly sensitive information.  See Schwaner v. Dep't of the Air Force, 898 F.2d 793, 796 (D.C.

Cir. 1990) ("Judicial willingness to sanction a weak relation to 'rules and practices' may be

greatest when the asserted government interest is relatively weighty.").  Documents 1 through 14

contain highly sensitive information because they comprise the agency's briefing materials

regarding a core function of the agency (legislative and budgetary clearance).  If the agency's

opinions and views on this process were released, OMB's ability to ensure the coherence of

Executive Branch proposals would be harmed.  Am. Jukes Decl. ¶ 35 ("I believe that the release

of the remaining withheld materials in the 22 documents would harm . . . the OMB legislative

clearance function.  . . . The goal of this long-standing interagency review process is to ensure

that the testimony, reports, and legislative proposals that Executive Branch agencies submit to

Congress are consistent with the President's policies and take into account the programs,

perspectives, and concerns of other agencies."); see also, Rose, 425 U.S. at 364 (noting that

courts permit agencies to withhold information on matters of some public interest when

necessary to prevent the circumvention of agency regulations that might result from disclosure to

the subjects of regulation of the procedural manuals and guidelines used by the agency in

discharging its regulatory function); Soucie v. David, 448 F.2d 1067, 1080 (D.C. Cir.1971) ("the

clear legislative intent (of the FOIA) to assure public access to all governmental records whose

disclosure would not significantly harm specific governmental interests.").

"High exemption 2" protects sensitive internal agency information. Documents 1 through 14 are both sensitive and internal. They are "internal memoranda [that] relate directly to how OMB carries out an internal Executive Branch review process (the legislative clearance function)." Am. Jukes Decl. ¶ 40. In order to operate successfully, the legislative clearance process must be confidential. Id. This process is deliberative through and through. Id. Both the deliberative process (e.g., which offices have, or have not, commented on a draft, or even which offices were asked by OMB to comment on the draft) and the deliberations themselves (i.e., the drafts of the testimony, reports, and legislative proposals that are submitted to OMB and circulated for interagency review, as well as the comments on those drafts, and the successive revised drafts and comments) must be kept confidential. Id. Documents 1-14 are essential to OMB officials and staff because they are confidential. See Am. Jukes Decl. ¶ 40 ("the internal-OMB briefing material addresses issues that are confidential."); see also Schiller, 964 F.2d at 1207-08 (protecting records pertaining to agency's litigation strategy because disclosure "'would render those documents operationally useless'" (quoting NTEU v. U.S. Customs Serv., 802 F.2d 525, 530-31 (D.C. Cir. 1986)).

Documents 1 through 14 clearly satisfy the first prong of the high exemption 2 because they are predominantly internal. These briefing materials are prepared by OMB staff for OMB officials and OMB staff. See Am. Jukes Decl. ¶ 24 (describing Documents 1-14 as "internal-OMB documents that were prepared by OMB's LRD for use by OMB's most senior officials and by OMB staff (principally, by the staff in LRD)"). They provide internal-OMB perspectives and views. Am. Jukes Decl. ¶ 28. These documents have not been publicly released or publicly invoked as a justification or explanation for OMB's actions or views. Am. Jukes

Decl. ¶ 27.  They are not secret law because they concern agencies and do not affect the public.

See Windels, Marx, Davies & Ives v. Dep't of Commerce, 576 F. Supp. 405, 412 (D.D.C. 1983)

(cases have recognized a distinction between instructions concerned with detecting illegal

activity disguised as legal activity, and guidelines which define a violation-and are therefore

disclosable as "secret law" which affects the public).

    Documents 1 through 14 also satisfy the second prong of high exemption 2.  That prong

requires that disclosure of the information "significantly risks circumvention of agency

regulations or statutes."  Crooker, 670 F.2d at 1073-74; see also Peter S. Herrick's Customs &

Int'l Trade Newsletter v. U.S. Customs & Border Prot., No. 04-0377, 2006 WL 1826185, at *5

(D.D.C. June 30, 2006) (rejecting the plaintiff's argument that an agency must show that

circumvention "be almost certain," finding that instead "the test is satisfied so long as the

information could assist individuals seeking to avoid or hinder lawful agency regulation").  The

potentially circumvented agency regulation need not be criminally oriented.  See, e.g., Schiller,

964 F.2d at 1208 ("[W]e have not limited the 'high 2' exemption to situations where penal or

enforcement statutes could be circumvented.").  In fact, courts will uphold the withholding of

records even if there is no particular statute or regulation to be circumvented.  See NTEU, 802

F.2d at 530-31 ("Where disclosure of a particular [record] would render [it] operationally useless,

the Crooker analysis is satisfied whether or not the agency identifies a specific statute or

regulation threatened by disclosure.").  In the instant case, the laws at risk of circumvention are

Presidential Executive Order (E.O.) No. 8248, OMB Circular A-19, and the OMB Director's

memorandum to agency heads of February 15, 2001.  See Am. Jukes Decl. ¶¶ 8, 28.  These laws

provide the OMB with the power of legislative clearance.

Plaintiff incorrectly asserts that the high exemption 2 is designed to prevent only the public from circumventing the law. PMSJ at 10. Plaintiff provides no authority for this proposition and logic and the case law suggests differently. As previously noted, FOIA recognizes that effective government operations must not be undermined. It would be both disruptive and damaging to permit circumvention of one agency's regulations by another agency. Case law also supports the proposition that the potential circumventor from whom the information is being protected need not be outside of the government. Cf., Sinsheimer v. DHS, 437 F. Supp. 2d 50, 56 (D.D.C. 2006); Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp.2d 146, 165-66 (D.D.C. 2004). Although these particular decisions uphold the withholding of records when agency employees are the potential violators, there is nothing to suggest that other government agencies cannot likewise be potential violators for the purposes of high exemption 2 analysis.

OMB reasonably expects that there is a significant risk that disclosure of Documents 1-14 would benefit those agencies who are seeking to avoid their legislative clearance obligations. In this case, the records contain information concerning the views of OMB's officials regarding certain agencies' opinions concerning the legislative clearance requirements for their respective agencies. Am. Vaughn Ind. ¶¶ 1-14. These records provide information to OMB staff on the dynamics of the relationship between OMB and their respective agencies. Plaintiff incorrectly opines that the requested records would not provide any guidance on how to circumvent the law to an agency that does not possess bypass authority. PMSJ at 10-11. If other agencies knew OMB's beliefs concerning their views or the views of sister agencies, they could use this information to impede and frustrate legislative clearance requirements. See Declaration of James

13

Jukes, executed on May 11, 2007, ¶ 20 ("Disclosure of these deliberative materials would reveal aspects of OMB's evaluative process concerning submission of agencies' documents to Congress without OMB's clearance and the manner in which relevant opinions and recommendations were formed."); see Inst. for Policy Studies, 676 F. Supp. 3, 5 (D.D.C.,1987) (upholding the use of Exemption 2 to protect an Air Force security classification guide from which "a reader can gauge which components [of a classified emergency communication system] are the most sensitive and consequently the most important"); Windels, Marx, Davies & Ives, 576 F. Supp. at 409-10 (protecting computer program under Exemptions 2 and 7(E) because it merely instructs computer users how to detect possible law violations, rather than modifying or regulating public behavior).

　　　If this information were public, communications among OMB staff regarding legislative clearance would be inhibited.  Inhibited communications present a significant risk that OMB officials and staff will be less informed about the process and might easily result in less compliance by the subject agencies.  Am. Jukes Decl. at ¶ 36 ("Release of the withheld materials in Documents 1-14 (the internal-OMB briefing material) would harm the legislative clearance function because it would inhibit OMB staff in their drafting of these internal-OMB memoranda that are designed to inform OMB's most senior officials and staff about LRD's activities and practices, as well as issues and potential issues relating to OMB's legislative clearance function.").  Although FOIA seeks disclosure of information, it will not require disclosure that impedes the effective working of an agency.  See Jordan, 591 F.2d at 783 (Leventhal, J. concurring) ("Exemption 2 is applicable where the document consists of internal instructions to such government officials as investigators and bank examiners.   In such a case disclosure would permit circumvention of the law, and there is no substantial, valid external interest of the

14

community at large in revelation.").  Documents 1-14 are internal materials provided to

government officials and there is no substantial, valid external public interest in these materials.

The disclosure of these materials would provide agencies with information that would permit

them to avoid their duty to participate in the legislative clearance process.

Defendant has satisfied both prongs of the high exemption 2.  All of the records are

internal communications among OMB staff.  The subject of these communications concerns the

OMB's views on legislative clearance.  Am. Jukes Decl. ¶ 26; Am. Vaughn Ind. ¶¶ 1-14.

Legislative clearance does not directly affect the rights of any member of the public.  Am. Jukes

Decl. ¶ 27.  Release of confidential information concerning legislative clearance significantly

risks circumvention of that process by federal agencies.  Accordingly, the OMB properly applied

high exemption 2 and the Court should not order the disclosure.

### B.    OMB Lawfully Withheld Portions of Documents 1-14 Under Exemption 5.

All of the records at issue in this case may be withheld under Exemption 5 because these

records are both predecisional and deliberative.  The records are predecisional because they were

"generated before the adoption of an agency policy."  See Coastal States v. Dep't. of Energy, 617

F.2d 854, 866 (D.C. Cir. 1980).  They are deliberative because they "reflect[] the give-and-take

of the consultative process."  See Id.  Plaintiff incorrectly argues that the documents in this case

do not meet either of these prongs.  PMSJ at 11.

### 1.    Documents 1-14 are Predecisional and Deliberative.

Documents 1-14 are predecisional records that are part of the deliberative process.

Plaintiff incorrectly asserts that these records constitute OMB's policy regarding legislative

clearance.  PMSJ at 12.  These records are neither statements of policy nor statements of the law

of legislative clearance, but rather they are briefing materials that were transmitted to OMB

officials and staff as part of the deliberative process of legislative clearance.  Am. Jukes Decl. at

¶¶ 24, 28.

Documents 1-14 are briefing materials that are protected from disclosure under the

deliberative process privilege.  Am. Jukes Dec. at ¶ 28. The deliberative process privilege

routinely protects "advisory opinions, recommendations, and deliberations, comprising part of a

process by which governmental decisions and policies are formulated."  Canning v. Dep't of the

Treasury, No. 94-2704, slip op. at 7 (D.D.C. Mar. 21, 2001) ("Allowing disclosure of the

pre-decisional opinions of Secret Service Special Agents on whether particular organizations pose

protective security risks could compromise the agency's ability to complete its protective mission

by stifling honest and frank communication within the agency.").  "Briefing materials" are similar

to advisory opinions, recommendations, and deliberations, and are likewise generally exempt

from disclosure under the deliberative process privilege.

Documents 1-14 are briefing materials because they are reports or other documents that

summarize issues and advise superiors, either generally or in preparation for an event such as

congressional testimony.  Am. Jukes Decl. at ¶¶ 24, 26, 28; see, e.g., Judicial Watch, 337 F. Supp.

2d at 174 (protecting "talking points" and recommendations on how to answer questions).  The

purpose of Documents 1-14 is to alert/ inform OMB officials and staff about issues (and potential

issues) that relate to this legislative clearance process.  Am. Jukes Dec. at ¶¶ 24, 26.  These

documents summarize the currently-held internal-OMB perspectives and views regarding which

Federal agencies have a basis - in statute or in prior agency and OMB practice - for not submitting

to OMB, for interagency review, the drafts of their submissions to Congress.  Id. at ¶ 26.

