UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-409 (RCL) |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

In its reply and opposition, OMB seeks to recast the records it is withholding as "briefing materials" and repeatedly invokes the words "views," "perspectives," "interpretations," "discussions," and "opinions," as though they are talismans that render the records exempt from disclosure. But OMB's use of these words cannot change the nature of the documents it is withholding: They include documents prepared, issued, and circulated around OMB by the Assistant Director for Legislative Reference, containing a list of agencies that are "bypass agencies" that have authority to bypass the legislative and/or budgetary clearance process, and an explanation of why agencies are or are not on the list. Because the records contain OMB's de facto policy on which agencies must submit legislative and/or budgetary materials for coordination and clearance, they must be released.

**The Withheld Records Are Not Exempt from Disclosure**.

**A.      The Withheld Records Do Not Contain Only Agency Views and Perspectives**.

To determine whether the agency properly claimed exemptions, it is necessary to understand what type of information the agency is withholding. A close look at the portions of

records 1-14 that OMB released on August 3, 2007, and at the Amended Vaughn Index (Am.

Vaughn Index) and the Amended Declaration of James Jukes (Am. Jukes Decl.), provide insight

into the withheld portions of records 1-14 and demonstrate that those portions of the records do

not contain only internal-OMB views and perspectives designed to inform staff about issues that

might arise during the legislative and budgetary clearance processes.[1]

### 1.     Lists of Agencies With Non-Statutory Bypass Authority

The released portions of records 1 and 3-12 start with three lists, all under the general

heading "Bypass Agencies": a list of "Agencies with Statutorily-Based Budgetary and Legislative

'Bypass' Provisions," a list of "Agencies with Statutorily-Based Budgetary 'Bypass' Provisions

Only," and a list of "Agencies with Statutorily-Based Legislative 'Bypass' Provisions Only."  *See*

Supplement Declaration of Adina H. Rosenbaum (Supp. Rosenbaum Decl.) ¶ 3 and Exhibits E,

G-H.   There is then a redaction.  Record 1, in which the text was redacted by blacking it out,

provides the best indication of what was redacted from this point in the record.  *See* Supp.

Rosenbaum Decl. Exhibit E at 8 (released portion of record 1).  From the shape of the blacked-

out text, it can be deduced that the text contains an additional list heading, followed by

approximately 15 lines of text that presumably contain the items in the list.  *Id*.  Because this list,

like the three preceding it, comes under the general heading "bypass agencies," it is presumably a

---

[1]The Vaughn Index's unclear descriptions of the records and conclusory assertions are inadequate to support the agency's exemption claims.  If this Court denies Public Citizen's motion for summary judgment, and its request, *infra* at 20, that the Court conduct an in camera review of the withheld records, it should remand with instructions that the agency create a Vaughn Index that includes "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

list of agencies that OMB allows to bypass the legislative and/or budgetary clearance processes. And because the previous lists specify that they contain agencies with statutory bypass authority, it seems likely that this list contains agencies with *non*-statutory bypass authority.  In his Amended Declaration, James Jukes indicates that there are, indeed, agencies that are allowed to bypass OMB clearance even though no statute permits them to do so.  *See* Am. Jukes Decl. ¶ 26 (mentioning bypass based on "prior agency and OMB practice").

Similarly, record 2, entitled "Agencies Exempt from the Legislative Clearance Process," contains a list of "Agencies with Statutorily-Based Legislative Bypass Provisions," and a list of "Agencies with Conditional Statutorily-Based Legislative 'Bypass' Provisions," followed by a redaction.  *See* Supp. Rosenbaum Decl. Exhibit F (released portion of record 2); Am. Vaughn Index ¶ 2.  Given that the record appears to consist solely of lists of bypass agencies, it seems likely that the redacted portion includes a list of agencies that OMB considers to have non-statutorily-based legislative bypass authority.

In short, OMB seems to be redacting lists of agencies that OMB allows to bypass the legislative and/or budgetary clearance processes even though they do not have statutory authority to do so.  These lists do not "describe issues and perspectives that are to be considered during discussions that occur" during the legislative clearance process, Def. Mem. Opp. at 22, nor do they "summarize issues and potential issues regarding the legislative clearance process for OMB officials and staff," *id*. at 27; they are descriptive lists of which agencies are allowed to bypass the clearance processes for non-statutory reasons, just as the portions of records 1-12 released by the agency on August 3, 2007, include a descriptive list of which agencies are allowed to bypass the clearance processes for statutory reasons.

2.      **Factual Descriptions of Agencies' Interpretations of their Statutory Bypass Provisions**

The released portions of records 1 and 3-14 contain a summary description, for each agency with statutory bypass authority, of the statutory authority under which the agency is allowed to bypass the clearance process. OMB generally redacted portions of the descriptions for four agencies: the Federal Aviation Administration (FAA), the Legal Services Corporation (LSC), the United States Institute of Peace (USIP), and the Small Business Administration (SBA). *See* Supp. Rosenbaum Decl. ¶ 4 and Exhibits E, G-H.

However, in record 4, OMB apparently forgot to redact the description of USIP. Where, in the other records, the description of USIP is redacted, record 4 contains the following statement:

> There is no explicit provision contained in P.L. 98-525 stating the USIP is outside the regular budget process; however, USIP has so interpreted Sec. 1709(a) of P.L. 98-525, 22 USCA Sec. 4608(a), which states that "[n]othing in this title may be construed as limiting the authority of the Office of Management and Budget to review and submit comments on the Institute's budget request at the time it is transmitted to Congress."

*See* Supp. Rosenbaum Decl. Exhibit H at 12 (released portion of record 4). The size and shape of this text is approximately the same as the redactions in records 1, 3, and 5-11 (records 12-14 do not contain paragraphs on USIP at all). *See* Supp. Rosenbaum Decl. ¶ 4 and Exhibits E, G-H.

Thus, it appears that what OMB is redacting from the descriptions of the statutory bypass provisions is descriptions of how agencies have decided to interpret those provisions. These descriptions are not "the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance requirements," Am. Vaughn Index ¶¶ 1, 3-14, but rather just factual information about other agencies' practices.

4

### 3.     Cover Memoranda and Large Portions of the Attached Memoranda

The Vaughn Index says that records 1 and 3-14 each contain a one- or two-page

memorandum (or both), with an attached, longer document.  Although OMB has released

portions of the attached documents, it has not released any of the one- or two-page cover

memoranda.  *See* Supp. Rosenbaum Decl. ¶ 5.  OMB has not specified what is in these cover

memoranda except that they contain "internal information about Federal agencies with legislative

and budget 'bypass' authorities."  Am. Vaughn Index ¶¶ 1, 3-14.  This description does not

demonstrate that these records contain any views, perspectives, or other deliberative material.

OMB has also redacted approximately half of each of the attached memoranda.  Given

that the released portions of the records provide a summary factual description of why each

agency with *statutory* bypass authority has that authority, *see* Supp. Rosenbaum Decl. ¶ 4 and

Exhibits E, G-H, it seems likely that the redacted portions would contain a summary factual

description of why each agency with *non-statutory* bypass authority is provided that authority,

such as a description of the "prior agency and OMB practice" on which the bypass authority is

based.  *See* Def. Mem. Opp. at 16; Am. Jukes Decl.¶ 26.  A description of past agency or OMB

practice is not internal-agency views and perspectives.

### B.     The Withheld Records Are Not Exempt Under Exemption 2.

OMB argues that records 1-14 are exempt under Exemption 2.  Not so.  As Public Citizen

explained in its opposition and cross-motion, the records are not predominantly internal and their

release would not risk circumvention of any law.  Accordingly, they are not exempt under

Exemption 2.

1.     To begin with, because they govern the relationship between OMB and other

agencies, the records are not predominantly internal.  *See Crooker v.  Bureau of Alcohol,*

*Tobacco & Firearms*, 670 F.2d 1051,1073 (D.C. Cir. 1981) (en banc).  In *Crooker*, the D.C.

Circuit distinguished between two types of records: instructions to agency personnel about how

to regulate the public, such as the prosecutorial guidelines in *Jordan v. United States Department*

*of Justice*, 591 F.2d 753 (D.C. Cir. 1978), and instructions to agency personnel that make "no

attempt to modify or regulate public behavior[,] only to observe it," such as the BATF manual at

issue in *Crooker*.  670 F.3d at 1075.   The latter records are predominantly internal, while the

former are not.  *Id.*; *see also Windels, Marx, Davies & Ives v. Dep't of Commerce*, 576 F.Supp.

405, 412 (D.D.C. 1983) (recognizing "distinction between instructions concerned with *detecting*

illegal activity disguised as legal activity, and guidelines which *define* a violation—and are

therefore disclosable as 'secret law' which affects the public") (emphasis in original).  Here, the

withheld records determine whether agencies must clear budgetary and legislative materials by

OMB before sending them to Congress.  Because they contain instructions to agency personnel

about what to require of people outside of OMB, they are not predominantly internal.  *See Cox v.*

*U.S. Dep't of Justice*, 601 F.2d 1, 5 (D.C. Cir. 1979) (records are not predominantly internal if

they "set standards to be followed by agency personnel in deciding whether to proceed against or

to take action affecting members of the public").

OMB contends that the withheld records "do not govern the actions of either OMB

personnel or other federal agencies," but rather are just "briefing materials that contain useful

points of reference for discussions regarding future policy revisions." Def. Mem. Opp. at 3.

However, the withheld records contain, at the least, a list of which agencies are "bypass

agencies" that are permitted to bypass the legislative and/or budgetary clearance processes.  As

explained above, contrary to OMB's depiction of the withheld records, this list is not "views and perspectives" of "interpretations of the views of certain agencies regarding legislative clearance requirements" or "characterizations and perspectives concerning certain agencies views" regarding such requirements. Def. Mem. Opp. at 4 (quoting Am. Vaughn Index). It is a list of agencies exempt from the legislative and/or budgetary clearance processes. It is disingenuous to claim that a Legislative Reference Division staff person, after being given this list of bypass agencies by the Assistant Director for Legislative Reference, would not consider this list to be OMB's policy on legislative and budgetary bypass and rely on this list in determining whether an agency is required to submit legislative or budgetary materials to OMB before submitting them to Congress. And the fact that OMB has stamped the records "for internal use only" and has not circulated the withheld records outside of OMB or published them as OMB guidance to the agencies does not mean they are not determining agencies' obligations; secret law is, by definition, secret, but it cannot be withheld under Exemption 2.