Documents 1-14 serve as a starting point for discussions within OMB concerning possible changes to OMB's practices. Id. at ¶¶ 24, 26. These records, therefore, comprise part of the process by which governmental decisions and policies within the legislative clearance process are formulated.

Briefing materials prepared by agencies for one purpose or another are properly protected under the deliberative process privilege. See Sec. Fin. Life Ins. Co., No. 03-102-SBC, 2005 WL 839543, at *11 (D.D.C. Apr. 12, 2005) ("The undisputed evidence establishes that these [talking points] are deliberative."); Judicial Watch, Inc. v. U.S. Dep't of Energy, 310 F. Supp. 2d 271, 317 (D.D.C. 2004) (protecting briefing materials prepared for Secretary of the Interior), aff'd in part, rev'd in part on other grounds and remanded, 412 F.3d 125, 133 (D.C. Cir. 2005); Judicial Watch, 306 F. Supp. 2d at 71-72 (protecting e-mail created to prepare FERC chairman for upcoming congressional testimony). Thompson v. Dep't of the Navy, No. 95-347, 1997 WL 527344, at *4 (D.D.C. Aug. 18, 1997) (protecting materials created to brief senior officials who were preparing to respond to media inquiries, on the basis that "disclosure of materials reflecting the process by which the Navy formulates its policy concerning statements to and interactions with the press" could stifle frank communication within the agency), aff'd, No. 97-5292, 1998 WL 202253, at *1 (D.C. Cir. Mar. 11, 1998) (per curiam); Access Reports v. Dep't of Justice, 926 F.2d 1192, 1196-97 (D.C. Cir. 1991) (dictum); Hunt v. U.S. Marine Corps, 935 F. Supp. 46, 52 (D.D.C.,1996) (holding "point papers" compiled to assist officers in formulating decision protectible); Wash. Post v. Dep't of Defense, 1987 U.S. Dist. LEXIS 16108, at *33 (holding summaries and lists of material compiled for general's report preparation protectible). Since Documents 1-14 are briefing materials, they are properly protected under high exemption 2.

Plaintiff cites case law to support its argument that Documents 1-14 are policy statements, specifically four cases: (1) Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 867 (D.C. Cir. 1980); (2) Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997); (3) Pies v. U.S. I.R.S., 668 F.2d 1350, 1353 (D.C. Cir. 1981); (4) Schwartz v. IRS, 511 F.2d 1303, 1305 (D.C. Cir. 1975) PMSJ at 12. These cases do not support Plaintiff's argument. Plaintiff once again renews its flawed secret law argument and incorrectly states both the law and the facts to support this argument.

Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 858 (D.C. Cir. 1980) involved memoranda from regional counsel to auditors working in DOE's field offices, issued in response to requests for interpretations of regulations within the context of particular facts encountered while conducting an audit of a firm. The Court noted that a document may be predecisional when it is prepared but it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public. Id. The Court further stated that "recommendations with no precedential significance" were exempt from disclosure. Id. at 867 (citing Renegotiation Bd. v. Grumman Aircraft, 421 U.S. 168, 185-86, 95 S.Ct. 1491, 1500-01, 44 L.Ed.2d 57 (1975)). However, the recommendations in Coastal States were subject to disclosure because they had precedential significance. Id. at 869 ("[T]hese opinions were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent. If this occurs, the agency has promulgated **a body of secret law which it is actually applying in its dealings with the public** but which it is attempting to protect behind a label. This we will not permit the agency to do.") (emphasis added).

18

Coastal States is inapplicable to the instant case.  OMB has never formally or informally

adopted Documents 1-14 as agency policy.  Am. Jukes Decl. ¶ 27 (OMB has not publicly invoked

them as a justification or explanation for OMB's actions or views.); ¶ 29 ("they do not represent

or set forth OMB's official position").  These documents do not serve as precedent for any

dealings with the public,  but rather they inform OMB officials and staff about a process that

affects no individual citizens, only federal agencies.  Id. at ¶ 26.

Tax Analysts and Schwartz likewise concern the application of an agency's precedential

decisions to members of the public, and are also inapplicable to the instant case.  Tax Analysts

concerned attorneys in the national office of the Office of Chief Counsel for the Internal Revenue

Service who prepared Field service advice memoranda ("FSAs") in response to requests from IRS

field personnel for legal guidance, usually with reference to the situation of a specific taxpayer.

117 F.3d at 609.  These opinion memoranda were used for rulings with regard to taxpayers.

Schwartz is a thirty year old case which reviewed the limited question of whether it was an abuse

of discretion for the District Court Judge to deny Plaintiff's Motion for a More Detailed Opinion

explaining the Court's one page grant of summary judgment on Exemption 5.  511 F.2d at 1304.

The language that Plaintiff cites is part of the Court's observation that Exemption 5 is nuanced

and as such is dicta.  Id. at 1305-06.

Pies v. U.S. I.R.S., 511 F.2d 1350 (D.C. Cir. 1981) squarely contradicts Plaintiff's

assertion that Documents 1-14 constitute the secret law of OMB.  Pies involved IRS drafts of

proposed regulations interpreting a statute that eventually was repealed.  Id. at 1351.  The Court

viewed the touchstone for determining whether a record constitutes secret law as its effect on

members of the public.  See Id. at 1353 (Exemption 5 does not protect those records "that reflect

the working law of the agency in the form of final opinions, statements of policies and interpretations to staff **affecting a member of the public** or statements which can be said to constitute the legislative history of the regulations.") (emphasis added).  In <u>Pies</u>, the Court contrasted secret law with predecisional deliberative materials vis a vis their content and their impact on the public.  <u>See Id.</u> (noting that predecisional documents "do not reflect agency policy or interpretations of the agency" and "obviously would be of little or no assistance to members of the public.  Such documents, if released, may actually mislead the public as to the policy of the agency.  There is no real public interest in such documents save perhaps for satisfying public curiosity.  They are not informational and do not constitute agency 'secret law'.").  The Court further noted "Appellee's review and use of the documents in this context did not transform them into post-decisional documents or predecisional documents subject to release since it seems obvious that he used them only as a point of reference and not as reflecting agency law."  <u>Id.</u>  It stated that Congress did not intend FOIA to require the disclosure of all documents and memoranda that are used as research tools by attorneys in the agency, even though never finalized nor approved to reflect agency policy.   <u>Id.</u> at 1354-55.

Documents 1-14 are exempt from disclosure under <u>Pies</u>.  Like the draft regulations in <u>Pies</u>, Defendant uses these documents as a starting point for discussions on policy changes.  Am. Jukes Decl. ¶ 24.  <u>See Pies</u> 511 F.2d at 1353 (agency's use of draft regulations as "a point of reference" did not transform them into post-decisional documents or predecisional documents .")  This use should not render them unprotected under Exemption 5.  <u>See Id.</u>  Documents 1-14 would be of little assistance to the public because they do not reflect agency policy or interpretations by the agency.  <u>See</u> Am. Jukes Decl. ¶ 37 ("I would have drafted these documents in a significantly

different manner if I had thought that they would have a public audience (which could incorrectly construe such a document as a pronouncement of the "official" position or views of 'OMB'"). In addition, these documents "do not define - or otherwise determine - the rights or obligations of any member of the public."  Am. Jukes Decl. ¶ 27.

Plaintiff also misstates the facts in its attempt to characterize Documents 1-14 as OMB policy.  PMSJ at 12.  Both the first Vaughn Index and the Amended Vaughn Index contain identical language: "Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements." Vaughn Ind. ¶¶ 1, 3-14; Am. Vaughn Ind. ¶¶ 1, 3-14.  Documents 1-14 contain "internal-OMB documents that provide internal-OMB perspectives and views, they do not represent or set forth OMB's 'official position' (so to speak) regarding which agencies may, or may not, submit legislative materials directly to Congress."  Am. Jukes Decl. at ¶ 28.  They stand in stark contrast to OMB Circular A-19 and the OMB Director's memorandum to agency heads of February 15, 2001, which constitute the agency's official policy on legislative bypass.  Am. Jukes Decl. at ¶ 28.  Words like "views", "perspectives", "opinions", "advice", "recommendations", and "discussions" suggest that these records do not represent the agency's final decision.  Rather, they indicate a deliberative process through which an agency attempts to reach a final decision. Exemption 5 permits "[T]he withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be."  NLRB v. Sears, 421 U.S. 132, 153, 95 S. Ct. 1504, 1517, 44 L. Ed. 2d 29 (1975).  Both the Amended Jukes Declaration and the Amended Vaughn Index show that these documents preceded the formulation of final policy and were part of the deliberative process.  These records do not describe policies,

but rather they describe issues and perspectives that are to be considered during discussions that occur during the inherently deliberative process of legislative clearance. Am. Jukes Decl. ¶ 26 ("these 14 internal-OMB documents are about the interagency predecisional deliberative process that relates to the preparation, review, and submission by Federal agencies of materials to Congress; the purpose of these documents is to inform OMB officials and staff about issues (and potential issues) that relate to this process as well as to serve as a starting point for discussions within OMB concerning possible changes to OMB's practices."). See Judicial Watch, 337 F.Supp.2d at 172 ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.").

Plaintiff has also misconstrued the meaning of various words in the Declaration of James Jukes in order to support its argument that the records are OMB policy. PMSJ at 12. When these words are analyzed contextually, Plaintiff's argument collapses. Plaintiff' argument that Jukes describes the records as having been "issu[ed]" and as now being "obsolete" suggests that Jukes is describing policies. Id. (citing Jukes Decl.¶ 18 (now Am. Jukes Decl. ¶¶ 20, 21, 24)). Such words are not confined to policies and can also be used for briefing materials. Documents 1-14 are memoranda issued within the OMB for use by its senior officials and staff. They are nothing more than recommendations, advice, summaries, and discussions. Am. Jukes Decl. ¶¶ 24-26. When these views were formulated, the holders of these views based their analysis on the state of law at that time. Accordingly, these views became obsolete when the law changed. Am. Jukes Decl. ¶¶ 21, ("Much of this same "listing" information (which OMB provided to the plaintiff) also

appears in the obsolete (prior year) versions of Document 1, but over the years the list of statutes has changed (from one memorandum to the next) to reflect changes in the law."); <u>see also</u> Am. Jukes Decl. ¶ 25 ("The 14 documents summarize internal-OMB views, as they exist at different points in time, regarding OMB's practices with respect to how OMB carries out the interagency process for reviewing and commenting upon the drafts of materials (testimony, reports, and legislative proposals) that Executive Branch agencies propose to submit to Congress."). The mere use of the words "obsolete" and "issued" says nothing about the status of these documents as either policy or law, especially in the context of an "interagency process that is inherently predecisional and deliberative." <u>See</u> Am. Jukes Decl. ¶¶ 13, 25.

Plaintff also cites to Jukes' statement that Documents 1 and 2 "currently apply and are utilized by OMB employees" in further support of its argument that Documents 1-14 comprise policy. PMSJ at 12 (citing Jukes Decl. ¶ 17 (now Am. Jukes Decl. ¶¶20, 24). Once again, Plaintiff urges this Court to adopt an unduly narrow meaning of the Declaration's language. The record does not support such a meaning. The perspectives contained in records are used by employees when issues arise in the legislative clearance process. <u>See</u> Am. Jukes Decl. ¶ 20 ("OMB's current records that currently are actively used by OMB employees– principally by the 23 employees in OMB's LRD."). The mere fact that employees utilize the content of these documents does not render them policy statements. While these memoranda inform decisions, the Amended Jukes Declaration and the Amended Vaughn Index both show that these memoranda do not mandate certain decisions, but rather they serve as briefing materials to guide the legislative clearance process. As a member of the Legislative Reference Division since 1988 and Assistant Director for Legislative Reference since 1998, James Jukes possesses a keen understanding of the

23

function of these memoranda.  See  Am. Jukes Decl. ¶¶ 1, 2, 37.  In his amended declaration, Mr.