Not surprisingly, given the nature of the documents, instead of focusing on its contention that the withheld records do not regulate, the agency devotes most of its argument about internality to arguing that the records do not regulate the *public*. According to OMB, records are predominantly internal unless they regulate the public at large; it is not enough for the records to determine the obligations of other agencies. *See* Def. Mem. Opp. at 7 ("Documents 1-14 do not constitute secret law because they concern the legislative and budgetary clearance processes which do not involve members of the public, but instead concern only interactions between federal agencies."). Although cases on internality do discuss regulating the "public," *see, e.g.*, *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 531 (D.C. Cir. 1986), the

important distinction is not between those inside and outside government agencies, but between those inside and outside the specific government agency at issue, here OMB. Unlike Exemption 5, which exempts certain *inter*-agency communications, Exemption 2 only applies to *intra*-agency records. *See Cox*, 601 F.2d at 4 ("This exemption applies to matters of merely intra-agency significance . . . ."). In other words, the "word 'internal' in Exemption 2 plainly limits the exemption to those rules and practices that affect the internal workings of *an* agency," *Crooker*, 670 F.2d at 1056 (emphasis added); *see* 5 U.S.C. 552(b)(2) (exempting matters "related solely to the internal personnel rules and practices of *an* agency") (emphasis added), not the internal workings of agencies overall. Because the withheld records govern the relationship between OMB and those outside OMB, they are not predominantly internal.

OMB also claims that "[p]ractices regarding the internal relationships among agencies and those agencies' relationship with Congress (like the legislative clearance process) is not the kind of information that FOIA seeks to disclose because these practices have no effect on members of the public." *See* Def. Mem. Opp. at 8. However, whether an agency with substantive expertise in an area can submit information directly to Congress or whether that information must first be edited by OMB is of interest to the public—and has a direct effect on the public— because it affects what information is before Congress when it enacts generally applicable public laws. In addition, release of the records would help fulfill FOIA's purpose of allowing the public to conduct oversight of the government. *See U.S Dep't of Justice v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989) ("FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny . . . .") (emphasis removed). In any event, because the records are not predominantly internal, they cannot be

8

withheld under Exemption 2, whether or not OMB thinks they are the records "FOIA seeks to disclose."

2. OMB contends that records 1-14 are "sensitive" and that "exemption 2 *should* protect this information from disclosure." Def. Mem. Opp. at 10 (emphasis added). But Exemption 2 does not protect "sensitive" information from disclosure. Congress chose to protect information it considered sensitive by creating nine exemptions to FOIA, and the high-2 exemption applies only where release of the requested records would risk circumvention of federal statutes and regulations. *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). OMB has not shown that disclosing the withheld records would risk such circumvention.[2]

First, despite OMB's assertions to the contrary, a federal agency cannot withhold records based on an argument that other agencies within the executive branch are likely to break the law if the records are released. FOIA is based on a recognition that government transparency is necessary to check against corruption. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the

---

[2]Even if "sensitivity" of the records were the standard for determining whether the records were exempt under the high-2 exemption, OMB would not have met its burden here. OMB claims that the records are sensitive and must be kept confidential because they relate to "a core function of the agency," Def. Mem. Opp. at 10, that OMB considers "deliberative through and through." *Id*. at 11; *see also* Am. Jukes Decl. ¶ 35 (claiming that release of the records would be harmful because "legislative clearance function is—by its very nature—inherently predecisional and deliberative"). But many records related to core, deliberative functions are not themselves sensitive, confidential, or deliberative. The Administrative Procedure Act (APA), for example, governs many important, deliberative proceedings, but no one would claim that the APA itself should be kept secret. In short, simply declaring that records are sensitive or confidential, or declaring that they relate to a sensitive, confidential, or deliberative process, is insufficient to demonstrate that release of those records would in fact cause harm. *Cf. Nat'l Treasury Employees Union*, 802 F.2d at 530 ("[A]n agency cannot be regarded as having satisfied the second prong of the *Crooker* test simply by promulgating a regulation designating certain material as confidential.").

9

functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").  FOIA's goal of using openness to stem government corruption would be undermined if the federal government were allowed to withhold records based on the argument that the federal government itself is so prone to illegal behavior that if the left arm knew what the right arm was doing the left arm would circumvent the law.

Moreover, even if OMB could base its assertion that the records are exempt under the high-2 exemption on a claim that their release is likely to cause the federal government to circumvent the law, it would not have met its burden.  OMB's claim (at page 14) that release of the records would be harmful because it would inhibit OMB staff in creating similar records and thereby reduce compliance is a red herring; this argument is just another way of saying that OMB does not want the records released.  OMB cannot make any record it wants exempt from disclosure just by threatening that if the record is disclosed, it will not produce similar records in the future or will produce them less quickly or less well.  The second prong of the high-2 test does not ask how disclosure of records will affect *OMB*'s behavior, but whether it will affect *others*' behavior by helping them evade the law.

OMB has not shown that release of the requested records would facilitate agencies' circumvention of the law.  Although OMB asserts that "[i]f other agencies knew OMB's beliefs concerning their views or the views of sister agencies, they could use this information to impede and frustrate legislative clearance requirements," Def. Mem. Opp. at 13, it does not explain *how* agencies could use the withheld information to evade such requirements.  For example, OMB appears to be redacting the fact that USIP interprets Section 1709(a) of Pub. L. No. 98-525, 22 U.S.C. § 4608(a), as placing it outside the regular budget process.  But how would knowing how

10

USIP interprets Section 1709(a) help any agency circumvent the law?  USIP already knows how it interprets the law, so it would not help USIP, and Section 1709(a) pertains particularly to USIP, so USIP's interpretation of that statute would not be relevant to any other agency.  And even if the statute applied to other agencies, knowing how USIP interpreted the statute would not give those agencies any guidance on how to evade the law themselves.

Similarly, OMB does not explain how releasing the full list of "bypass agencies" would risk circumvention of the law.  As plaintiff noted in its opening brief (at 11), if an agency is on the list of agencies allowed to bypass the legislative and/or budgetary clearance processes, then knowing it is on the list would not help it evade clearance requirements, in part because OMB does not consider that agency bound by the clearance processes to begin with.  And if the agency is not on the list, knowing which agencies are on the list still would not help it evade clearance requirements.  Perhaps knowing that other agencies are allowed to bypass the clearance processes would make an agency jealous and make it *want* to be allowed to bypass the processes too, but even if agency decisions were governed by such elementary-school notions of jealousy and fairness, the high-2 test is not whether release of the records would make people *want* to break the law.  The test is whether release of the requested records would "benefit those attempting to violate the law," *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F.Supp.2d 146, 166 (D.D.C. 2004) (citing *Crooker*, 670 F.2d at 1054), and OMB has not shown that releasing the withheld records would do so.

Likewise, release of a "background discussion of legal and statutory issues related to bypass authorities," and of bypass authority and inspector generals, *see* Am. Vaughn Index ¶¶ 1, 3-14, and release of the description of statutes that OMB thinks do not provide bypass authority

to agencies, *see* Am. Jukes Decl. ¶ 20, would not facilitate agencies' evasions of the law.

Releasing the records might help agencies craft arguments about why they do not think they

should be subject to legislative or budgetary clearance, but it would still be up to OMB (or

Congress) to determine whether the agency was bound by clearance requirements.

Finally, although OMB claims that records 1-14 "are essential to OMB officials and staff

because they are confidential," Def. Mem. Opp. at 11, OMB has not demonstrated how releasing

the records would render the records "operationally useless." *Schiller*, 964 F.2d at 1208 (quoting

*Nat'l Treasury Employees Union*, 802 F.2d at 530).  For example, if the goal of creating the list

of bypass agencies is to "brief" OMB staff about which agencies are allowed to bypass the

clearance processes, having other people know which agencies are on the list in no way

undermines that goal; even after it has been released, the list can still serve the function of

informing OMB staff which agencies are bypass agencies.  And whether or not other agencies

know USIP's interpretation of Section 1709(a) of Pub. L. No. 98-525, or understand the various

background information OMB claims is in records 1 and 3-14, *see* Am. Vaughn Index ¶¶ 1, 3-14,

the records can still perform their role of informing OMB staff of that interpretation and of that

background information.

In short, release of the requested records would neither facilitiate circumvention of the

law nor render the records obsolete.  Accordingly, Exemption 2 does not apply.

**C.    The Withheld Records Are Not Exempt Under Exemption 5.**

**1.    Records 1-14 Are Not Exempt Under Exemption 5.**

OMB has now decided that records 1-14 records are "briefing materials"—a term

noticeably absent from OMB's opening brief—and contends that such materials are always

"properly protected under the deliberative process privilege." Def. Mem. Opp. at 17. But the test for whether a record is exempt due to the deliberative process privilege is not whether or not it is used to brief people, but whether or not it is predecisional and deliberative. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980). Because briefing materials are often predecisional and deliberative, they are often exempt under exemption 5. But where records are not predecisional and deliberative, such as records that inform staff about a decision that has already been made, the deliberative process privilege does not apply, whether or not those records can properly be called "briefing materials." Because records 1-14 are neither predecisional nor deliberative, they are not exempt under Exemption 5.

      a.      The records are not predecisional. OMB makes it sound as though each time an agency writes testimony, proposes legislation, or drafts a report to submit to Congress, the agency and OMB engage in a series of discussions about legislative clearance that results in OMB making a new decision about whether or not the agency needs to clear its materials by OMB. *See, e.g.*, Def. Mem. Opp. at 25 (claiming that records 1-14 are just part of a discussion about the "potential structuring of the legislative clearance process"); *id* at 21 (claiming, without citing particular paragraphs, that the Amended Jukes Declaration and Amended Vaughn Index "show that these documents preceded the formulation of final policy and were part of the deliberative process"). It is inconceivable that OMB has no policies on which agencies are allowed to bypass the legislative and/or budgetary clearance processes, but decides anew whether an agency can bypass clearance each time the agency drafts testimony, proposals, or reports. Indeed, OMB's reply and opposition repeatedly discusses how the records are used as a starting point for discussions about *changing* OMB's policy, Def. Mem. Opp. at 3, 9, 20, strongly

implying that OMB does, in fact, already have a policy to be revised.  A list of agencies labeled

"bypass agencies" or "agencies exempt from the legislative clearance process," and an

explanation for why agencies are on that list, issued regularly by the Assistant Director for

Legislative Reference, updated when the law changes, and circulated to both OMB officials and

legislative reference staff, would seem to be that policy.  *See* Supp. Rosenbaum Decl. Exhibits E-

H.[3]

OMB claims that the withheld records do not contain its official policy or mandate any

decisions.  *See* Am. Jukes Decl. ¶ 28; *see also, e.g.*, Def. Mem. Opp. at 15 (records are not

"statements of policy"); *id*. at 19 ("OMB has never formally or informally adopted Documents 1-

14 as agency policy."); *id*. at 23 (records "do not mandate certain decisions"); *id*. at 24 (records

are "not policy mandates").  As Public Citizen pointed out in its opposition and cross-motion (at

13), however, an agency cannot withhold records that it uses as its working law simply because it

has not officially adopted that law as policy, or because it labels the records non-binding.  *See,*

*e.g.*, *Coastal States*, 617 F.2d at 866; *Taxation with Representation Fund v. IRS*, 646 F.2d 666,

679 (D.C. Cir. 1981).  Thus, for example, in *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir.