Jukes states that these fourteen memoranda are "internal briefing materials, these documents do

not constitute the official OMB guidance to Executive Branch agencies"  Am. Jukes Decl. ¶ 28.

The documents highlight issues surrounding the scope of legislative clearance and provide the

framework for discussing changes to OMB's practices.  Am. Jukes Decl. ¶ 28.  These documents

are not policy mandates but rather they are briefing materials.

Plaintiff has mischaracterized Documents 1-14 as "the OMB official's *explanation* of the

bypass policy."  PMSJ at 14 (emphasis in orginal).  Based on this mischaracterization, Plaintiff

concludes that Exemption 5 does not protect these records because they are not communications

made before a decision (predecisional) but rather they explain reasons for decisions already made.

No evidence supports Plaintiff's assertion.  Indeed, the evidence shows the documents contain

predecisional communications.

Plaintiff quotes language from the Vaughn Index that supports rather than refutes

Defendant's argument that Documents 1-14 are predecisional.  Plaintiff cites language which

states that Records 1, 3-14 contain "a description of the views and perspectives of OMB official's

interpretations of the views of certain agencies regarding legislative clearance requirements."

PMSJ at 14 n. 3 (citing Vaughn Ind. ¶¶ 1, 3-14 (now Am. Vaughn Ind. ¶¶ 1, 3-14)).  Plaintiff also

quotes language which describes record 2 as containing "OMB official's characterizations and

perspectives concerning certain agencies views regarding legislative clearance requirements

applicable to their respective agencies."  Id.  (citing Vaughn Ind., ¶ 2 (now Am. Vaughn Ind. ¶ 2)).

Contrary to Plaintiff's assertion, this language does not suggest an explanation of pre-existing

policy.  The quoted language does not speak to the OMB officials' views on policy.  Instead, it

24

deals with how OMB officials think other agencies view their status vis a vis legislative clearance requirements. This is not the type of communication that takes place after a policy has been formulated. Indeed, once a policy is formulated, an agency's views are of lesser importance because the final decision regarding that policy has been made.

Plaintiff misreads the Vaughn Index when it states that the Index "does not in fact claim that these records were part of a 'discussion' of OMB's views and perspectives, but rather that they contain a 'description' of those views and perspectives." PMSJ at 14, n. 3 (citing Vaughn Index ¶¶ 1, 3-14, Am. Vaughn Ind. ¶¶ 1, 3-14). The Amended Vaughn Index describes records 1, 3-14 as including multi-page memoranda which "provid[e] a background **discussion** of legal and statutory issues related to bypass authorities" and includes "a **discussion** of the bypass authority and Inspectors Generals and the Inspector General Act." Vaughn Index ¶¶ 1, 3-14, Am. Vaughn Index ¶¶ 1, 3-14) (emphasis added). These memoranda include a "description of the views and perspectives of OMB official's interpretations of the views of certain agencies regarding legislative clearance requirements." Id. This description is an integral and intertwined part of the larger discussion regarding the potential structuring of the legislative clearance process. Unlike summary factual descriptions of statutes in these memoranda which have been released because they could be reasonably segregated from the document's predecisional and deliberative materials, these descriptions cannot be segregated from the predecisional and deliberative discussions regarding the scope of the legislative clearance process. See Am. Jukes Decl. ¶ 42 ("To the extent that any information in the remaining withheld sections of those 14 documents . . . is 'factual' in nature, such "factual" portions are not reasonably segregable from the overall deliberative nature of these documents.").

Plaintiff offers an alternative argument which lacks any evidentiary support.  Plaintiff asserts that "even if the records do contain some predecisional, deliberative information, that information still would not be exempt from disclosure because it was incorporated into the agency's final policy."  PMSJ at 15.  There is no support for this assertion.  Plaintiff does not point to any evidence that indicates that this information was incorporated into final agency policy.

Plaintiff further argues that Defendant has not provided the Court with sufficient details to allow the Court to make a de novo finding on segregability vis a vis Documents 1-14.  Plaintiff, therefore, asks that the court release portions of these records.  This argument and request must be reevaluated in light of the release of portions of Documents 1-14 to Plaintiff on August 3, 2007 after Plaintiff filed it Opposition to Defendant's Motion for Summary Judgment as well as the Amended Jukes Declaration and the Amended Vaughn Index.

Defendant has provided more than enough details to allow this Court to conclude that no potentially non-exempt material in the documents at issue is reasonably segregable from the exempt material.  Assistant Director Jukes stated that "To the extent that any information in the remaining withheld sections of those 14 documents . . . is "factual" in nature, such "factual" portions are not reasonably segregable from the overall deliberative nature of these documents." Am. Jukes Decl. ¶ 42.  It is certainly reasonable to understand that the structure and selection of topics could provide a view into the deliberative process.  See Am. Jukes Decl. ¶ 42 ("[T]he recitation of specific "facts" in these documents (e.g., a discussion and summary of statutory provisions that, in the view of the memoranda, do not authorize the direct submission to Congress of legislative or budgetary materials) itself reflects the subjective judgment of the document's

author that the particular "facts" are sufficiently significant to warrant mention.").  This statement shows that any of the non-exempt information that might remain is so intertwined with exempt information that they cannot be reasonably separated from the exempt information without compromising the deliberative process.

The release of the withheld materials in Documents 1-14 (the internal-OMB briefing material) would harm the legislative clearance function because it would inhibit OMB in its drafting of these internal-OMB memoranda that are designed to inform OMB's most senior officials and staff about LRD's activities and practices, as well as issues and potential issues relating to OMB's legislative clearance function.  Am. Jukes Decl. ¶ 36.  If these briefing materials are released, there could be a significant delay in the drafting of these useful memoranda.  Am. Jukes Decl. ¶ 38.  Also, this disclosure "would inhibit the frank and candid exchange of views that is necessary for effective government decisionmaking."  Am. Vaughn Ind. ¶¶ 1-14.  "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process."  Sears, 421 U.S. at 151 n. 18, 95 S.Ct. at 1504.

Documents 1-14 are predecisional and deliberative.  These memoranda are briefing materials that summarize issues and potential issues regarding the legislative clearance process for OMB officials and staff.  They are tools to be used during discussions regarding changes to OMB practice.  Disclosure of these documents would inhibit the free and candid exchange of information necessary to expeditiously and accurately formulate optimal policy decisions.

Accordingly, this Court should find Documents 1-14 exempt from disclosure under Exemption 5.

**C.    OMB Lawfully Withheld Documents 15-21 Under Exemption 5.**

Plaintiff recycles some of the same arguments for Documents 15-21 that it made for Documents 1-14. Plaintiff asserts that these records are neither predecisional nor deliberative because they represent final statements of law. It also maintains that Defendant has not shown that these records contain non-segregable information. These arguments fail because the record evidence successfully rebuts them.

Plaintiff propagates its error regarding the meaning of record 1 and concludes that Documents 15-21 are not predecisional. See PMSJ at 17. Plaintiff states that Document 1, which contains the policy that is currently applied and utilized by OMB employees, is dated February 20, 2001. Id. It then states that Documents 15-21, which are all dated July 18, 2001, cannot constitute predecisional information because they are dated after record 1. Id. This conclusion stems from Plaintiff's earlier erroneous determination that Document 1 represented the Defendant's current policy simply because the OMB currently "applies" and "utilizes" it. See PMSJ at 13. As discussed supra, this language does not show that the Document 1 represents the current policy of the agency because advice can be utilized, applied, and considered and still not constitute policy. Therefore, any documents dated after record 1 are not automatically post decisional. Indeed, as discussed below, Documents 15-21 are part of the deliberative process.

Documents 15-21 are predecisional. They consist of letters from Sean O'Keefe ("O'Keefe"), then OMB Deputy Director, to various agency heads. Am. Vaughn Ind. ¶¶ 15-21. In these letters, O'Keefe discussed the respective agencies' "authority to bypass mandatory review and provided his comments and perspectives on legislative coordination between that agency and

28

OMB." Id. Plaintiff fails to recognize the role of these documents in the inherently predecisional and deliberative legislative clearance process that was duly noted by Assistant Director Jukes. See Am Jukes Decl. at 31 ("these eight[2] documents relate to an interagency process that is, inherently, predecisional and deliberative."). Documents 15-21 discussed the operation of the legislative clearance process itself and expressed views (including by making a request or providing guidance) regarding how that process should work. Am Jukes Decl. at 32. Documents 15-21 show that when these correspondences took place no decision had been made between OMB and the various agency recipients of these correspondences (Securities and Exchange Commission, Federal Deposit Insurance Corporation, Comptroller of the Currency, etc.) regarding the specific details of the relationship between OMB and these agencies vis a vis the legislative clearance. There is ample evidence that Documents 15-21 are predecisional.

In addition to being predecisional, Documents 15-21 are also deliberative. Plaintiff maintains that it is unclear why OMB would be providing another agency with deliberative, rather than final, information about the agency's authority to bypass OMB review. PMSJ at 17. Once again, Plaintiff shows a lack of understanding regarding the inherently deliberative nature of the legislative clearance process. There is nothing unusual or irrational about agencies conferring (deliberating) with each other about how they should interact in the policy making process. Indeed, when agencies confer and cooperate in formulating policy, they often find that executing that policy can be accomplished more smoothly. O'Keefe's letters also contained his views on legislative coordination between the OMB and the respective agencies. Am. Vaughn Ind. ¶¶ 15-

---

[2] The eight documents refer to Documents 15-22. As previously stated, Plaintiff has not challenged the withholding of Document 22.

21 (stating that O'Keefe "provided his comments and perspectives on legislative coordination between that agency and OMB."). This suggests that these correspondences were part of the deliberative process. Contrary to Plaintiff's assertion, O'Keefe was not explaining the pre-existing policy to the agency (PMSJ at 17), but rather he was providing his proposal on how to execute (coordinate) that policy. Earlier in its brief, Plaintiff argued that "'discussion' may imply some give-and-take". Here the Vaughn Index states that O'Keefe "**discussed** the agency's legislative authority." Am. Vaughn Ind. ¶¶ 15-21 (emphasis added). Discussion or "give or take" is the cornerstone of the deliberative process. Documents 15-21 represent a discussion of the prospective relationship between OMB and several federal agencies. Both in form and substance, Documents 15-21 are deliberative.

In the alternative, Plaintiff attempts to secure partial disclosure of Documents 15-21 by arguing that "final information" is non-exempt and can be segregated. PMSJ at 17. Segregability is not feasible because factual material is intermingled with the author's impressions and analysis. See Am. Jukes Decl. ¶ 42. Since these letters contain the Defendant's proposals for future action, they cannot be separated from these facts without rendering the document meaningless.