---

[3]It is possible that OMB is arguing that records 1-14 are predecisional because they
precede decisions that are made about specific legislative and budgetary materials as they go
through the clearance process, such as what edits need to be made to the document or whether it
should also be reviewed by other outside offices.  However, because OMB has given no
indication that the withheld records contain any deliberative materials related to decisions about
specific testimony, reports, or proposals—just material related to the decision of which agencies
generally must go through the clearance process—that they predate decisions about specific
testimony, reports, or proposals does not make them predecisional for purposes of the
deliberative process privilege.  The requirements that a record be predecisional and deliberative
are related; to be predecisional, the records must contain deliberations about the decision under
consideration.  *See Coastal States*, 617 F.2d at 868 ("[T]he agency has the burden of establishing
what deliberative process is involved, and the role played by the documents in issue in the course
of *that* process.") (emphasis added).

14

1997), the agency was not allowed to withhold field service advice memoranda that contained the national office's answers to questions posed by personnel in the field because those answers constituted "agency law, even if those conclusions [were] not formally binding."[4]   The question is not whether the agency has officially declared the records to be policy, but whether the agency "actually applies" the records as though they were policy.  *See Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971).

Here, records 1-14 contain a list of agencies that are allowed to bypass the legislative and/or budgetary clearance processes.  Record 2 includes this list in a document entitled "OMB Roles and Responsibilities."  *See* Supp. Rosenbaum Decl. Exhibit F.  Records 1 and 3-14 include the list in memoranda written by the Assistant Director for Legislative Reference and given by him to his staff.  Despite OMB's claims that these records are just briefing materials that inform OMB staff about issues that might arise in the legislative clearance process, *see, e.g.*, Def. Mem.

---

[4]OMB tries to distinguish established Exemption 5 case law holding that agencies cannot withhold secret law by noting that, in those cases, the agency was applying its secret law to the public.  OMB is essentially rehashing the same argument it made in claiming exemption 2 applied—that it is allowed to have secret policies so long as those policies do not regulate the public directly.  Def. Mem. Opp. at 18-21.  That argument fails here as it did in the exemption 2 context.  Even if the records did not meet the definition of "secret law," they would still not be exempt because they are not predecisional and deliberative.  Further, secret law cases tend to involve policies used in agencies' dealings with the public because most agencies regulate the public directly; here, where OMB's duties involve regulating agencies, its secret law will concern how it regulates agencies.  *See Leeds v. Comm'r of Patents and Trademarks*, 955 F.2d 757, 762 (D.C. Cir. 1992) ("'[A]n agency will not be permitted to develop a body of secret law used by it in the discharge of its regulatory duties[.]'") (emphasis removed) (quoting *Coastal States*, 617 F.2d at 867, which discusses both discharging regulatory duties and dealing with the public).  In any event, as explained above, at 8-9, despite OMB's claim that the legislative clearance process "affects no individual citizen, only federal agencies," Def. Mem. Opp. at 19, the content of the information given by agencies to Congress affects the American people, and the public has an interest in knowing how its government conducts its official duties.  The clearance processes are not subjects in which "there is no real public interest . . . save perhaps for satisfying public curiosity."  *Pies v. U.S. I.R.S.*, 668 F.2d 1350, 1353 (D.C. Cir. 1981).

Opp. at 16, it is unimaginable that a member of the Legislative Reference Division staff, upon

receiving these records from the Assistant Director (that is, from his or her supervisor), would

consider them non-binding documents simply intended to give the staff person background while

he or she made an independent decision about whether an agency was required to submit

legislative or budgetary materials for clearance.  *See Access Reports v. Dep't of Justice*, 926 F.2d

1192, 1195 (D.C. Cir. 1991) ("[A document] moving from senior to junior is far more likely to

manifest decisionmaking authority and to be the denouement of the decisionmaking rather than

part of its give-and-take."); *Coastal States*, 617 F.2d at 868 ("[A] document moving [from

superior official to subordinate] is more likely to contain instructions to staff explaining the

reasons for a decision already made.").  A staff person is not going to look at a list of agencies

labeled "bypass agencies," given to the staff person by his or her boss, and think that the list just

contains the boss's personal "perspectives and views regarding which Federal agencies have a

basis . . .  for not submitting to OMB, for interagency review, the drafts of their submissions to

Congress."  Def. Mem. Opp. at 16. The staff person is going to assume that the boss's list of

"bypass agencies" is, in fact, the list of agencies the staff person must allow to bypass the

legislative and/or budgetary clearance processes and will treat the list as the agency's binding

policy.

OMB claims that its official position on legislative bypass is not in the withheld records,

but in OMB Circular A-19 and the OMB Director's memorandum to agency heads, dated

February 15, 2001.  *See* Def. Mem. Opp. at 21.  Neither of those documents, however, contain a

list of agencies that can bypass the legislative and/or budgetary clearance processes, *see* Supp.

Rosenbaum Decl. ¶ 7, so although they might contain OMB's policy on legislative bypass *in*

*general*, they do not contain its policy on which agencies are bypass agencies. Moreover, the Director's Memorandum does not mention that any agencies are allowed to bypass the clearance processes, *id.*, and Circular A-19 states that it applies to all agencies except those that are "specifically required by law to transmit their legislative proposals, reports, or testimony to the Congress without prior clearance." First Rosenbaum Decl. Exhibit D ¶ 4. However, OMB's reply and opposition, and James Jukes's amended declaration, indicate that there are some agencies that OMB permits to bypass the clearance processes even though there is no law allowing them to do so. *See* Def. Mem. Opp. at 16 (referring to "which Federal agencies have a basis—in statute *or in prior agency and OMB practice*" for bypassing the clearance process) (emphasis added); Am. Jukes Decl. ¶ 26 (same). Thus, even if the Director's Memorandum and Circular A-19 contain the policy OMB calls its official policy, it appears that they do not contain the entire policy OMB actually follows. Finally, even if the Director's Memorandum and Circular A-19, rather than the withheld records, contain OMB's official policy on legislative bypass, because record 1 post-dates both of those documents, it, at the very least, is not predecisional and must be released.

       b.    In addition to not being predecisional, records 1-14 are not deliberative. As explained above, despite OMB's claims that the records contain only "internal-OMB perspectives and views," *see* Def. Mem. Opp. at 21 (quoting Am. Jukes Decl. ¶ 28), the contents of the actual documents demonstrate that they do *not* just contain perspectives and views. For example, the statement that USIP has interpreted Section 1709(a) of Pub. L. No. 98-525 as putting it outside the normal budgetary process is not "the views and perspectives of OMB officials' interpretations of the views of certain agencies regarding legislative clearance

requirements." Am. Vaughn Index ¶¶ 1, 3-14.   It is just a factual description of how USIP has

interpreted the statute.  Similarly, the list of bypass agencies does not contain the deliberative

views and perspectives of agency officials; it is a list of agencies that are allowed to submit

materials to Congress without going through the clearance processes.  OMB cannot make a

record deliberative just by tacking the words "views and perspectives" before its description of

the record; it cannot make a policy deliberative just by labeling it the policy-maker's views and

perspectives on what the policy is.

To the extent that the memoranda may contain any material that could be considered

deliberative, that information is not exempt because it has been incorporated into a final policy.

*See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975).  These materials are attached to

the list of bypass agencies used by OMB staff and, assumedly, explain why particular agencies

are on the list.  Even if materials contain a description of multiple possible viewpoints the agency

could have taken, and therefore are said by the agency to contain a "discussion" of the issue, *see*

Def. Mem. Opp. at 25, materials are not predecisional and deliberative if the purpose of the

"discussion" is to explain a policy already adopted.  *See Access Reports*, 926 F.2d at 1194.

OMB misses the point in claiming that the documents' use "as a starting point for

discussions on policy changes" "should not render them unprotected under Exemption 5."  Def.

Mem. Opp. at 20.  Public Citizen is arguing that the records should not be withheld just because

they are a starting point for discussions on policy changes.  Current policies are almost always

going to be the starting point for discussing policy changes, but that does not justify the

withholding of all policies.

Finally, OMB's repeated claims that the legislative process in general is deliberative, *see,*

*e.g.*, Def. Mem. Opp. at 11 ("This process is deliberative through and through"); *id*. at 23 (the legislative clearance process is "an 'interagency process that is inherently predecisional and deliberative'"), are irrelevant.  The question is not whether OMB produces predecisional, deliberative materials in the process of clearing testimony, reports, and proposed legislation for agencies that do not have bypass authority; the question is whether the records *at issue here* are predecisional and deliberative.  They are not.  In his amended declaration, James Jukes contends that OMB needs to keep confidential both the deliberations that are part of the clearance process (such as the comments OMB makes on specific testimony drafts) and the process that a specific draft goes through as it is being cleared (such as which offices have commented on a draft), Am. Jukes Decl. ¶ 40, but he does not show that the records at issue here contain any such information.   That a record relates to a predecisional, deliberative process does not mean that the record itself is either predecisonal or deliberative.  And that a record delineates the procedures to be used in a deliberative process does not make the record itself part of that process.  Final policies always predate the decisions agencies make as they decide how to apply those policies, but that does not make those policies exempt from disclosure.  *See, e.g., Tax Analysts*, 117 F.3d at 617 (explaining that records were not predecisional even though they "may precede the field office's decision in a particular taxpayer's case" because "they do not precede the decision regarding the agency's legal position").

c.       Finally, even if this Court decides that OMB has met its burden of demonstrating that the records contain some predecisional and deliberative material, OMB has not met its burden of demonstrating that such information is not segregable from the rest of the records.  In his first declaration, James Jukes swore, under penalty of perjury, that the factual material in the

withheld records was not segregable.  First Jukes Decl. ¶ 21.  Less than three months later, OMB

changed course, decided the records were segregable, and released portions of them.  *See* Def.

Mem. Opp. at 1.  OMB now, again, just conclusorily asserts that to the extent there is any factual

information being withheld, the factual portions of the records "are not reasonably segregable

from the overall deliberative nature of these documents."  Am. Jukes Decl. ¶ 42.  Although if the

records contained predecisional, deliberative material (which they do not), it would be

"reasonable to understand that the structure and selection of topics *could* provide a view into the

deliberative process," Def. Mem. Opp. at 26 (emphasis added), OMB has not demonstrated that

the factual information *would* provide a view into the deliberative process.  OMB cannot rest on

the assertion that information of the *type* withheld sometimes provides insight into the

deliberative process; it must show that the particular information being withheld itself would

provide such insight.  OMB's conclusory assertions about segregability do not so demonstrate,

nor could they.  Neither the release of information OMB redacted about UPIS nor release of the

list of bypass agencies with non-statutory bypass authority would shed any light on any

deliberative process.  At the very least, those portions of the records should be released, and an in

camera review of the rest of the records conducted to determine if they contain other segregable

information.