The release of these documents would harm the legislative clearance process. It would inhibit the discussions between OMB and agencies regarding ideas for how an interagency review (or other dialogue) could occur with respect to an agency's communications with Congress. Am. Jukes Decl. ¶ 41. These discussions are very productive and are most likely to result in improvements to the Executive Branch's submission of budgetary and legislative materials to Congress, as they can be conducted in a confidential manner that enables the participants to offer their viewpoints and perspectives (put forward and respond to suggestions and requests) in a frank

and candid way.  Id.  These discussions would likely become more limited, and thus be less productive, if the participants believed that the discussions would be conducted in a "public" forum.  Id.  Therefore, one of OMB's most vital deliberative processess (legislative clearance) would be seriously damaged if Documents 15-21 were released.

Documents 15-21 are predecisional and deliberative.  These letters precede decisions regarding the contours of OMB's relationships to various agencies in the legislative clearance process.  They are part of a dialogue between the OMB and other agencies in which OMB offers its perspectives on legislative coordination.  See Am. Vaughn Ind. ¶¶ 15-21.  Documents 15-21 clearly represent discussions and deliberations, not decisions or policy.  They are, therefore, both predecisional and deliberative.  Disclosure of these documents would inhibit the free and candid exchange of information that is vital to the legislative clearance process.  Accordingly, this Court should find Documents 15-21 exempt from disclosure under Exemption 5.

## IV.    CONCLUSION

For reasons stated herein, Defendant has fully complied with the Freedom of Information Act.  Therefore, Plaintiff's Motion for Summary Judgment should be denied and Defendant's Motion for Summary Judgment should be granted.


Date: September 7, 2007                Respectfully Submitted,


                                       _____/s/_____
                                       JEFFREY A. TAYLOR, DC Bar #489610
                                       United States Attorney


                                       _____/s/_____
                                       RUDOLPH CONTRERAS, DC Bar #434122
                                       Assistant United States Attorney


                                       _____/s/_____
Of Counsel:                            ALEXANDER D. SHOAIBI, DC Bar # 423587
Stuart Bender, Esq.                    Assistant United States Attorney
Assistant General Counsel              Judiciary Center Building – Civil Division
OMB                                    555 Fourth Street, N.W. -- Room E-4218
                                       Washington, D.C. 20530
                                       (202) 514-7236

                                       Counsel for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on Friday, September 7, 2007, service of Defendant's

Opposition to Plaintiff's Motion for Summary Judgment and Reply to Plaintiff's Opposition to

Defendant's Motion for Summary Judgment and Defendant's Supplemental Authorities in Support

of Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute was made

by the Court's Electronic Case Filing System to:


Adina Rosenbaum, Esq.
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009



_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Judiciary Center Building – Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————————
**PUBLIC CITIZEN, INC.,**                   )
                                            )
      **Plaintiff**                      )
                                            )  **Civil Action No. 07-0409 (RCL)**
      **v.**                            )
                                            )
**OFFICE OF MANAGEMENT AND BUDGET,**        )
                                            )
      **Defendant.**                     )
—————————————————————————————  )

### SUPPLEMENTAL AUTHORITIES IN SUPPORT OF
### DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH
### THERE IS NO GENUINE DISPUTE

Defendant, through counsel, the United States Attorney for the District of Columbia, pursuant to Local Rule 56.1, respectfully submits the following Supplemental Authorities in Support of Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute . At the outset, Defendant notes that Plaintiff has not disputed any facts in Defendant's Statement of Material Facts, but simply has asserted its belief that some of the facts are irrelevant. Accordingly, Defendant supplements the following paragraphs in its Statement of Material Facts ("DSMF") with the cited authorities as follows:

(1) DSMF Paragraph 6 is supplemented by Amended Declaration of James Jukes, executed September 7, 2007 ("Am. Jukes Decl.") ¶¶ 13, 35.

(2) DSMF Paragraphs 8 and 16 are supplemented by: (a)  Am. Jukes Decl. ¶ 29, (b) Amended Vaughna Index ¶¶ 1-14, and (c) Letter, dated August 3, 2007, from Assistant U.S. Attorney Alexander D. Shoaibi to Adina Rosenbaum, Esq.

(3) DSMF Paragraphs 20 and 21 are supplemented by (a) Am. Jukes Declaration ¶ 23 and (b)

Am. Vaughn Index generally.

(4) DSMF Paragraphs 23 and 24 are supplemented by (a) Am. Jukes Declaration ¶¶ 24 through

41 and (b) Am. Vaughn Index ¶¶ 1-14.

(5) DSMF Paragraph 26 is supplemented by (a) Am. Jukes Decl. ¶ 42; (b) Am. Vaughn Index ¶¶

1-14; and (c) Letter, dated August 3, 2007, from Assistant U.S. Attorney Alexander D. Shoaibi to

Adina Rosenbaum, Esq.


September 7, 2007                         Respectfully submitted,


                                         _____
                                                        /s/
                                         JEFFREY A. TAYLOR, DC Bar #489610
                                         United States Attorney


                                         _____
                                                        /s/
                                         RUDOLPH CONTRERAS, DC Bar #434122
                                         Assistant United States Attorney


                                         _____
                                                        /s/
OF COUNSEL:                              ALEXANDER D. SHOAIBI, DC Bar # 423587
Stuart Bender, Esq.                      Assistant United States Attorney
Assistant General Counsel                Judiciary Center Building – Civil Division
OMB                                      555 Fourth Street, N.W. -- Room E-4218
                                         Washington, D.C. 20530
                                         (202) 514-7236

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

PUBLIC CITIZEN, INC.,       :

         :

              Plaintiff,    :     Civil Action No. 07-0409

         :

     - v.-          :     AMENDED DECLARATION OF

         :     JAMES JUKES

         :

OFFICE OF MANAGEMENT   :

AND BUDGET,        :

         :

             Defendant.   :

         :

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

I, JAMES JUKES hereby declare, pursuant to 28 U.S.C. § 1746, as follows, based on information and belief:

1. I am the Assistant Director for Legislative Reference of the Office of Management and Budget (OMB), a position I have held since 1998. Prior to that, I served as a branch chief in the Legislative Reference Division (LRD) from 1988-1998. Prior to that, I served as a budget examiner in OMB's International Affairs Division. Prior to that, I served as a budget examiner in OMB's Transportation, Commerce, and Housing Division. I have been an employee of OMB since 1981.

2. As Assistant Director for Legislative Reference, I am the head of OMB's LRD, which carries out the long-standing OMB responsibility of overseeing the internal Executive Branch interagency review and clearance of drafts of proposed legislation, drafts of reports to Congress, and drafts of congressional testimony that have been



prepared by Executive Branch agencies. The plaintiff's FOIA request relates to this interagency review process, and I was the OMB official who had primary responsibility for coordinating OMB's search for documents responsive to the plaintiff's FOIA request.

3. In this declaration, I will describe the search for documents OMB conducted in response to the plaintiff's request under the Freedom of Information Act (FOIA) and explain the basis for OMB's decision to withhold certain documents sought by plaintiff in its request.

4. The statements made in this declaration are based on information obtained by me in the course of my official duties and my personal knowledge, which I have gained as a result of reviewing the documents that are at issue in this proceeding and that are described in the amended <u>Vaughn</u> index (Attachment A).

## OMB's Responsibilities and Organization

5. OMB is "the President's principal arm for the exercise of his managerial functions." Reorganization Plan No. 2 of 1970 (5 U.S.C. App.), Message of the President. OMB assists the President in the discharge of his budgetary, management, and other executive responsibilities. More specifically, OMB assists the President in the preparation of the Federal budget and in managing its execution by the agencies. OMB also works to assure that proposed legislation (as well as agency testimony and reports to Congress) are consistent with the Administration's policies, including the President's Budget. OMB also has a central role in providing leadership in the development, oversight and coordination of the Federal government's policies in the procurement, general management, financial management, and information and regulatory areas, as

well as in the implementation of those policies. OMB promotes better program
management, strengthens administrative management, develops better agency-
performance measures and improves coordination of the Executive Branch's various
operations.

6. OMB has approximately 465 employees, all located in Washington, D.C.
(OMB does not have regional or field offices). OMB is comprised of the OMB Director's
office, several small staff offices (General Counsel, Legislative Affairs, Communications,
Administration and Economic Policy); the Budget Review Division, which provides
support in the development and execution of the federal budget; four Resource
Management Offices, which develop and support the President's budget; four statutory
offices (the Office of Information and Regulatory Affairs, the Office of Federal Financial
Management, the Office of Federal Procurement Policy and the Office of E-Government
and Information Technology); and the LRD (which I head), which develops and supports
the President's management and budget agenda through its interagency legislative review
function.

7. As noted above in paragraph 2, I am the Assistant Director for Legislative
Affairs and the head of OMB's LRD, which has 23 employees and is organized into three
branches: (1) the Labor, Welfare and Personnel Branch; (2) the Economics, Science and
General Government Branch and (3) the Resources, Defense and International Branch.
LRD's responsibilities and activities are described in more detail below. In addition, the
documents that have been withheld, and are described in the amended Vaughn index,
relate to LRD's activities.

- 3 -

### OMB's Legislative Clearance Function

8. OMB's long-standing legislative clearance function was expressly assigned to OMB – actually, to OMB's predecessor, the Bureau of the Budget – by Presidential Executive Order (E.O.) No. 8248. Issued by President Franklin Roosevelt in 1939, the E.O. directs OMB "[t]o assist the President by clearing and coordinating departmental advice on proposed legislation and by making recommendations as to Presidential action on legislative enactments, in accordance with past practice." E.O. 8248, Part II, Section 2(e), reprinted in National Archives and Records Administration, *Codification of Presidential Proclamations and Executive Orders: April 13, 1945–January 20, 1989*, at p. 9. As President Nixon stated in his Message to Congress regarding his 1970 reorganization of the Bureau of the Budget into OMB, "OMB will continue the Legislative Reference functions now performed by the Bureau of the Budget, drawing together agency reactions on all proposed legislation, and helping develop legislation to carry out the President's program." Reorganization Plan No. 2 of 1970, 5 U.S.C. App. (Message of the President).

9. OMB carries out the legislative clearance function, working with other parts of the Executive Office of the President and with the departments and agencies of the Executive Branch. This function is designed to serve the needs of the President in accomplishing his legislative responsibilities. While several sections of the Constitution have some bearing on the President's activities with respect to legislation, such activities are primarily based on the President's power under Article I, Section 7 to approve or disapprove enrolled bills passed by the Congress; his right under Article II, Section 2 to

request the opinions of Department heads; and his responsibility under Article II, Section 3 to recommend to Congress such measures as he shall judge necessary and expedient.

10.   Since at least 1939, every President has used central clearance of legislation through OMB (and its predecessor, the Bureau of the Budget) as a means of assuring that members of the President's Administration provided their views to him on pending legislation and on enrolled bills, and also submitted legislative proposals (and legislative comments) to Congress that are consistent with the President's own views of what legislation is necessary and expedient.

11.   As noted in paragraph 9 above, the OMB legislative clearance function primarily assists the President (and his policy representatives) in carrying out his legislative responsibilities by developing and presenting to the Congress a coherent, coordinated legislative program and coordinated views on pending legislation.  In addition, through the clearance process, the various agencies receive and take into account the programs, perspectives, and concerns of other agencies, and this ensures that the Congress receives coordinated and informative agency views on legislation under consideration. In this regard, the clearance function includes the interagency review of draft agency proposals for legislation and of draft agency testimony and reports to Congress on legislation. Finally, the OMB legislative clearance function assists the President with respect to the development of the Administration's position on legislation (often by drafting a "Statement of Administration Policy" or SAP), as well as with respect to the President's action to approve or disapprove (veto) an enrolled bill that

- 5 -

has passed both Houses of Congress (through the drafting of a recommendation memorandum from the OMB Director to the President, called an "enrolled bill memo").