### 2.    **OMB Has Not Demonstrated that Records 15-21 Are Exempt**.

In contending that records 15-21 are exempt, OMB once again suggests that it makes a

new decision about whether or not an agency is required to submit materials to OMB each time

the issue arises.  If this were correct, however, one would expect that OMB would have found

hundreds, if not thousands, of records discussing agencies' authorities to bypass the clearance

20

processes in response to Public Citizen's FOIA request; there would be correspondence back and

forth every time an agency drafted testimony, proposals, or legislation.  OMB, however, only

found eight letters in response to the FOIA request, seven of which—records 15-21—are at issue

here.  *See* Am. Jukes Decl. ¶¶ 20, 22.

Records 15-21 are letters from OMB to agencies on its list of agencies that have

statutorily-based legislative bypass authority.  *See* Supp. Rosenbaum Decl. Exhibit E at 15.   In

Record 1, OMB wrote the following about six of the agencies involved (the Securities and

Exchange Commission, *see* Am. Vaughn Index ¶ 15, the Federal Deposit Insurance Corporation,

*see id*. ¶ 16, the Office of the Comptroller of the Currency, *see id*. ¶ 17, the Office of Thrift

Supervision, *see id*. ¶ 18, the Federal Housing Finance Board, *see id*. ¶ 19, and the National

Credit Union Administration, *see id*. ¶ 21):

> P.L. 93-495, Sec. 111; 88 Stat. 1506; 12 USCA Sec. 250 prohibits any Federal
> officer or agency from requiring the SEC or the [other listed] agencies to
> submit legislative recommendations, testimony, or comments for approval or
> review prior to their submission to Congress, provided that such
> communications include a statement to the effect that the views expressed
> therein do not necessarily represent the views of the President.

Supp. Rosenbaum Decl. Exhibit E at 15.  OMB wrote of the Office of Federal Housing

Enterprise Oversight, the agency at issue in the seventh record, *see* Am. Vaughn Index ¶ 20:

> P.L. 102-550, Sec. 1313 allows the Office of Federal Housing Enterprise
> Oversight in HUD to provide Congress with recommendations and reports
> without "the prior approval, comment, or review of any officer or agency of
> the United States."  The Office must include a statement indicating that the
> views expressed do not necessarily represent the views of the HUD Secretary
> or the President.

Supp. Rosenbaum Decl. Exhibit E at p. 15. It would be consistent with OMB's description of

records 15-21 as containing a discussion of "the agency's legislative authority to bypass OMB's

mandatory review," *see* Am. Vaughn Index ¶¶ 15-21, and including a "request about practices" concerning that process, *see* Am. Jukes Decl. ¶ 30, for the records to contain a statement that the agencies are not required to clear their legislative materials past OMB but that if they do not clear their materials, they must state that the views expressed do not necessarily represent the views of the President or HUD Secretary, as the case may be. Such a statement—an explanation of OMB's policy of what is required of the agencies vis-a-vis legislative clearance—is neither predecisional nor deliberative. *See Access Reports*, 926 F.2d at 1194-95. Because OMB's description of the records is consistent with them including non-predecisional and non-deliberative material, OMB has not met its burden of demonstrating that the records are exempt from disclosure.[5]

In claiming records 15-21 are exempt, OMB again emphasizes its belief that the legislative clearance process is "inherently predecisional and deliberative." Def. Mem. Opp. at 29; *see also* Am. Jukes Decl. ¶ 31 ("[T]hese eight documents relate to an interagency process that is, inherently, predecisional and deliberative."); *id*. ¶ 32 ("[E]ach [of the eight letters] addressed the interagency predecisional deliberative process . . . ."); *id*. ¶ 33 ("[T]hese eight documents are interagency communications . . . concerning the Executive Branch's internal predecisional

---

[5]That OMB claims Deputy Director Sean O'Keefe "discuss[ed]" the agency's legislative bypass authority in the withheld records, *see* Am. Vaughn Index ¶¶ 15-21, does not mean the records are deliberative. The word "discussion" can imply either group consideration of a topic or one person's formal exposition on the topic. *See* Webster's II New Riverside University Dictionary 385 (1984). Given that the letters come from one person and do not involve any back-and-forth or group consideration, the latter definition of the word must be the one OMB is using here. That definition does not imply the give-and-take that, in OMB's words, "is the cornerstone of the deliberative process." Def. Mem. Opp. at 30. Nor does the fact that OMB describes the records as containing O'Keefe's "comments" and "perspectives" make the records deliberative if those comments and perspectives are actually the agency's policy regarding legislative bypass.

deliberative process . . . .").  Once again, however, that a record relates to or concerns a deliberative, predecisional process does not make that record exempt under Exemption 5.  The records themselves, and not the issue they address, must be predecisional and deliberative.

Finally, as with records 1-14, even if records 15-21 contain some predecisional, deliberative material, OMB has made only conclusory statements that the records are not segregable.  Those statements do not meet OMB's burden of providing sufficient information to allow a court to decide segregability de novo.

## CONCLUSION

For the foregoing reasons, the Court should grant Public Citizen's motion for summary judgment and order OMB to release the requested records.


Respectfully submitted,


 /s/ Adina H. Rosenbaum
Adina H. Rosenbaum
(DC Bar No. 490928)
Brian Wolfman
(DC Bar No. 427491)
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC  20009
(202) 588-1000
(202) 588-7795 (fax)

Attorneys for Plaintiff

Dated: October 4, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC CITIZEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-409 (RCL) |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL AUTHORITIES IN SUPPORT OF DEFENDANT'S STATEMENT OF MATERIAL FACTS

Plaintiff does not dispute that Defendant has filed an Amended Declaration of James Jukes, executed September 7, 2007, an Amended Vaughn Index, and a letter, dated August 3, 2007, from Assistant U.S. Attorney Alexander D. Shoaibi to Adina Rosenbaum. Defendant has not identified any facts within these filed documents as material facts as to which there is no genuine dispute. *See* Local Rule 56.1 (requiring statement to include both "a statement of material facts" *and* "references to the parts of the record relied on to support the statement," not just references to parts of the record).

Respectfully submitted,

 /s/ Adina H. Rosenbaum
Adina H. Rosenbaum
(DC Bar No. 490928)
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC  20009
(202) 588-1000
(202) 588-7795 (fax)

Attorney for Plaintiff

Dated:  October 4, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC CITIZEN, INC.,                    )
                                         )
                 Plaintiff,              )
                                         )
v.                                       )    Civil Action No. 07-409 (RCL)
                                         )
OFFICE OF MANAGEMENT AND BUDGET,         )
                                         )
                 Defendant.              )
_____)

### Supplemental Declaration of Adina H. Rosenbaum

I, Adina H. Rosenbaum, declare as follows:

1.      I am a staff attorney at Public Citizen and represent Public Citizen in the above-captioned

case.  This declaration supplements my declaration dated June 13, 2007.  All statements in this

declaration are based on my personal knowledge.  The purpose of this declaration is to inform the

Court about the documents OMB released to Public Citizen after Public Citizen filed its Motion

for Summary Judgment and Opposition to OMB's Motion for Summary Judgment.

2.      By letter dated August 3, 2007, OMB sent portions of 14 documents to Public Citizen.

The released portion of the first document is attached as Exhibit E.  The released portion of the

second document is attached as Exhibit F.  The released portion of the third document is attached

as Exhibit G.  The released portion of the fourth document is attached as Exhibit H.

3.      The released portions of records 1 and 3-12 start with three lists, all under the general

heading "Bypass Agencies": a list of "Agencies with Statutorily-Based Budgetary and Legislative

'Bypass' Provisions," a list of "Agencies with Statutorily-Based Budgetary 'Bypass' Provisions

Only" and a list of "Agencies with Statutorily-Based Legislative 'Bypass' Provisions Only."  In

record 1, these lists are followed by blacked-out text.  From the shape of the blacked-out text, it can be deduced that the text contains an additional list heading, followed by approximately 15 lines of text.  In records 3-6 and 10-11, instead of blacking out the text, the agency removed the page containing the text it wished to redact.  However, the redaction can be discerned in those records because the records contain page numbers, which skip from 6 to 8.  Records 7-9 and 12 contain no page numbers, and therefore no indication of a redaction, but if they follow the pattern of the other records, they are redacted in the same manner.

4.     The released portions of records 1 and 3-14 contain a summary description of the statutory authorities under which agencies are allowed to bypass the clearance process.  OMB generally redacted portions of the descriptions for four agencies, where those agencies appear in the documents: the Federal Aviation Administration (FAA), the Legal Services Corporation (LSC), the United States Institute of Peace (USIP), and the Small Business Administration (SBA).  However, it did not redact the description for USIP in record 4.   The size and shape of the redactions about USIP in records 1, 3, and 5-11 are approximately the same size as the following unredacted text that appears in record 4:

> There is no explicit provision contained in P.L. 98-525 stating the USIP is outside the regular budget process; however, USIP has so interpreted Sec. 1709(a) of P.L. 98-525, 22 USCA Sec. 4608(a), which states that "[n]othing in this title may be construed as limiting the authority of the Office of Management and Budget to review and submit comments on the Institute's budget request at the time it is transmitted to Congress."

Records 12-14 do not contain paragraphs on USIP.

5.     OMB did not release to Public Citizen the one- or two-page memoranda from the Assistant Director for Legislative Reference that the Vaughn Index describes as being included in

records 1 and 3-14.

6.    The agency also withheld approximately half of the longer memoranda contained in records 1 and 3-14.  For example, although the Vaughn Index says record 1 contains a 22-page document, only 10 pages were released to us.  Similarly OMB only released nine pages from each of records 3-5, eight pages from each of records 6-11, seven pages from record 12, five pages from record 13, and four pages from record 14.

7.    I have reviewed both OMB Circular A-19 and the OMB Director's memorandum to agency heads of February 15, 2001, concerning legislative bypass.  Neither document includes a list of agencies that OMB permits to bypass the legislative clearance process, and the OMB Director's memorandum does not mention that any agencies are allowed to bypass the clearance processes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 4, 2007.

Adina H. Rosenbaum

# Exhibit E
## (Released Portion of Record 1)

## "BYPASS" AGENCIES

### Agencies with Statutorily-Based Budgetary and Legislative "Bypass" Provisions

1. Advisory Council on Historic Preservation
2. Chemical Safety and Hazard Investigation Board
3. Commodity Futures Trading Commission
4. Consumer Product Safety Commission
5. Federal Aviation Administration (Transportation)
6. Federal Election Commission
7. Federal Retirement Thrift Investment Board
8. Merit Systems Protection Board
9. National Transportation Safety Board
10. Railroad Retirement Board
11. Surface Transportation Board (Transportation)

### Agencies with Statutorily-Based Budgetary "Bypass" Provisions Only*

1. Court of Appeals for Veterans Claims
2. International Trade Commission
3. Legal Services Corporation
4. State Justice Institute
5. United States Institute of Peace

---

* Statutory provisions relating to the United States Postal Service (39 U.S.C. 2009), the Social Security Administration (42 U.S.C. 901), the Internal Revenue Service Oversight Board (26 U.S.C. 7802), the District of Columbia Courts (Pub.L. 105-33, secs. 11242-3), and the Air Traffic Services Subcommittee of the Aviation Management Advisory Council (with respect to the Federal Aviation Administration's air traffic control system budget -- 49 U.S.C. 106(p)(7)(C)(v)) require the President to submit these entities' budget requests to Congress without revision, together with the President's own budget proposals for the concerned entities.   These provisions are not construed to provide the concerned agencies with budget bypass authority.