12. Within OMB, LRD conducts the legislative clearance function. The guidelines and procedures for the legislative clearance function are set forth in OMB Circular A-19, *Legislative Coordination and Clearance*. A copy of Circular A-19 is posted on OMB's Internet site at http://www.whitehouse.gov/omb/circulars/a019/a019.html. In addition, at the beginning of a new Presidential Administration, OMB typically sends a memorandum to the incoming heads of departments and agencies that brings the legislative clearance process to their attention and provides them with a brief summary of that process. At the beginning of this Administration, the OMB Director sent such a memorandum to departments and agencies. A copy of that memorandum (OMB Memorandum M-01-12, *Legislative Coordination and Clearance*, February 15, 2001) is also posted on OMB's Internet site at http://www.whitehouse.gov/omb/memoranda/m01-12.html.

13. The legislative clearance function is an inherently predecisional and deliberative process. OMB receives drafts of Executive Branch reports, testimony, and legislation for interagency review and clearance on a daily basis. According to the statistics maintained by OMB's LRD, OMB in calendar year 2006 received for interagency review approximately 1,153 drafts of agency testimony, 341 drafts of agency reports to Congress (consisting mainly of agency letters to Congress), and 144 drafts of agency proposed legislation. In calendar year 2005, OMB received for interagency review approximately 1,231 drafts of agency testimony, 417 drafts of agency reports to Congress, and 209 drafts of agency proposed legislation. In calendar year 2004, OMB received for

- 6 -

interagency review approximately 1,087 drafts of agency testimony, 352 drafts of agency

reports to Congress, and 98 drafts of agency proposed legislation. OMB's LRD circulates

these drafts to Executive Branch agencies and offices for their review and comment. The

comments that are provided to OMB are reviewed by the LRD staff and are then

communicated to the relevant Executive Branch agencies and offices. It is not unusual

for this process to involve a series of back-and-forth discussions, on several issues,

regarding the draft of upcoming testimony, or of a report to Congress, or of a legislative

proposal.

### Plaintiff's FOIA Request to OMB

14. Because of OMB's small size and the relatively few FOIA requests it

receives, the work of responding to FOIA requests is divided among various offices

within OMB. Upon receipt of a FOIA request by OMB's FOIA Officer, the request is

reviewed to determine its subject matter. It is then "logged" into the FOIA tracking

system and assigned to the OMB office that can best respond, or coordinate OMB's

response, to the request. This "lead" office is then responsible for determining whether or

not any other OMB offices are reasonably likely to have documents that are potentially

responsive to the FOIA request. Each office within OMB is responsible for searching its

files for documents that may be responsive to a FOIA request.

15. By letter dated December 8, 2006, Public Citizen Litigation Group (Public

Citizen) submitted a FOIA request to OMB for:

"1. All records listing agencies that may directly submit legislative proposal,

reports, or testimony to Congress without receiving OMB clearance; 2. All records

listing agencies that may directly submit budget-related materials to Congress

without receiving OMB clearance; and 3. All records explaining that agencies or an

agency may directly submit legislative or budget-related materials to Congress

without receiving OMB clearance or providing statutory authority for agencies or

an agency to directly submit legislative or budget-related material to Congress

without receiving OMB clearance."

(A true copy of the December 8, 2006 letter is attached hereto as Attachment B.)

16. In response to the FOIA request, OMB conducted a search for responsive

documents (the search is described in paragraph 18, below). By letter dated January 10,

2007, OMB informed Public Citizen that OMB had located two documents that were

potentially responsive to Public Citizen's request and that OMB was withholding those

two documents based upon FOIA Exemptions 2 and 5. In that same January 10, 2007

letter, OMB also informed Public Citizen that OMB was enclosing a document – that I

had prepared in response to the FOIA request – which was "a listing of those statutes (and

the concerned agency) that address the direct submission of the *legislative* materials and

listing of those statutes (and the concerned agency) that address the direct submission of

*budget* materials" (emphasis added). (A true copy of the January 10, 2007 letter,

including its enclosure, is attached hereto as Attachment C.)

17. In a letter dated January 18, 2007, Public Citizen submitted a FOIA appeal

which OMB's FOIA Officer received on January 26, 2007. OMB reviewed Public

Citizen's appeal and responded in a letter dated February 26, 2007, in which OMB upheld

its decision to withhold the two documents. (True copies of the January 18, 2007 Public

- 8 -

Citizen appeal, and OMB's response of February 26, 2007, are attached hereto as
Attachments D and E.)

### OMB's Search for Responsive Documents

18. In responding to Public Citizen's FOIA request, FOIA appeal and this
lawsuit, OMB carried out searches for responsive documents. These searches were
conducted by me. I personally searched all relevant files within my office in LRD, which
is the repository of OMB's compilations of agencies with so-called "bypass" legislation
(i.e., a statute that would authorize an agency to submit testimony, a report, or legislation
directly to Congress without prior OMB interagency review). As the head of LRD, and
based upon my years of experience working in LRD, I knew where the relevant
documents would be located and in which files.

19. Accordingly, when LRD was assigned as the "lead" office within OMB for
responding to the plaintiff's FOIA request, I conducted the search for documents, which
resulted in my identifying the two documents that were withheld in OMB's response of
January 10, 2007 (these documents are included in the amended Vaughn index, as
Documents 1 and 2). In addition, as I have previously noted (paragraph 16, above), I
prepared a document – which OMB provided to the plaintiff as part of OMB's FOIA
response (see Attachment C) – that was "a listing of those statutes (and the concerned
agency) that address the direct submission of the *legislative* materials and listing of those
statutes (and the concerned agency) that address the direct submission of *budget*
materials" (emphasis added).

20. Moreover, during the preparation of this Declaration and out of an abundance of caution, I conducted a subsequent search of the LRD files for any other potentially responsive documents. As a result of this most recent search, I can verify that the two previously identified withheld documents (Documents 1 and 2 in the amended <u>Vaughn</u> index) are OMB's current records that currently are actively used by OMB employees -- principally, by the 23 employees in OMB's LRD. In addition, during this most recent search, I located an additional twenty (20) documents, which are discussed below (12 of them are prior and out-of-date versions of Document 1). Out of an abundance of caution, OMB is including these additional documents in the amended <u>Vaughn</u> index (as Documents 3 through 22), because they may be potentially responsive to this FOIA request.

21. Of these 20 additional documents, twelve (12) of them are obsolete prior issuances of Document 1 (described in the attached amended <u>Vaughn</u> index) which were issued between 1979 and 1999. All of these older versions are now obsolete due to changes in law and practice, and it was for this reason that OMB did not identify these documents during its earlier search for potentially responsive documents. Moreover, in response to the plaintiff's FOIA request, OMB prepared and provided to Public Citizen (as an enclosure to OMB's initial response to the FOIA request, which is at Attachment C) a listing of the statutes that, as described in Document 1, authorize an agency to submit legislative or budgetary materials to Congress without prior OMB review (see also paragraph 29, below). In sending this listing to the plaintiff, OMB sought to provide the plaintiff with information that it was seeking in its FOIA request, which ask for, in part,

"[a]ll records listing agencies that may directly submit legislative proposal, reports, or

testimony [or "budget-related materials"] to Congress without receiving OMB clearance."

Much of this same "listing" information (which OMB provided to the plaintiff) also

appears in the obsolete (prior year) versions of Document 1, but over the years the list of

statutes has changed (from one memorandum to the next) to reflect changes in the law. In

any event, out of an abundance of caution, OMB is including these 12 documents in the

amended <u>Vaughn</u> index (as Documents 3 through 14).

22. In addition, the remaining eight (8) additional documents are inter-agency

Executive Branch correspondence. While it is not clear that any or all of these documents

are responsive to the FOIA request, OMB (again, out of an abundance of caution) is

including these documents in the amended <u>Vaughn</u> index (as Documents 15-22).

**The 22 Withheld Documents Fall Within FOIA Exemptions 2 and/or 5**

23. As noted above, the accompanying amended <u>Vaughn</u> index (Attachment A)

lists and describes each of the 22 documents that OMB is withholding. I assisted in

preparing the amended <u>Vaughn</u> index, which included my personal review of these

documents. The amended <u>Vaughn</u> index describes each of the documents and specifies

the applicable FOIA exemption. As was the case with the two documents that OMB

withheld in its letters of January 10, 2007, and February 26, 2007, OMB is withholding

the 22 documents pursuant to two FOIA exemptions -- Exemptions 2 and 5. In

paragraphs 24 through 29 (Category I) and 30 through 33 below (Category II), I describe

the documents generally, which fall within two broad categories. Category I documents

relate to internal-OMB briefing materials. Category II documents relate to Interagency

Communications. I then turn, in paragraphs 35 through 40, to a discussion of the

deliberative process privilege and the harm to OMB that would occur if these documents

were released.

### Category I Documents – relating to Internal-OMB Briefing Materials
### (Documents 1-14 of the amended Vaughn index)

24. The two documents that OMB withheld in its initial response to the FOIA

request (Documents 1 and 2 in the amended Vaughn index) are internal-OMB documents

that were prepared by OMB's LRD (LRD) for use by OMB's most senior officials and by

OMB staff (principally, by the staff in LRD). With respect to both OMB's senior

officials and OMB staff (again, principally the LRD staff), these documents serve to alert

and inform the officials and staff about issues and potential issues (including related

concerns) regarding legislative and budgetary bypasses and their impact on the legislative

clearance function. In addition, these documents serve as a starting point for discussions

within OMB concerning OMB's practices in coordinating the interagency review of

budgetary or legislative materials, including those agencies that do not have clear

statutory authorization to submit such materials directly to Congress. These internal

OMB staff discussions can result in the consideration of changes to OMB's practices,

including through OMB making suggestions and requests to other agencies with respect

to their submissions (e.g., as is reflected in the interagency correspondence in Documents

15-22). The same purposes were served by the 12 additional documents that OMB has

included in the amended Vaughn index (Documents 3--14) that are prior, now-obsolete

versions of Document 1 (see paragraph 21 above). These 14 documents are being withheld under both Exemption 2 and Exemption 5.

25. The 14 documents summarize internal-OMB views, as they exist at different points in time, regarding OMB's practices with respect to how OMB carries out the interagency process for reviewing and commenting upon the drafts of materials (testimony, reports, and legislative proposals) that Executive Branch agencies propose to submit to Congress. As I noted above (paragraph 13), this interagency process is inherently predecisional and deliberative.

26. As noted above, these 14 internal-OMB documents are about the interagency predecisional deliberative process that relates to the preparation, review, and submission by Federal agencies of materials to Congress; the purpose of these documents is to inform OMB officials and staff about issues (and potential issues) that relate to this process as well as to serve as a starting point for discussions within OMB concerning possible changes to OMB's practices. As such, these documents do not define – or otherwise determine – the rights or obligations of any member of the public. Instead, these documents seek to summarize the currently-held internal-OMB perspectives and views regarding which Federal agencies have a basis – in statute or in prior agency and OMB practice – for not submitting to OMB, for interagency review, the drafts of their submissions to Congress.

27. Moreover, as these 14 documents are internal-OMB documents, OMB has not (to my knowledge) publicly released any of these documents or publicly invoked them as a justification or explanation for OMB's actions or views.