Agencies with Statutorily-Based Legislative "Bypass" Provisions Only

1.  Farm Credit Administration
2.  Federal Deposit Insurance Corporation
3.  Federal Housing Finance Board
4.  Federal Reserve Board of Governors
5.  National Credit Union Administration
6.  Office of the Comptroller of the Currency (Treasury)
7.  Office of Thrift Supervision (Treasury)
8.  Securities and Exchange Commission
9.  Federal Energy Regulatory Commission
10. Office of Federal Housing Enterprise Oversight (HUD)
11. Office of the National Taxpayer Advocate (Treasury - Internal Revenue Service)
12. Office of Special Counsel
13. Small Business Administration (Chief Counsel for Advocacy)



SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED
BUDGETARY AND LEGISLATIVE "BYPASS" PROVISIONS

1.   Advisory Council on Historic Preservation

P.L. 94-422, Sec. 201(9); 90 Stat. 1322, 1323; 16 USCA
Sec. 470r, 470t(b), as amended by P.L. 96-515, Sec. 301(k);
94 Stat. 2999 provides that no Federal official or agency
can require the Council to submit for review its legislative
recommendations, testimony, or comments prior to the
submission of such information to Congress.  Where the
Council voluntarily seeks other agency comments, such fact
is to be noted in the transmittal.  Any budget estimate or
request that the Council submits to the President or OMB
must concurrently be sent to the Appropriations Committees
in both Houses and the House Interior and Senate Energy
Committees.

2.   Chemical Safety and Hazard Investigation Board

P.L. 101-549, Sec. 301 (amending Sec. 112(F)(6)(R) of the
Clean Air Act; 104 Stat. 2569; 42 USCA Sec. 7412(r)(6)(R))
provides that any budget estimate, request, supplemental
request, or information, any legislative recommendation, or
prepared testimony submitted to the President or a Federal
Agency shall be concurrently transmitted to Congress.  No
Federal official or agency can require prior review of the
Board's budgetary or legislative communications to the
Congress.

3.   Commodity Futures Trading Commission

P.L. 93-463, Sec. 101(a)(3); 88 Stat. 1390; 7 USCA Sec.
4a (h)(1),(2) provides that all budget estimates or
requests, or legislative recommendations, testimony, or
comments submitted by the Commission to the President or OMB
are to be transmitted concurrently to both the House and
Senate Appropriations and Agriculture Committees.  The
Commission is expressly exempt from any requirement that
legislative recommendations, testimony, or comments be
submitted for Executive branch review prior to transmission
to Congress.  Where the Commission voluntarily seeks other
agency comments, such fact is to be noted in the
transmittal.

4.  Consumer Product Safety Commission (CPSC)

    P.L. 92-573, Sec. 27(k)(1),(2); 86 Stat. 1229; 15 USCA
    Sec. 2076(k)(1),(2) provides that any budget estimate or
    request, or legislative recommendations, testimony, or
    comments submitted to the President or OMB by CPSC be
    concurrently transmitted to the Congress.  No Federal
    official or agency can require prior review of CPSC's
    legislative communications to the Congress.

5.  Federal Aviation Administration (FAA) (Transportation)

    P.L. 97-248, Sec. 506(f); 96 Stat. 679; 49 USCA Sec. 48109
    provides that any budget estimate or request, supplemental
    budget estimate, other budget information, legislative
    recommendation, or comment on legislation that is sent to
    the Secretary of Transportation, the President, or OMB
    pertaining to funds authorized for air navigation facilities
    and equipment or for research, engineering and development
    must be concurrently transmitted to the Speaker of the
    House, the House Public Works and Appropriations Committees,
    the President of the Senate, and the Senate Commerce and
    Appropriations Committees.

    (Also see the footnote on page 7
    concerning a separate requirement relating to the Air
    Traffic Services Subcommittee of the Aviation Management
    Advisory Council.  This Subcommittee is required to review
    and approve the FAA's budget request related to the air
    traffic control system.)

6.  Federal Election Commission (FEC)

    P.L. 93-443, Sec. 208(a); 88 Stat. 1283; 2 USCA
    Sec. 437d(d)(1),(2) requires that any budget estimate or
    request, or legislative recommendation, testimony, or
    comments submitted to the President or OMB by the FEC be
    concurrently transmitted to the Congress.  No Federal
    official or agency can require prior review of FEC's
    legislative communications to the Congress.

7. Federal Retirement Thrift Investment Board

P.L. 99-509, Sec. 6001(e); 100 Stat. 1931, amended 5 U.S.C. 8472 to add subsections (i) and (j) providing, respectively, that the Board shall submit its annual budget concurrently to the President and the appropriate committees of Congress, and that the Board may submit to the President, and, at the same time, shall submit to each House of Congress, any legislative recommendations of the board relating to any of its functions under any provision of law.

8. Merit Systems Protection Board

P.L. 95-454, Sec. 202(a); 92 Stat. 1125; 5 USCA Sec. 1205(j),(k) requires the Board to prepare and submit its annual budget concurrently to the President and to the appropriate committees of Congress. The Board's budget, "as revised," is required to be included as a separate item in the President's Budget. Any legislative recommendations of the Board relating to its functions are required to be submitted concurrently to the President and both Houses of Congress.

9. National Transportation Safety Board (NTSB)

P.L. 93-633, Sec. 304(b)(7); 88 Stat. 2170; 49 USCA App. Sec. 1903 (b)(7) provides that any budget estimate, request or supplemental estimate or legislative recommendation, prepared testimony, or comments submitted to the President or OMB shall be concurrently transmitted to the Congress. No Federal official or agency can require prior review of NTSB's budgetary or legislative communications to the Congress.

10. Railroad Retirement Board

P.L. 98-76, Sec. 416; 97 Stat. 436; 45 USCA Sec. 231f(f) provides that any budget estimate, request, or supplemental estimate, or legislative recommendation, prepared testimony, or comment on legislation submitted to the President or OMB shall be concurrently transmitted to the Congress. No Federal official or agency can require prior review of the Board's budgetary or legislative communications to the Congress.

11.  <u>Surface Transportation Board (STB)</u>

P.L. 104-88 abolished the Interstate Commerce Commission (ICC) and transferred some of its functions to the Surface Transportation Board (STB), a new entity within the Department of Transportation.  Bypass provisions similar to those that applied to the ICC apply to the STB. Specifically, P.L. 104-88, sec. 201, 109 Stat. 934, 49 U.S.C. 703(g) provides that any budget estimate, request, or budget information (including personnel needs), or legislative comment, recommendation, or prepared testimony for congressional hearings submitted to the Secretary of Transportation shall be concurrently transmitted to the Congress.  No officer of an agency may impair communications between the STB and the Congress concerning budget estimates or requests.

SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED
BUDGETARY "BYPASS" PROVISIONS ONLY

1.  Court of Appeals for Veterans Claims

    The United States Court of Appeals for Veterans Claims was
    established by the Veterans Judicial Review Act, 38 U.S.C.
    Sections 7251-7292, under Article I of the Constitution.
    Section 7282 of the Act authorizes the Court to submit its
    budget for inclusion in the President's budget without
    review within the Executive branch.

2.  International Trade Commission

    P.L. 93-618, Sec. 175(a)(1); 88 Stat. 2011; 19 USCA Sec.
    2232 specifically excludes the Commission from the
    provisions of the Budget and Accounting Act of 1921 and
    directs that the Commission's estimated expenditures and
    proposed appropriations be included without revision in the
    President's Budget.

3.  Legal Services Corporation (LSC)

    The LSC is a private nonprofit corporation largely funded
    through Federal appropriations.  Its Board Members are
    appointed by the President subject to Senate confirmation.
    P.L. 93-355, Sec. 1005(e)(1); 88 Stat. 380; 42 USCA Sec.
    2996d(e) provides that the LSC is generally not to be
    considered a department, agency or instrumentality of the
    Federal Government.



    LSC has been submitting its
    budget requests concurrently to OMB and the Congress.

4.  State Justice Institute

    The State Justice Institute is a private nonprofit
    corporation established to further the development and
    adoption of improved judicial administration in State
    courts.  Its Board of Directors is appointed by the
    President with the advice and consent of the Senate.

P.L. 98-620, Sec. 203; 98 Stat. 3336; 42 USC 10704(c) states that OMB may "review and submit comments" on the State Justice Institute's budget request when it is transmitted to Congress, implying a budgetary bypass.  The same provision also states that otherwise the Institute "shall not be considered a department, agency, or instrumentality of the Federal Government."

5.    United States Institute of Peace (USIP)

P.L. 98-525; 98 Stat. 2651; 22 USCA Sec. 4601, et seq., established the USIP as an independent, nonprofit corporation and generally provides that officers and employees of the USIP are not to be considered officers or employees of the United States Government.

-14-

SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED
LEGISLATIVE "BYPASS" PROVISIONS ONLY

1.    Farm Credit Administration (FCA)

P.L. 92-181, Sec. 5.18(3); 85 Stat. 622; 12 USCA Sec.
2252(a)(3) provides that from "time to time" the FCA may
recommend legislative changes directly to Congress.

2.    Federal Deposit Insurance Corporation (FDIC)
3.    Federal Housing Finance Board
4.    Federal Reserve Board of Governors
5.    National Credit Union Administration
6.    Office of the Comptroller of the Currency (Treasury)
7.    Office of Thrift Supervision (Treasury)
8.    Securities and Exchange Commission (SEC)

P.L. 93-495, Sec. 111; 88 Stat. 1506; 12 USCA Sec. 250
prohibits any Federal officer or agency from requiring the
SEC or the preceding five (item nos. 2-6 above) agencies to
submit legislative recommendations, testimony, or comments
for approval or review prior to their submission to
Congress, provided that such communications include a
statement to the effect that the views expressed therein
do not necessarily represent the views of the President.

9.    Federal Energy Regulatory Commission

P.L. 95-91, Sec. 401(j); 91 Stat. 583; 42 USCA Sec. 7171(j)
provides that whenever the Federal Energy Regulatory
Commission submits to the Secretary of Energy, the
President, or the Office of Management and Budget, any
legislative recommendation or testimony, or comments on
legislation, prepared for submission to Congress, the
Commission shall concurrently transmit a copy thereof to the
appropriate committees of Congress.