- 13 -

28.  In addition, as they are internal-OMB briefing materials, these documents do not constitute official OMB guidance to Executive Branch agencies.  Moreover, as these are internal-OMB documents that provide internal-OMB perspectives and views, they do not represent or set forth OMB's "official position" (so to speak) regarding which agencies may, or may not, submit legislative materials directly to Congress.  As such, these documents are very different from OMB Circular A-19 and the OMB Director's memorandum to agency heads of February 15, 2001 (see paragraph 12, above), in which OMB provided official guidance to agencies regarding their responsibilities under the interagency legislative clearance process.  As I noted above (in paragraph 12), copies of the Circular and the February 2001 memorandum are available on OMB's website.

29.  Finally, to the extent that the plaintiff is interested in identifying those statutes, currently in effect, in which Congress has authorized an agency to submit legislative or budgetary proposals (or other materials) directly to Congress, without prior interagency review, OMB has already provided a listing of such statutes to the plaintiff.  OMB provided this listing in the document that OMB prepared and sent to the plaintiff as part of OMB's initial FOIA response of January 10, 2007 (see the enclosure to Attachment C).  This document included all but one of the statutes that, in Document 1, are construed as authorizing agencies to make submissions to Congress without OMB review (in preparing the list that was provided to the plaintiff with OMB's FOIA response, OMB inadvertently failed to include a reference to the Federal Housing Finance Board, which – like several other agencies that were included in the list – has a legislative bypass under 12 U.S.C. § 250; also, the provided list incorrectly linked the Office of Federal Housing Enterprise Oversight with 12 U.S.C. § 250, when the correct statute is

- 14 -

Section 1313 of P.L. 102-550). The plaintiff may itself review the referenced statutes and may draw whatever conclusions that the plaintiff believes are appropriate, regarding the meaning of these statutes. Moreover, the plaintiff may of course conduct its own legal research of the United States Code and other statutes, should it want to do so. In any event, OMB is releasing summary descriptions of those statutes (which Document 1 construes as authorizing a legislative or budgetary "bypass") that are contained in attachments to Document 1, and OMB is also releasing corresponding summary descriptions from prior versions of that memorandum (namely, Documents 3-14). OMB is also releasing the listing of such statutes that is contained in Document 2.

## Category II Documents – relating to Interagency Communications

### (Documents 15-22 of the amended Vaughn index)

30. The remaining eight (8) documents that OMB is withholding (Documents 15-22 in the amended Vaughn index) are being withheld under FOIA Exemption 5. Seven of the eight documents are short (seven sentence) letters that the OMB Deputy Director sent to the heads of seven other agencies in July 2001 regarding the interagency legislative clearance process; the letters include suggestions and a request about practices relating to the interagency process. The eighth document is a March 2002 memorandum from an agency head to OMB containing the agency's perspectives regarding OMB's review of that agency's draft testimony, which was sent in response to a then-recent request from OMB (OMB's copy of this document also contains a handwritten note by me in which I indicated the perspective and guidance of OMB's then-General Counsel regarding the views expressed by the agency in its memorandum).

31. As is the case with respect to the other 14 documents, these eight documents relate to an interagency process that is, inherently, predecisional and deliberative.

32. As each of these eight letters was a communication between OMB and another agency, and as each addressed the interagency predecisional deliberative process that relates to the submission by Federal agencies of materials to Congress, these documents do not define – or otherwise determine – the rights or obligations of any member of the public. Instead, these documents discussed the operation of the predecisional, deliberative process itself and expressed views (including by making a request or providing guidance) regarding how that process should work.

33. Moreover, as these eight documents are interagency communications between OMB and the head of another agency concerning the Executive Branch's internal predecisional deliberative process, OMB has not (to my knowledge) publicly released any of these eight documents or publicly invoked them as a justification or explanation for OMB's actions or views.

**Release of the Withheld Documents would Impair the Deliberative Process**

34. As noted above (in paragraph 29), OMB has decided to release portions of 14 of the 22 documents based on OMB's further review of the documents during the preparation of this declaration and the Vaughn index. These portions are a listing or summary description, in Documents 1-14, of those statutes that (in the view of those memoranda) authorize an agency to submit legislative or budgetary materials to Congress without prior OMB review. As previously noted (again, in paragraph 29), OMB had previously provided the plaintiff with a current listing of such statutes along with OMB's FOIA response of January 10, 2007 (Attachment C).

- 16 -

35.  Based on my nearly 20 years of experience working in OMB's LRD (first as an LRD branch chief and then as the Assistant Director for Legislative Reference), I believe that the release of the remaining withheld materials in the 22 documents would harm the deliberative process – specifically, the deliberative process that is the OMB legislative clearance function.  As I have previously noted, the legislative clearance function is – by its very nature – inherently predecisional and deliberative.  In accordance with Executive Order 8248 and OMB Circular A-19, Executive Branch agencies submit to OMB, for interagency review, drafts of their submissions to Congress (i.e., drafts of their testimony, reports, and legislative proposals).  OMB circulates these drafts to other Executive Branch agencies and offices for their review and comment, and the comments that are then provided by the reviewers can lead to a series of back-and-forth discussions, on several issues, regarding the draft.  The goal of this long-standing interagency review process is to ensure that the testimony, reports, and legislative proposals that Executive Branch agencies submit to Congress are consistent with the President's policies and take into account the programs, perspectives, and concerns of other agencies.

36.  Release of the withheld materials in Documents 1-14 (the internal-OMB briefing material) would harm the legislative clearance function because it would inhibit OMB staff in their drafting of these internal-OMB memoranda that are designed to inform OMB's most senior officials and staff about LRD's activities and practices, as well as issues and potential issues relating to OMB's legislative clearance function.  It is important to the successful operation of the legislative clearance function that OMB's senior officials are provided briefing materials that inform them about how LRD carries

- 17 -

out this function and about what issues might arise in the legislative and budgetary processes (just as it is important, as a general matter, that OMB officials are provided briefing materials about how other OMB functions are carried out). Similarly, it is important to the successful operation of the legislative clearance function that OMB staff receive briefing materials to assist them in performing this function (just as it is important, as a general matter, that OMB staff receive briefing materials to assist them in performing their other OMB responsibilities).

37. Having myself been the sender – and primary author – of these documents (in the years that I have been the Assistant Director for Legislative Reference), I can say with certainty that I would have drafted these documents in a significantly different manner if I had thought that they would have a public audience (which could incorrectly construe such a document as a pronouncement of the "official" position or views of "OMB"). Similarly, I would draft the future versions of this internal briefing material in a very different manner if I had understood that they would become "public" documents.

38. In part, the harm to the deliberative process would result from the delays – in providing timely updated briefing material to OMB officials and staff – that would result from the need for OMB to draft, review, and clear internal memoranda that would be appropriate not only for internal-OMB use but also for public distribution. While it is hard to predict with any certainty how much longer it would take to prepare updated memoranda that would be appropriate for public distribution, I estimate (based on my experience) that it could take anywhere from several more weeks to several more months.

39. In addition to delaying the issuance of updated briefing material, the additional effort that would be involved (in the drafting, review, and clearance of the

- 18 -

memoranda) would result in diverting OMB resources away from carrying out the legislative clearance function (and other OMB functions), and this diversion of resources would have a negative impact on OMB's performance of these OMB functions.

40. In addition, a greater harm to the deliberative process would result from the diminished value that these memoranda would have – as meaningful briefing materials for use by OMB's most senior officials and staff – if the memoranda had to be drafted with a public audience in mind. The internal memoranda relate directly to how OMB carries out an internal Executive Branch review process (the legislative clearance function) that is predecisional and deliberative. In order for the legislative clearance process to operate successfully, OMB preserves the confidentiality of this process. This includes preserving the confidentiality of the *deliberations* themselves (i.e., the drafts of the testimony, reports, and legislative proposals that are submitted to OMB and circulated for interagency review, as well as the comments on those drafts, and the successive revised drafts and comments) and also preserving the confidentiality of the deliberative *process* (e.g., which offices have, or have not, commented on a draft, or even which offices were asked by OMB to comment on the draft). Thus, because the process itself (as well as the deliberations) is confidential in nature, the internal-OMB briefing material addresses issues that are confidential. In fact, the confidential nature of the issues that are addressed in the internal-OMB memoranda explains why OMB does not circulate these memoranda to the other Executive Branch agencies.

41. Finally, release of Documents 15-22 (the OMB-agency correspondence) would harm the legislative clearance function because, in my view (based on my

experience), it would inhibit the discussions between OMB and agencies regarding ideas for how an interagency review (or other dialogue) could occur with respect to an agency's communications with Congress.  Such discussions are most productive, and are most likely to result in improvements to the Executive Branch's submission of budgetary and legislative materials to Congress, if the discussions can be conducted in a confidential manner that enables the participants to offer their viewpoints and perspectives – and put forward, and respond to, suggestions and requests – in a frank and candid way.  My view is that these discussions would likely become more limited, and thus be less productive, if the participants believed that the discussions would be conducted in a "public" forum.

### The Withheld Materials Do Not Contain
### Any Reasonably Segregable Factual Information

42.  As noted above, OMB is releasing portions of Documents 1-14 that provide a listing or summary description of those statutes that, in the memoranda's view, authorize an agency to submit legislative or budgetary materials to Congress without prior OMB review.  To the extent that any information in the remaining withheld sections of those 14 documents, and any information in the other 8 documents (Documents 15-22), is "factual" in nature, such "factual" portions are not reasonably segregable from the overall deliberative nature of these documents.  Moreover, the recitation of specific "facts" in these documents (e.g., a discussion and summary of statutory provisions that, in the view of the memoranda, do not authorize the direct submission to Congress of legislative or budgetary materials) itself reflects the subjective judgment of the document's author that the particular "facts" are sufficiently significant to warrant mention.  In other words, the

- 20 -

very confirmation of their selection for the reader's attention would reflect the judgment of the author as to their significance and relative importance, and would represent the author's implicit recommendation that the reader pay attention to them.

* * * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Washington, District of Columbia, this ___7th___ day of September, 2007.

<br>

James Jukes
Assistant Director for Legislative Reference
Office of Management and Budget

- 21 -

OMB AMENDED <u>VAUGHN</u> INDEX

1.   This document consists of a one-page memorandum dated February 20, 2001
     from Jim Jukes, Assistant Director for Legislative Reference (Legislative
     Reference Division) to Policy Officers and Deputy Associate Directors (DADs)
     within the Office of Management and Budget (OMB) (a component agency
     within the Executive Office of the President), in which Mr. Jukes provided
     internal information about Federal agencies with legislative and budget
     "bypass" authorities (allowing those certain agencies to bypass Presidential
     review of those agencies' budgets and/or legislative recommendations.)
     Attached to the one-page memorandum is a twenty-two (22) page document
     providing a background discussion of legal and statutory issues related to
     bypass authorities, a list of the bypass agencies and a summary description of
     the agencies' budgetary and legislative "bypass" authorities and a discussion of
     bypass authority and Inspector Generals and the Inspector General Act. The
     memorandum states on the first page that the information contained in it and the
     attach document is for OMB internal use only. Included in this document is a
     description of the views and perspectives of OMB officials' interpretations of
     the views of certain agencies regarding legislative clearance requirements.

     Certain information contained on pages 7 through 16 of this document contain
     summary factual descriptions of statutes which can be reasonably segregated
     from the document's predecisional and deliberative materials. Consequently,
     OMB is releasing most of these 10 pages (pages 7 – 16) of the document.