10.   Office of Federal Housing Enterprise Oversight (HUD)

P.L. 102-550, Sec. 1313 allows the Office of Federal Housing
Enterprise Oversight in HUD to provide Congress with
recommendations and reports without "the prior approval,
comment, or review of any officer or agency of the United
States." The Office must include a statement indicating
that the views expressed do not necessarily represent the
views of the HUD Secretary or the President.

-15-

11. Office of the National Taxpayer Advocate (Treasury - Internal Revenue Service)

The Office of the National Taxpayer Advocate was established by the Internal Revenue Service Reform and Restructuring Act, P.L. 105-206, sec. 1102(a), 112 Stat. 697 et. seq., 26 U.S.C. 7803(c). Among other things, section 1102 requires the Office of the Taxpayer Advocate to submit certain annual reports directly to the House Ways and Means Committee and the Senate Finance Committee, without any prior review or comments by the IRS Commissioner, the Secretary of the Treasury, the IRS Oversight Board, any other Treasury Department officer or employee, or the Office of Management and Budget. The reports are to contain, among other things, such legislative recommendations as may be appropriate to resolve problems encountered by taxpayers.

12. Office of Special Counsel (OSC)

P.L. 101-12, Sec. 3 (5 U.S.C. Sec. 1217) pertains to OSC's transmittal of information to the Congress. This section states: "The Special Counsel or any employee of the Special Counsel designated by the Special Counsel, shall transmit to the Congress on the request of any committee or subcommittee thereof, by report, testimony, or otherwise, information and the Special Counsel's views of functions, responsibilities, or other matters relating to the Office. Such information shall be transmitted concurrently to the President and any other appropriate agency in the executive branch."

13. Small Business Administration (Chief Counsel for Advocacy)

P.L. 94-305, Sec. 201; 90 Stat. 668; 15 USCA Sec. 634a requires the President to appoint, subject to Senate confirmation, a Chief Counsel for Advocacy. 15 USCA 634f provides, in pertinent part, that

The Chief Counsel may from time to time prepare and publish such reports as he deems appropriate. Not later than one year after June 4, 1976, he shall transmit to the Congress, the President, and the [Small Business] Administration, a full report containing . . . specific recommendations . . . including specific legislative proposals and recommendations . . . . Not later than 6 months after June 4, 1976, he shall prepare and transmit a preliminary report on his activities. The reports shall not be submitted to [OMB] . . . for any purpose prior to transmittal to the Congress and the President.

# Exhibit F
## (Released Portion of Record 2)

*Excerpt from OMB roles & responsibilities document on internal website.*

*Agencies Exempt from the Legislative Clearance Process*

-- Agencies with Statutorily-Based Legislative Bypass Provisions

Pursuant to statute, the following agencies may not be required to participate in the OMB legislative review and clearance process:

1. Advisory Council on Historic Preservation
2. Chemical Safety and Hazard Investigation Board
3. Commodity Futures Trading Commission
4. Consumer Product Safety Commission
5. Energy Information Administration (Energy)
6. Farm Credit Administration
7. Federal Aviation Administration (Transportation)
8. Federal Election Commission
9. Federal Energy Regulatory Commission
10. Federal Retirement Thrift Investment Board
11. Merit Systems Protection Board
12. National Transportation Safety Board
13. Office of National Taxpayer Advocate (Treasury)
14. Office of Special Counsel
15. Railroad Retirement Board
16. Small Business Administration (Chief Counsel for Advocacy)
17. Surface Transportation Board (Transportation)

-- Agencies with Conditional Statutorily-Based Legislative "Bypass" Provisions

In addition, the following agencies are statutorily exempt from the legislative clearance process if their reports or testimony to the Congress include a statement indicating that their views do not necessarily represent those of the President:

1. Federal Deposit Insurance Corporation
2. Federal Reserve Board of Governors
3. National Credit Union Administration
4. Office of the Comptroller of the Currency (Treasury)
5. Office of Federal Housing Enterprise Oversight (HUD)
6. Office of Thrift Supervision (Treasury)
7. Securities and Exchange Commission

# Exhibit G
## (Released Portion of Record 3)

"BYPASS" AGENCIES

## Agencies with Statutorily-Based Budgetary and Legislative "Bypass" Provisions

1. Advisory Council on Historic Preservation
2. Commodity Futures Trading Commission
3. Consumer Product Safety Commission
4. Federal Aviation Administration (Transportation)
5. Federal Election Commission
6. Federal Retirement Thrift Investment Board
7. Surface Transportation Board (Transportation)
8. Merit Systems Protection Board
9. National Transportation Safety Board
10. Railroad Retirement Board
11. Chemical Safety and Hazard Investigation Board

## Agencies with Statutorily-Based Budgetary "Bypass" Provisions Only*

1. Court of Appeals for Veterans Claims
2. International Trade Commission
3. Legal Services Corporation
4. State Justice Institute
5. United States Institute of Peace

## Agencies with Statutorily-Based Legislative "Bypass" Provisions Only

1. Farm Credit Administration
2. Federal Deposit Insurance Corporation
3. Federal Reserve Board of Governors
4. National Credit Union Administration
5. Office of the Comptroller of the Currency (Treasury)
6. Office of Thrift Supervision (Treasury)
7. Securities and Exchange Commission
8. Federal Energy Regulatory Commission
9. Office of Federal Housing Enterprise Oversight (HUD)
10. Small Business Administration (Chief Counsel for Advocacy)
11. Office of Special Counsel
12. Office of the National Taxpayer Advocate (Treasury - Internal Revenue Service)

---

* Statutory provisions relating to the United States Postal Service (39 U.S.C. 2009), the Social Security Administration (42 U.S.C. 901), and the Internal Revenue Service Oversight Board (26 U.S.C. 7802) require the President to submit these entities' budget requests to Congress without revision, together with the President's own budget proposals for the concerned entities. These provisions are not construed to provide the concerned agencies with budget bypass authority.

## SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED BUDGETARY AND LEGISLATIVE "BYPASS" PROVISIONS

1.  **Advisory Council on Historic Preservation**

    P.L. 94-422, Sec. 201(9); 90 Stat. 1322, 1323; 16 USCA
    Sec. 470r, 470t(b), as amended by P.L. 96-515, Sec. 301(k);
    94 Stat. 2999 provides that no Federal official or agency
    can require the Council to submit for review its legislative
    recommendations, testimony, or comments prior to the
    submission of such information to Congress.  Where the
    Council voluntarily seeks other agency comments, such fact
    is to be noted in the transmittal.  Any budget estimate or
    request that the Council submits to the President or OMB
    must concurrently be sent to the Appropriations Committees
    in both Houses and the House Interior and Senate Energy
    Committees.

2.  **Commodity Futures Trading Commission**

    P.L. 93-463, Sec. 101(a)(3); 88 Stat. 1390; 7 USCA Sec.
    4a (h)(1),(2) provides that all budget estimates or
    requests, or legislative recommendations, testimony, or
    comments submitted by the Commission to the President or OMB
    are to be transmitted concurrently to both the House and
    Senate Appropriations and Agriculture Committees.  The
    Commission is expressly exempt from any requirement that
    legislative recommendations, testimony, or comments be
    submitted for Executive branch review prior to transmission
    to Congress.  Where the Commission voluntarily seeks other
    agency comments, such fact is to be noted in the
    transmittal.

3.  **Consumer Product Safety Commission (CPSC)**

    P.L. 92-573, Sec. 27(k)(1),(2); 86 Stat. 1229; 15 USCA
    Sec. 2076(k)(1),(2) provides that any budget estimate or
    request, or legislative recommendations, testimony, or
    comments submitted to the President or OMB by CPSC be
    concurrently transmitted to the Congress.  No Federal
    official or agency can require prior review of CPSC's
    legislative communications to the Congress.

4.  **Federal Aviation Administration (FAA) (Transportation)**

    P.L. 97-248, Sec. 506(f); 96 Stat. 679; 49 USCA App.
    Sec. 2205(f) provides that any budget estimate or request,
    supplemental budget estimate, other budget information,
    legislative recommendation, or comment on legislation that
    is sent to the Secretary of Transportation, the President,

or OMB pertaining to funds authorized for air navigation facilities and equipment or for research, engineering and development must be concurrently transmitted to the Speaker of the House, the House Public Works and Appropriations Committees, the President of the Senate, and the Senate Commerce and Appropriations Committees.

5.  Federal Election Commission (FEC)

   P.L. 93-443, Sec. 208(a); 88 Stat. 1283; 2 USCA Sec. 437d(d)(1),(2) requires that any budget estimate or request, or legislative recommendation, testimony, or comments submitted to the President or OMB by the FEC be concurrently transmitted to the Congress.  No Federal official or agency can require prior review of FEC's legislative communications to the Congress.

6.  Federal Retirement Thrift Investment Board

   P.L. 99-509, Sec. 6001(e); 100 Stat. 1931, amended 5 U.S.C. 8472 to add subsections (i) and (j) providing, respectively, that the Board shall submit its annual budget concurrently to the President and the appropriate committees of Congress, and that the Board may submit to the President, and, at the same time, shall submit to each House of Congress, any legislative recommendations of the board relating to any of its functions under any provision of law.

7.  Surface Transportation Board (STB)

   P.L. 104-88 abolished the Interstate Commerce Commission (ICC) and transferred some of its functions to the Surface Transportation Board (STB), a new entity within the Department of Transportation.  Bypass provisions similar to those that applied to the ICC apply to the STB. Specifically, P.L. 104-88, sec. 201, 109 Stat. 934, 49 U.S.C. 703(g) provides that any budget estimate, request, or budget information (including personnel needs), or legislative comment, recommendation, or prepared testimony for congressional hearings submitted to the Secretary of Transportation shall be concurrently transmitted to the Congress.  No officer of an agency may impair communications between the STB and the Congress concerning budget estimates or requests.

8.  Merit Systems Protection Board

P.L. 95-454, Sec. 202(a); 92 Stat. 1125; 5 USCA Sec. 1205(j),(k) requires the Board to prepare and submit its annual budget concurrently to the President and to the appropriate committees of Congress.  The Board's budget, "as revised," is required to be included as a separate item in the President's Budget.  Any legislative recommendations of the Board relating to its functions are required to be submitted concurrently to the President and both Houses of Congress.

9.  National Transportation Safety Board (NTSB)

P.L. 93-633, Sec. 304(b)(7); 88 Stat. 2170; 49 USCA App. Sec. 1903 (b)(7) provides that any budget estimate, request or supplemental estimate or legislative recommendation, prepared testimony, or comments submitted to the President or OMB shall be concurrently transmitted to the Congress. No Federal official or agency can require prior review of NTSB's budgetary or legislative communications to the Congress.

10.  Railroad Retirement Board

P.L. 98-76, Sec. 416; 97 Stat. 436; 45 USCA Sec. 231f(f) provides that any budget estimate, request, or supplemental estimate, or legislative recommendation, prepared testimony, or comment on legislation submitted to the President or OMB shall be concurrently transmitted to the Congress.  No Federal official or agency can require prior review of the Board's budgetary or legislative communications to the Congress.