     The withheld portions of this document contains interagency or intra-agency
     pre-decisional, deliberative communications, the disclosure of which would
     inhibit the frank and candid exchange of views that is necessary for effective
     government decision-making, and has been withheld under FOIA exemption 5,
     5 U.S.C. 552(b)(5). In addition this document contains information related to
     OMB's internal rules and practices and has been withheld under FOIA
     exemption 2, 5 U.S.C. 552(b)(2).

2.   This undated document consists of two-pages from a larger internal OMB
     document entitled "OMB Roles and Responsibilities" which is located on
     OMB's internal website. The two-page document is entitled "Agencies Exempt
     from the Legislative Clearance Process" and are the only pages in the document
     responsive to this FOIA request.

     The first page of this two-page document contain factual information which can
     be reasonably segregated from the document's predecisional and deliberative
     material. Consequently, OMB is releasing the first page of this document. OMB
     is withholding the top portion of the second page of this document because it
     includes OMB officials' characterizations and perspectives concerning certain

ATTACHMENT A

agencies views regarding legislative clearance requirements applicable to their respective agencies.

The bottom portion of the second page of this two-page document contains material that is not responsive to the FOIA request and therefore is outside the scope of this FOIA request.

This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

3.    This document consists of a one-page memorandum dated March 10, 1999 from Jim Jukes, Assistant Director for Legislative Reference (Legislative Reference Division) to the OMB Director, Deputy Directors and senior OMB Policy Officers and Deputy Associate Directors (DADs), and a separate two-page memorandum also dated March 10, 1999 from Jim Jukes, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Jukes provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those certain agencies' budgets and/or legislative recommendations.) Attached to these two memoranda is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attach document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 through 15 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 9 pages (page 6 and pages 8 – 15) of the document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to

2

OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

4.   This document consists of a one-page memorandum dated January 20, 1998 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Policy Officers and Deputy Associate Directors (DADs), and a separate two-page memorandum dated January 16, 1998 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attach document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 through 15 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 9 pages (page 6 and pages 8 – 15) of the document.

The withheld portions of this document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

5.   This document consists of a two-page memorandum dated December 18, 1996 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a twenty (20) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary

description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 through 15 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 9 pages (page 6 and pages 8 – 15) of the document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

6.    This document consists of a two-page memorandum dated January 4, 1995 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 through 14 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 8 pages (page 6 and pages 8 – 14) of the document

4

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

7.  This document consists of a one-page memorandum dated January 25, 1993 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 through 15 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 9 pages (page 6 and pages 8 – 15) of the document

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

8.  This document consists of a one-page memorandum dated January 25, 1993 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a nineteen (19)

page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 1 of Attachment "A" ; pages 1 - 3 of Attachment "B"; pages 1 - 2 of Attachment "C" and pages 1 -2 of Attachment "D" of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 7 pages (page 1 of attachment "A" and pages 1 - 3 of Attachment "B"; pages 1 - 2 of Attachment "C" and pages 1 -2 of Attachment "D" ) of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

9.  This document consists of a one-page memorandum dated January 14, 1991 from Bernard H. Martin, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Martin provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a seventeen (17) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on unnumbered page entitled: "Bypass Agencies" ; pages 1 - 3 of Attachment "B"; pages 1 - 2 of Attachment "C" and pages 1 -2 of Attachment "D" of this document contain summary factual descriptions of

statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 8 pages (page 1 of attachment "A" and pages 1 - 3 of Attachment "B"; pages 1 - 2 of Attachment "C" and pages 1 - 2 of Attachment "D") of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

10. This document consists of a one-page memorandum dated February 27, 1989 from James C. Murr, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB senior Policy Officials in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eighteen (18) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on page 6 and pages 8 – 14 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 8 pages (page 6 and pages 8 – 14) of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

11. This document consists of a one-page memorandum dated January 27, 1989 from James C. Murr, Assistant Director for Legislative Reference (Legislative

Reference Division) to OMB Legislative Reference staff in which Mr. Murr provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eighteen (18) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities and a discussion of bypass authority and Inspector Generals and the Inspector General Act. The memorandum states on the first page that the information contained in it and the attached document is for OMB internal use only. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on an unnumbered page entitled: "Bypass Agencies" and pages 8 - 14 of this document contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 8 pages (an unnumbered page entitled: "Bypass Agencies" and pages 8 - 14) of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

12. This document consists of a one-page memorandum dated December 21, 1983 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is an eleven (11) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained on an unnumbered page entitled: "Summary"; 3 pages of a portion of this document entitled: "Budgetary and Legislative

8

'Bypass' Provisions" and 3 pages of a portion of this document entitled "Budgetary 'Bypass' Provisions Only" contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials.  Consequently, OMB is releasing most of these 7 pages (an unnumbered page entitled: "Summary"; 3 pages of a portion of this document entitled: "Budgetary and Legislative 'Bypass' Provisions" and 3 pages of a portion of this document entitled "Budgetary 'Bypass' Provisions Only") of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).  In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

13.  This document consists of a one-page memorandum dated March 11, 1983 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.)  Attached to the one-page memorandum is an eight (8) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities.  Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained in 2 pages of this document entitled: "Budgetary and Legislative 'Bypass' Provisions"; 1 page of this document entitled "Budgetary 'Bypass' Provisions Only" and 2 pages of this document entitled: "Legislative 'Bypass" Provisions Only" contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials.  Consequently, OMB is releasing most of these 5 pages (2 pages of this document entitled: "Budgetary and Legislative 'Bypass' Provisions"; 1 page of this document entitled "Budgetary 'Bypass' Provisions Only" and 2 pages of this document entitled: "Legislative 'Bypass" Provisions Only") of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5

U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

14. This document consists of a one-page memorandum dated April 19, 1979 from James M. Frey, Assistant Director for Legislative Reference (Legislative Reference Division) to OMB Legislative Reference staff in which Mr. Frey provided internal information about Federal agencies with legislative and budget "bypass" authorities (allowing those certain agencies to bypass Presidential review of those agencies' budgets and/or legislative recommendations.) Attached to the one-page memorandum is a ten (10) page document providing a background discussion of legal and statutory issues related to bypass authorities, a list of the bypass agencies and a summary description of the agencies' budgetary and legislative "bypass" authorities. Included in this document is a description of the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements.

Certain information contained in 4 pages of this document beginning with the unnumbered page entitled: "Budgetary and Legislative 'Bypass' Provisions" contain summary factual descriptions of statutes which can be reasonably segregated from the document's predecisional and deliberative materials. Consequently, OMB is releasing most of these 5 pages (2 pages of this document entitled: "Budgetary and Legislative 'Bypass' Provisions"; 1 page of this document entitled "Budgetary 'Bypass' Provisions Only" and 2 pages of this document entitled: "Legislative 'Bypass" Provisions Only") of this document.

The withheld portions of this document contain interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5). In addition this document contains information related to OMB's internal rules and practices and has been withheld under FOIA exemption 2, 5 U.S.C. 552(b)(2).

15. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Laura Unger, Acting Chairman of the Securities and Exchange Commission in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

16. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Donna Tanoue, Chairman of the FDIC in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5

17. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to John D. Hawke, Jr., Comptroller of the Currency in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

18. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Ellen S. Seidman, Director of the Office of Thrift Supervision in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

19. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to J. Timothy O'Neill, Chairman of the Federal Housing Finance Board in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

20. This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Armando Falcon, Jr., Director of the Office of Federal Housing Enterprise Oversight in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided

his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

21.    This document consists of a one-page letter dated July 18, 2001 from Sean O'Keefe, OMB Deputy Director to Dennis Dollar, Acting Chairman of the National Credit Union Administration in which Mr. O'Keefe discussed that agency's legislative authority to bypass OMB's mandatory review and provided his comments and perspectives on legislative coordination between that agency and OMB. This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

22.    This document consists of a three-page memo dated March 15, 2002 from Marca Bristo, Chairperson of the National Council on Disability (NCD) to OMB Director Mitchell E. Daniels in which Ms. Bristo discussed her perspectives regarding OMB's review of that agency's draft testimony. This document also contains a handwritten note on the first page indicating OMB General Counsel's perspectives and legal impressions regarding the views expressed by NCD in its memorandum. This document contains attorney-client communications and interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA exemption 5, 5 U.S.C. 552(b)(5).

12

# PUBLIC CITIZEN LITIGATION GROUP

1600 TWENTIETH STREET, NW
WASHINGTON, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

ADINA H. ROSENBAUM
Direct Dial: (202) 588-7720
E-mail: arosenbaum@citizen.org

December 8, 2006

VIA FAX AND FIRST CLASS MAIL

*115385*

Donald Hawkins
FOIA Officer
Office of Management and Budget
725 17th St., NW
Room 9026
Washington, DC 20503
FAX: (202) 395-3504

DEC - 8 2006

*07-039*

### RE:    Freedom of Information Act Request

Dear Mr. Hawkins:

On behalf of Public Citizen, and pursuant to the Freedom of Information Act, 5 U.S.C.
§ 552, I request the following records:

1) All records listing agencies that may directly submit legislative proposals, reports, or
testimony to Congress without receiving OMB clearance;
2) All records listing agencies that may directly submit budget-related materials to
Congress without receiving OMB clearance; and
3) All records explaining that agencies or an agency may directly submit legislative or
budget-related materials to Congress without receiving OMB clearance or providing
statutory authority for agencies or an agency to directly submit legislative or budget-
related materials to Congress without receiving OMB clearance.

If it is your position that records exist that are responsive to this request, but that those
records (or portions of those records) are exempt from disclosure, please identify the records that
are being withheld and state the basis for the denial for each record being withheld. In addition,
please provide the nonexempt portions of the records.

Public Citizen requests that all fees in connection with this FOIA request be waived in
accordance with 5 U.S.C. § 552(a)(4)(A)(iii), because it does not seek the records for a
commercial purpose and disclosure "is in the public interest because it is likely to contribute
significantly to public understanding of the operations and activities of the government." Public

ATTACHMENT B

DEC-29-2005  10:53       PUBLIC CITIZEN                    202 588 7795   P.03/03

Citizen is a nonprofit research, litigation, and advocacy organization that represents consumer interests before Congress, the executive branch, and the courts, and that fights for openness and democratic accountability in government. Public Citizen regularly publishes reports based upon information acquired through FOIA. Public Citizen disseminates its reports via publication, through our website, and through various newsletters that are distributed to consumers, lawyers, academics, and other interested parties free of charge.

Accordingly, we request that you waive all fees for locating and duplicating the requested records. If, however, a waiver is not granted, then please advise us of the amount of any proposed search, review, and reproduction charges before those activities are carried out.

We will expect a response within 20 working days as provided by law. If you have any questions regarding this request, please contact me at (202) 588-7720.

Thank you very much for your attention to this matter.

Sincerely,

Adina H. Rosenbaum

2

TOTAL P.03



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

JAN 1 0 2007

Ms. Adina H. Rosenbaum
Public Citizen Litigation Group
1600 Twentieth Street, NW
Washington, DC 20009

Dear Ms. Rosenbaum:

This responds to your Freedom of Information Act (FOIA) request to the Office of
Management and Budget (OMB) dated December 8, 2006 which was received in this office on
December 8, 2006. Your request asked for:

1.   All records listing agencies that may directly submit legislative proposals, reports,
     or testimony to Congress without receiving OMB clearance;

2.   All records listing agencies that may directly submit budget-related materials to
     Congress without receiving OMB Clearance; and

3.   All records explaining that agencies or an agency may directly submit legislative
     or budget-related materials to Congress without receiving OMB clearance or
     providing statutory authority for agencies or an agency to directly submit
     legislative or budget-related materials to Congress without receiving OMB
     clearance.