11.  Chemical Safety and Hazard Investigation Board

P.L. 101-549, Sec. 301 (amending Sec. 112(F)(6)(R) of the Clean Air Act; 104 Stat. 2569; 42 USCA Sec. 7412) provides that any budget estimate, request, supplemental request, or information, any legislative recommendation, or prepared testimony submitted to the President or a Federal Agency shall be concurrently transmitted to Congress.  No Federal official or agency can require prior review of the Board's budgetary or legislative communications to the Congress.

### SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED BUDGETARY "BYPASS" PROVISIONS ONLY

1.   Court of Appeals for Veterans Claims

   The United States Court of Appeals for Veterans Claims was established by the Veterans Judicial Review Act, 38 U.S.C. Sections 7251-7292, under Article I of the Constitution. Section 7282 of the Act authorizes the Court to submit its budget for inclusion in the President's budget without review within the Executive branch.

2.   International Trade Commission

   P.L. 93-618, Sec. 175(a)(1); 88 Stat. 2011; 19 USCA Sec. 2232 specifically excludes the Commission from the provisions of the Budget and Accounting Act of 1921 and directs that the Commission's estimated expenditures and proposed appropriations be included without revision in the President's Budget.

3.   Legal Services Corporation (LSC)

   The LSC is a private nonprofit corporation largely funded through Federal appropriations.  Its Board Members are appointed by the President subject to Senate confirmation. P.L. 93-355, Sec. 1005(e)(1); 88 Stat. 380; 42 USCA Sec. 2996d(e) provides that the LSC is generally not to be considered a department, agency or instrumentality of the Federal Government. ███████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ LSC has been submitting its budget requests concurrently to OMB and the Congress.

4.   State Justice Institute

   The State Justice Institute is a private nonprofit corporation established to further the development and adoption of improved judicial administration in State courts.  Its Board of Directors is appointed by the President with the advice and consent of the Senate.

P.L. 98-620, Sec. 203; 98 Stat. 3336; 42 USC 10704(c) states that OMB may "review and submit comments" on the State Justice Institute's budget request when it is transmitted to Congress, implying a budgetary bypass.  The same provision also states that otherwise the Institute "shall not be considered a department, agency, or instrumentality of the Federal Government."

5.    <u>United States Institute of Peace (USIP)</u>

P.L. 98-525; 98 Stat. 2651; 22 USCA Sec. 4602, <u>et seq</u>., established the USIP as an independent, nonprofit corporation and generally provides that officers and employees of the USIP are not to be considered officers or employees of the United States Government.

SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED
LEGISLATIVE "BYPASS" PROVISIONS ONLY

1.   Farm Credit Administration (FCA)

   P.L. 92-181, Sec. 5.18(3); 85 Stat. 622; 12 USCA Sec.
   2252(a)(3) provides that from "time to time" the FCA may
   recommend legislative changes directly to Congress.

2.   Federal Deposit Insurance Corporation (FDIC)

3.   Federal Reserve Board of Governors

4.   National Credit Union Administration

5.   Office of the Comptroller of the Currency (Treasury)

6.   Office of Thrift Supervision (Treasury)

7.   Securities and Exchange Commission (SEC)

   P.L. 93-495, Sec. 111; 88 Stat. 1506; 12 USCA Sec. 250
   prohibits any Federal officer or agency from requiring the
   SEC or the preceding five (item nos. 2-6 above) agencies to
   submit legislative recommendations, testimony, or comments
   for approval or review prior to their submission to
   Congress, provided that such communications include a
   statement to the effect that the views expressed therein
   do not necessarily represent the views of the President.
   P.L. 101-73, Sec. 744(j); 103 Stat. 439 amended P.L. 93-495
   (12 U.S.C. 250) by striking "Federal Home Loan Bank Board"
   and inserting "Director of the Office of Thrift
   Supervision."  P.L. 103-325, Sec. 331 added the Office of
   the Comptroller of the Currency.

8.   Federal Energy Regulatory Commission

   P.L. 95-91, Sec. 401(j); 91 Stat. 583; 42 USCA Sec. 7171(j)
   provides that whenever the Federal Energy Regulatory
   Commission submits to the Secretary of Energy, the
   President, or the Office of Management and Budget, any
   legislative recommendation or testimony, or comments on
   legislation, prepared for submission to Congress, the
   Commission shall concurrently transmit a copy thereof to the
   appropriate committees of Congress.

9.   Office of Federal Housing Enterprise Oversight (HUD)

   P.L. 102-550, Sec. 1313 allows the Office of Federal Housing
   Enterprise Oversight in HUD to provide Congress with
   recommendations and reports without "the prior approval,
   comment, or review of any officer or agency of the United
   States."  The Office must include a statement indicating
   that the views expressed do not necessarily represent the
   views of the HUD Secretary or the President.

10. <u>Small Business Administration (Chief Counsel for Advocacy)</u>

P.L. 94-305, Sec. 201; 90 Stat. 668; 15 USCA Sec. 634a requires the President to appoint, subject to Senate confirmation, a Chief Counsel for Advocacy.  15 USCA 634f provides, in pertinent part, that

> The Chief Counsel may from time to time prepare and publish such reports as he deems appropriate.  Not later than one year after June 4, 1976, he shall transmit to the Congress, the President, and the [Small Business] Administration, a full report containing . . . specific recommendations . . . including specific legislative proposals and recommendations . . . .  Not later than 6 months after June 4, 1976, he shall prepare and transmit a preliminary report on his activities.  The reports shall not be submitted to [OMB] . . . for any purpose prior to transmittal to the Congress and the President.



11. <u>Office of Special Counsel (OSC)</u>

P.L. 101-12, Sec. 3 (5 U.S.C. Sec. 1217) pertains to OSC's transmittal of information to the Congress.  This section states:  "The Special Counsel or any employee of the Special Counsel designated by the Special Counsel, shall transmit to the Congress on the request of any committee or subcommittee thereof, by report, testimony, or otherwise, information and the Special Counsel's views of functions, responsibilities, or other matters relating to the Office.  Such information shall be transmitted concurrently to the President and any other appropriate agency in the executive branch."

12. <u>Office of the National Taxpayer Advocate (Treasury - Internal Revenue Service)</u>

The Office of the National Taxpayer Advocate was established by the Internal Revenue Service Reform and Restructuring Act, P.L. 105-206, sec. 1102(a), 112 Stat. 697 et. seq., 26 U.S.C. 7803(c). Among other things, section 1102 requires the Office of the Taxpayer Advocate to submit certain annual reports directly to the House Ways and Means Committee and the Senate Finance Committee, without any prior review or comments by the IRS Commissioner, the Secretary of the Treasury, the IRS Oversight Board, any other Treasury Department officer or employee, or the Office of Management and Budget. The reports are to contain, among other things, such legislative recommendations as may be appropriate to resolve problems encountered by taxpayers.

# Exhibit H
## (Released Portion of Record 4)

<u>"BYPASS" AGENCIES</u>

## <u>Agencies with Statutorily-Based Budgetary and Legislative "Bypass" Provisions</u>

1.   Advisory Council on Historic Preservation
2.   Commodity Futures Trading Commission
3.   Consumer Product Safety Commission
4.   Federal Aviation Administration (Transportation)
5.   Federal Election Commission
6.   Federal Retirement Thrift Investment Board
7.   Surface Transportation Board (Transportation)
8.   Merit Systems Protection Board
9.   National Transportation Safety Board
10.  Railroad Retirement Board
11.  Chemical Safety and Hazard Investigation Board

## <u>Agencies with Statutorily-Based Budgetary "Bypass" Provisions Only*</u>

1.   Court of Veterans Appeals
2.   International Trade Commission
3.   Legal Services Corporation
4.   State Justice Institute
5.   United States Postal Service
6.   United States Institute of Peace

## <u>Agencies with Statutorily-Based Legislative "Bypass" Provisions Only</u>

1.   Farm Credit Administration
2.   Federal Deposit Insurance Corporation
3.   Federal Reserve Board of Governors
4.   National Credit Union Administration
5.   Office of the Comptroller of the Currency (Treasury)
6.   Office of Thrift Supervision (Treasury)
7.   Securities and Exchange Commission
8.   Federal Energy Regulatory Commission
9.   Office of Federal Housing Enterprise Oversight (HUD)
10.  Small Business Administration (Chief Counsel for Advocacy)
11.  Office of Special Counsel
12.  Office of the Taxpayer Advocate (Treasury - Internal Revenue Service)

_____

*The Independent Social Security Act, P.L. 103-29, Sec. 104 (42 U.S.C. 901), provides that the Social Security Commissioner will prepare a budget request for the President to submit to Congress without revision, together with the President's annual budget for the Social Security Administration.  This provision is not construed to provide the Social Security Administration with budget bypass authority.

SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED
BUDGETARY AND LEGISLATIVE "BYPASS" PROVISIONS

1.    Advisory Council on Historic Preservation

P.L. 94-422, Sec. 201(9); 90 Stat. 1322, 1323; 16 USCA
Sec. 470r, 470t(b), as amended by P.L. 96-515, Sec. 301(k);
94 Stat. 2999 provides that no Federal official or agency
can require the Council to submit for review its legislative
recommendations, testimony, or comments prior to the
submission of such information to Congress.  Where the
Council voluntarily seeks other agency comments, such fact
is to be noted in the transmittal.  Any budget estimate or
request that the Council submits to the President or OMB
must concurrently be sent to the Appropriations Committees
in both Houses and the House Interior and Senate Energy
Committees.

2.    Commodity Futures Trading Commission

P.L. 93-463, Sec. 101(a)(3); 88 Stat. 1390; 7 USCA Sec.
4a (h)(1),(2) provides that all budget estimates or
requests, or legislative recommendations, testimony, or
comments submitted by the Commission to the President or OMB
are to be transmitted concurrently to both the House and
Senate Appropriations and Agriculture Committees.  The
Commission is expressly exempt from any requirement that
legislative recommendations, testimony, or comments be
submitted for Executive branch review prior to transmission
to Congress.  Where the Commission voluntarily seeks other
agency comments, such fact is to be noted in the
transmittal.

3.    Consumer Product Safety Commission (CPSC)

P.L. 92-573, Sec. 27(k)(1),(2); 86 Stat. 1229; 15 USCA
Sec. 2076(k)(1),(2) provides that any budget estimate or
request, or legislative recommendations, testimony, or
comments submitted to the President or OMB by CPSC be
concurrently transmitted to the Congress.  No Federal
official or agency can require prior review of CPSC's
legislative communications to the Congress.