Upon a thorough search of our files, we have found two documents that are potentially
responsive to your request. It is my decision, however, that these documents are exempt from
mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2) (5). These
documents relate to OMB's internal personnel rules and practices and, to the extent that they
contain information that extends beyond such rules and practices, the documents contain
predecisional and deliberative information, the disclosure of which would harm the decision-
making process. I have concluded that the disclosure of these documents would not be in the
public interest and therefore decline to release them.

However, in response to your request, we provide the enclosure, which is a listing of
those statutes (and the concerned agency) that address the direct submission of legislative
materials and a listing of those statutes (and the concerned agency) that address the direct
submission of budget materials.

ATTACHMENT C

This is my personal decision which may be appealed pursuant to OMB regulations, at 5 C.F.R. 1303.

Sincerely,

*Lauren G. Wright*

Lauren E. Wright
Deputy Assistant Director
for Administration

Enclosure

2

## Statutes that Address the Direct Submission of Legislative Materials (and the agency concerned):*

1. Advisory Council on Historic Preservation (16 U.S.C. § 470r, 470t(b))
2. Chemical Safety and Hazard Investigation Board (42 U.S.C. § 7412(r)(6)(R))
3. Commodity Futures Trading Commission (7 U.S.C. § 2(a)(10))
4. Consumer Product Safety Commission (15 U.S.C. § 2076(k)(1-2))
5. Farm Credit Administration (12 U.S.C. § 2252(a)(3))
6. Federal Aviation Administration (Transportation) (49 U.S.C. § 48109)
7. Federal Election Commission (2 U.S.C. § 437d(d)(1-2))
8. Federal Energy Regulatory Commission (42 U.S.C. § 7171(j))
9. Federal Retirement Thrift Investment Board (5 U.S.C. § 8472(i)-(j))
10. Merit Systems Protection Board (5 U.S.C. § 1205)
11. National Transportation Safety Board (49 U.S.C. § 1113(c))
12. Office of National Taxpayer Advocate (Treasury) (26 U.S.C. § 7803(c))
13. Office of Special Counsel (5 U.S.C. § 1217)
14. Railroad Retirement Board (45 U.S.C. § 231f(f))
15. Small Business Administration (Chief Counsel for Advocacy) (15 U.S.C. § 634f)
16. Surface Transportation Board (Transportation) (49 U.S.C. § 703(g))
17. Federal Deposit Insurance Corporation (12 U.S.C. § 250)
18. Federal Reserve Board of Governors (12 U.S.C. § 250)
19. National Credit Union Administration (12 U.S.C. § 250)
20. Office of the Comptroller of the Currency (Treasury) (12 U.S.C. § 250)
21. Office of Federal Housing Enterprise Oversight (HUD) (12 U.S.C. § 250)
22. Office of Thrift Supervision (Treasury) (12 U.S.C. § 250)
23. Securities and Exchange Commission (12 U.S.C. § 250)

## Statutes that Address the Direct Submission of Budget Materials (and the agency concerned)

1. Court of Appeals for Veterans Claims (38 U.S.C. § 7282)
2. International Trade Commission (19 U.S.C. § 2232)
3. Legal Services Corporation (42 U.S.C. § 2996d(e))
4. State Justice Institute (42 U.S.C. § 10704(c))
5. United States Institute of Peace (22 U.S.C. § 4608(a))
6. United States Postal Service (39 U.S.C. § 2009)
7. Social Security Administration (42 U.S.C. § 904(b)(1)(A))
8. Internal Revenue Service Oversight Board (26 U.S.C. § 7802)
9. District of Columbia Courts (Pub. L. No. 105-33, § 11242)

* Some of these statutes also address the direct submission of budget materials.

PUBLIC CITIZEN LITIGATION GROUP
1600 TWENTIETH STREET, NW
WASHINGTON, DC 20009
(202) 588-1000
(202) 588-7795 (fax)

*115700*

**JAN 2 6 2007**

*07-056*

ADINA H. ROSENBAUM
Direct Dial: (202) 588-7720
E-mail: arosenbaum@citizen.org

January 18, 2007

FOIA Officer
Office of Management and Budget
725 17th St., NW
Washington, DC 20503

**RE: Freedom of Information Act Appeal**

Dear FOIA Officer:

This letter is an appeal from the January 10, 2007 denial of a Freedom of Information Act (FOIA) request that I sent to the Office of Management and Budget (OMB), on behalf of Public Citizen, on December 8, 2006. That request sought access to:

1) All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;
2) All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB clearance; and
3) All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

On November January 10, 2007, in a letter signed by Lauren E. Wright, Deputy Assistant Director for Administration, OMB denied the request. The letter stated: "[W]e have found two documents that are potentially responsive to your request. It is my decision, however, that these documents are exempt from mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2) (5). These documents relate to OMB's internal personnel rules and practices and, to the extent that they contain information that extends beyond such rules and practices, the documents contain predecisional and deliberative information, the disclosure of which would harm the decision-making process."

Copies of my December 8, 2006 request and OMB's January 10, 2007 denial are enclosed with this appeal.

First, we appeal OMB's decision to withhold the two documents it found pursuant to FOIA Exemption 2, 5 U.S.C. 552(b)(2), which exempts records that are "related solely to the

ATTACHMENT D

internal personnel rules and practices of an agency." For starters, the records requested do not "relate solely" to "internal personnel rules and practices." Rather, they reflect OMB's interactions with other agencies in the executive branch and delineate which agencies OMB considers bound by the requirements of OMB Circulars A-11 and A-19. And even when records meet the threshold test for internality, they can only be withheld pursuant to Exemption 2 if their "disclosure may risk circumvention of agency regulation" or "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C.Cir. 1990) (citations omitted). Disclosure of the requested records would not risk circumvention of any law or regulation, nor do the records relate solely to trivial administrative matters of no public interest. The public has an interest in understanding the relationships between the administrative agencies and Congress and learning which agencies can submit legislative and/or budgetary materials directly to Congress without first receiving clearance from OMB.

Second, we appeal OMB's determination that the records can be withheld under the deliberative process privilege included in Exemption 5, 5 U.S.C. 552(b)(5). For records to be withheld under that privilege, they must be both "predecisional" and "deliberative." *See NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The requested records are neither. Instead, they reflect OMB's policy about which agencies can submit legislative and/or budgetary materials to Congress without receiving OMB clearance. The government must release records that contain the laws and policy under which it is operating; it is not allowed to "develop a body of 'secret law.'" *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C.Cir. 1980). Moreover, to be exempt, the records must be "generated before the adoption of an agency policy." *Id.* at 866. The requested records do not contain deliberations relating to a future decision, but rather list which agencies OMB has already decided can bypass the legislative and/or budgetary clearance process.

Finally, we question and appeal the adequacy of OMB's search for records. We requested *any* record that explains that *any* agency can submit legislative or budget-related materials to Congress without receiving OMB clearance. It seems difficult to believe that an adequate search for records responsive to this request would turn up only two records relating to agencies being permitted to bypass the legislative or budgetary clearance processes.

Thank you for your time and attention to this matter. I will expect a determination with respect to this appeal within twenty working days, as required by law. If any records are denied on appeal, please provide me with a description of each withheld record, its date, and the agency's justification for the withholding. Should you have any questions regarding this appeal, please feel free to contact me at (202) 588-7720.

Sincerely,

Adina H. Rosenbaum

2



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

February 26, 2007

Ms. Adina H. Rosenbaum
Public Citizen Litigation Group
1600 Twentieth Street, NW
Washington, DC 20009

Dear Ms. Rosenbaum:

This responds to your appeal letter dated January 18, 2007, which was received in the Office of Management and Budget's (OMB) Freedom of Information Act (FOIA) Office on January 26, 2007, concerning OMB's January 10, 2007, response letter to your FOIA request dated December 8, 2006 which was received in OMB's FOIA Office on December 8, 2006. Your request asked for:

1.     All records listing agencies that may directly submit legislative proposals, reports, or testimony to Congress without receiving OMB clearance;

2.     All records listing agencies that may directly submit budget-related materials to Congress without receiving OMB Clearance; and

3.     All records explaining that agencies or an agency may directly submit legislative or budget-related materials to Congress without receiving OMB clearance or providing statutory authority for agencies or an agency to directly submit legislative or budget-related materials to Congress without receiving OMB clearance.

In our January 10, 2007 response letter, we stated that upon a thorough search of our files, we have found two (2) documents potentially responsive to your request. We withheld both of these documents as being exempt from mandatory disclosure pursuant to FOIA Exemptions 2 and 5, 5 U.S.C. 552(b)(2) and (b)(5). Our January 10, 2007 response letter did provide you with a document listing those statutes (and the concerned agencies) that address the direct submission of legislative materials and a listing of those statutes (and the concerned agencies) that address the direct submission of budget materials.

In your appeal letter, you asked OMB to review and reconsider our decision to withhold the two documents withheld under FOIA exemptions (b)(2) and (b)(5). Your appeal letter also questioned the adequacy of OMB's search. In response to your appeal, we have conducted a careful review of the entire file. OMB staff from its Legislative Reference Division conducted the search of relevant files, where OMB reasonably believed responsive information would reside. Moreover, OMB's previous response provided you with a document listing those statutes (and the concerned agencies) that address the direct submission of legislative materials and a

ATTACHMENT E

listing of those statutes (and the concerned agencies) that address the direct submission of budget materials. Therefore, we have determined that OMB's search was sufficient.

With regard to your request for OMB to review our decision to withhold the two documents withheld under FOIA exemptions (b)(2) and (b)(5), we have re-reviewed those documents. We have determined that the two documents referenced in our January 10, 2007 letter have been properly withheld pursuant to FOIA Exemptions (b)(2) and (b)(5). Exemption (b)(2) exempts from release those internal government documents which relate solely to an agency's internal personnel rules and practices. Exemption 5 exempts from release those documents which constitute intra-agency or inter-agency, pre-decisional, and deliberative communications, the disclosure of which would inhibit the frank and candid expression of views necessary for the government decision making process. The documents we are continuing to withhold contain internal governmental communications including, for example, deliberative advice and guidelines to OMB staff that is labeled "for OMB internal use only" (emphasis in original). We believe that the release of these materials would chill the deliberative process, which would be contrary to the public interest. In addition, these materials relate to internal guidance solely for OMB staff. Moreover, we have determined that the documents do not contain any information that is reasonably segregable from the withheld information, therefore we are continuing to withhold these documents (in their entirety) as exempt from mandatory disclosure under FOIA Exemptions (b)(5) and (b)(2). For these reasons, and the reasons cited in our earlier correspondence, I reaffirm OMB's prior decision not to release this material and therefore decline to release them.

Judicial review of my action on your appeal is available to you in accordance with the provisions of 5 U.S.C. § 552(a)(4).

Sincerely,

Kimberley Luczynski
Acting Deputy General Counsel

2



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

August 3, 2007

<u>*Via Federal Express Standard Overnight:*</u>
Adina Rosenbaum, Esq.
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009

### RE: <u>Public Citizen v. Office of Management and Budget</u>, 07-409 (RCL)

Dear Ms. Rosenbaum:

In further response to your FOIA request, dated December 8, 2006, the Office of Management and Budget ("OMB") has provided us with the enclosed documents to release to you. These documents are portions of Documents 1 through 14. Thank you.

Sincerely,

ALEXANDER D. SHOAIBI
Assistant U.S. Attorney

Enclosures

EXHIBIT

tabbles
2