4.    Federal Aviation Administration (FAA) (Transportation)

P.L. 97-248, Sec. 506(f); 96 Stat. 679; 49 USCA App.
Sec. 2205(f) provides that any budget estimate or request,
supplemental budget estimate, other budget information,
legislative recommendation, or comment on legislation that
is sent to the Secretary of Transportation, the President,

-8-

or OMB pertaining to funds authorized for air navigation
facilities and equipment or for research, engineering and
development must be concurrently transmitted to the Speaker
of the House, the House Public Works and Appropriations
Committees, the President of the Senate, and the Senate
Commerce and Appropriations Committees.

5.   Federal Election Commission (FEC)

P.L. 93-443, Sec. 208(a); 88 Stat. 1283; 2 USCA
Sec. 437d(d)(1),(2) requires that any budget estimate or
request, or legislative recommendation, testimony, or
comments submitted to the President or OMB by the FEC be
concurrently transmitted to the Congress.  No Federal
official or agency can require prior review of FEC's
legislative communications to the Congress.

6.   Federal Retirement Thrift Investment Board

P.L. 99-509, Sec. 6001(e); 100 Stat. 1931, amended 5 U.S.C.
8472 to add subsections (i) and (j) providing, respectively,
that the Board shall submit its annual budget concurrently
to the President and the appropriate committees of Congress,
and that the Board may submit to the President, and, at the
same time, shall submit to each House of Congress, any
legislative recommendations of the board relating to any of
its functions under any provision of law.

7.   Surface Transportation Board (STB)

P.L. 104-88 abolished the Interstate Commerce Commission
(ICC) and transferred some of its functions to the Surface
Transportation Board (STB), a new entity within the
Department of Transportation.  Bypass provisions similar to
those that applied to the ICC apply to the STB.
Specifically, P.L. 104-88, sec. 201, 109 Stat. 934, 49
U.S.C. 703(g) provides that any budget estimate, request, or
budget information (including personnel needs), or
legislative comment, recommendation, or prepared testimony
for congressional hearings submitted to the Secretary of
Transportation shall be concurrently transmitted to the
Congress.  No officer of an agency may impair communications
between the STB and the Congress concerning budget estimates
or requests.

8. Merit Systems Protection Board

   P.L. 95-454, Sec. 202(a); 92 Stat. 1125; 5 USCA Sec. 1205(j),(k) requires the Board to prepare and submit its annual budget concurrently to the President and to the appropriate committees of Congress. The Board's budget, "as revised," is required to be included as a separate item in the President's Budget. Any legislative recommendations of the Board relating to its functions are required to be submitted concurrently to the President and both Houses of Congress.

9. National Transportation Safety Board (NTSB)

   P.L. 93-633, Sec. 304(b)(7); 88 Stat. 2170; 49 USCA App. Sec. 1903 (b)(7) provides that any budget estimate, request or supplemental estimate or legislative recommendation, prepared testimony, or comments submitted to the President or OMB shall be concurrently transmitted to the Congress. No Federal official or agency can require prior review of NTSB's budgetary or legislative communications to the Congress.

10. Railroad Retirement Board

   P.L. 98-76, Sec. 416; 97 Stat. 436; 45 USCA Sec. 231f(f) provides that any budget estimate, request, or supplemental estimate, or legislative recommendation, prepared testimony, or comment on legislation submitted to the President or OMB shall be concurrently transmitted to the Congress. No Federal official or agency can require prior review of the Board's budgetary or legislative communications to the Congress.

11. Chemical Safety and Hazard Investigation Board

   P.L. 101-549, Sec. 301 (amending Sec. 112(F)(6)(R) of the Clean Air Act; 104 Stat. 2569; 42 USCA Sec. 7412) provides that any budget estimate, request, supplemental request, or information, any legislative recommendation, or prepared testimony submitted to the President or a Federal Agency shall be concurrently transmitted to Congress. No Federal official or agency can require prior review of the Board's budgetary or legislative communications to the Congress.

-10-

## SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED BUDGETARY "BYPASS" PROVISIONS ONLY

1.  ### Court of Veterans Appeals

    The United States Court of Veterans Appeals was established by the Veterans Judicial Review Act, 38 U.S.C. Sections 7251-7292, under Article I of the Constitution. Section 7282 of the Act authorizes the Court to submit its budget for inclusion in the President's budget without review within the Executive branch.

2.  ### International Trade Commission

    P.L. 93-618, Sec. 175(a)(1); 88 Stat. 2011; 19 USCA Sec. 2232 specifically excludes the Commission from the provisions of the Budget and Accounting Act of 1921 and directs that the Commission's estimated expenditures and proposed appropriations be included without revision in the President's Budget.

3.  ### Legal Services Corporation (LSC)

    The LSC is a private nonprofit corporation largely funded through Federal appropriations.  Its Board Members are appointed by the President subject to Senate confirmation. P.L. 93-355, Sec. 1005(e)(1); 88 Stat. 380; 42 USCA Sec. 2996d(e) provides that the LSC is generally not to be considered a department, agency or instrumentality of the Federal Government.                        LSC has been submitting its budget requests concurrently to OMB and the Congress.

4.   <u>State Justice Institute</u>

The State Justice Institute is a private nonprofit
corporation established to further the development and
adoption of improved judicial administration in State
courts.  Its Board of Directors is appointed by the
President with the advice and consent of the Senate.
P.L. 98-620, Sec. 203; 98 Stat. 3336; 42 USC 10704(c) states
that OMB may "review and submit comments" on the State
Justice Institute's budget request when it is transmitted to
Congress, implying a budgetary bypass.  The same provision
also states that otherwise the Institute "shall not be
considered a department, agency, or instrumentality of the
Federal Government."

5.   <u>United States Postal Service (USPS)</u>

The Postal Reorganization Act, P.L. 91-375; 84 Stat. 719; 39
USC Sec. 201 established the U.S. Postal Service as an
"independent establishment of the executive branch of the
government of the United States."  P.L. 93-328, Sec. 3; 88
Stat. 288; 39 USCA Sec. 2009 provides that the President
must include the Postal Service budget request for the
Federal subsidy to USPS as well as his own recommendation in
the Budget he transmits to the Congress.

6.   <u>United States Institute of Peace (USIP)</u>

P.L. 98-525; 98 Stat. 2651; 22 USCA Sec. 4602, <u>et seq</u>.,
established the USIP as an independent, nonprofit
corporation and generally provides that officers and
employees of the USIP are not to be considered officers or
employees of the United States Government.  There is no
explicit provision contained in P.L. 98-525 stating the USIP
is outside the regular budget process; however, USIP has so
interpreted Sec. 1709(a) of P.L. 98-525, 22 USCA Sec.
4608(a), which states that "[n]othing in this title may be
construed as limiting the authority of the Office of
Management and Budget to review and submit comments on the
Institute's budget request at the time it is transmitted to
Congress."

## SUMMARY DESCRIPTION OF AGENCIES' STATUTORILY-BASED LEGISLATIVE "BYPASS" PROVISIONS ONLY

1.  **Farm Credit Administration (FCA)**

    P.L. 92-181, Sec. 5.18(3); 85 Stat. 622; 12 USCA Sec. 2252(a)(3) provides that from "time to time" the FCA may recommend legislative changes directly to Congress.

2.  **Federal Deposit Insurance Corporation (FDIC)**

3.  **Federal Reserve Board of Governors**

4.  **National Credit Union Administration**

5.  **Office of the Comptroller of the Currency (Treasury)**

6.  **Office of Thrift Supervision (Treasury)**

7.  **Securities and Exchange Commission (SEC)**

    P.L. 93-495, Sec. 111; 88 Stat. 1506; 12 USCA Sec. 250 prohibits any Federal officer or agency from requiring the SEC or the preceding five (item nos. 2-6 above) agencies to submit legislative recommendations, testimony, or comments for approval or review prior to their submission to Congress, provided that such communications include a statement to the effect that the views expressed therein do not necessarily represent the views of the President. P.L. 101-73, Sec. 744(j); 103 Stat. 439 amended P.L. 93-495 (12 U.S.C. 250) by striking "Federal Home Loan Bank Board" and inserting "Director of the Office of Thrift Supervision." P.L. 103-325, Sec. 331 added the Office of the Comptroller of the Currency.

8.  **Federal Energy Regulatory Commission**

    P.L. 95-91, Sec. 401(j); 91 Stat. 583; 42 USCA Sec. 7171(j) provides that whenever the Federal Energy Regulatory Commission submits to the Secretary of Energy, the President, or the Office of Management and Budget, any legislative recommendation or testimony, or comments on legislation, prepared for submission to Congress, the Commission shall concurrently transmit a copy thereof to the appropriate committees of Congress.

9.  **Office of Federal Housing Enterprise Oversight (HUD)**

    P.L. 102-550, Sec. 1313 allows the Office of Federal Housing Enterprise Oversight in HUD to provide Congress with recommendations and reports without "the prior approval, comment, or review of any officer or agency of the United States." The Office must include a statement indicating that the views expressed do not necessarily represent the views of the HUD Secretary or the President.

10.  <u>Small Business Administration (Chief Counsel for Advocacy)</u>

P.L. 94-305, Sec. 201; 90 Stat. 668; 15 USCA Sec. 634a
requires the President to appoint, subject to Senate
confirmation, a Chief Counsel for Advocacy.  15 USCA 634f
provides, in pertinent part, that

> The Chief Counsel may from time to time prepare and
> publish such reports as he deems appropriate.  Not
> later than one year after June 4, 1976, he shall
> transmit to the Congress, the President, and the
> [Small Business] Administration, a full report
> containing . . . specific recommendations . . .
> including specific legislative proposals and
> recommendations . . . .  Not later than 6 months
> after June 4, 1976, he shall prepare and transmit a
> preliminary report on his activities.  The reports
> shall not be submitted to [OMB] . . . for any
> purpose prior to transmittal to the Congress and the
> President.



11.  <u>Office of Special Counsel (OSC)</u>

P.L. 101-12, Sec. 3 (5 U.S.C. Sec. 1217) pertains to
OSC's transmittal of information to the Congress.  This
section states:  "The Special Counsel or any employee of
the Special Counsel designated by the Special Counsel,
shall transmit to the Congress on the request of any
committee or subcommittee thereof, by report, testimony,
or otherwise, information and the Special Counsel's
views of functions, responsibilities, or other matters
relating to the Office.  Such information shall be
transmitted concurrently to the President and any other
appropriate agency in the executive branch."

12.  <u>Office of the Taxpayer Advocate (Treasury - Internal Revenue Service)</u>

P.L. 104-168 established the "Office of the Taxpayer Advocate" within the Treasury Department's Internal Revenue Service (IRS). P.L. 104-168, sec. 101(d)(2)(B)(iii), 110 Stat. 1455, 26 U.S.C. 1 note, requires the Taxpayer Advocate to submit certain annual reports directly to the House Ways and Means Committee and the Senate Finance Committee, without any prior review or comments by the IRS Commissioner, the Secretary of the Treasury, any other Treasury Department officer or employee, or the Office of Management and Budget. The reports are to contain, among other things, such legislative recommendations as may be appropriate to resolve problems encountered by taxpayers.